**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LILY NGUYEN, EMZORA MITCHELL and FRANK ORTEGA, *on behalf of themselves and all others similarly situated*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:24-cv-8289 |
| | ) | Judge Manish S. Shah |
| ABBOTT LABORATORIES, INC. | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iv

I. STATEMENT OF FACTS .......... 2

II. LEGAL STANDARD .......... 3

III. ARGUMENT .......... 3

A. Plaintiffs' Claims Fail on Their Face Because They Do Not Allege Any Facts Supporting the Assertion That Abbott Disclosed Private Information. .......... 3

1. Plaintiffs' Conclusory Allegations Are Insufficient To Support A Cause Of Action .......... 4
2. Plaintiffs' Reliance on Outdated Federal Guidance is Misplaced .......... 7

B. Each Plaintiff Brings Claims That Are Time Barred And Must Be Dismissed .......... 8

1. Plaintiff Nguyen and Mitchell's ECPA and Negligence Claims Are Untimely .......... 8
2. Plaintiff Ortega's CIPA Claim Is Time-Barred .......... 8
3. Plaintiffs' Claims Cannot Be Tolled Because They Were On Notice Of Abbott's Conduct .......... 9

C. Plaintiffs' Claim For Violation Of The ECPA (Count I) Fails On Its Face And Cannot Be Rectified Through Amendment .......... 10

D. Plaintiffs Fail To State A Claim For Violation Of The CIPA (Count III). .......... 11

1. As a Party to the Communication, Abbott Cannot be Directly Liable Under the CIPA .......... 12
2. Plaintiffs Cannot State an Aiding and Abetting Claim Against Abbott Because They Do Not Plausibly Allege Third Parties Violated the CIPA .......... 12
   i. Plaintiffs Cannot State a Claim for "Intentional Wiretapping" Under the First Clause of Section 631(a) .......... 13
   ii. Plaintiffs Fail to Allege "Contents" of a Communication Within Scope of the Second Clause of Section 631(a). .......... 13
   iii. Plaintiffs Do Not Allege Facebook Intercepted Communications While "In Transit" Under the Second Clause of Section 631(a) .......... 15
   iv. Plaintiffs Fail to Allege Facebook Attempted To Use or Communicate Information Under the Third Clause of Section 631(a) .......... 17

E. Plaintiffs Fail To State A Claim For Negligence (Count II). .......... 17

1. Plaintiffs' Negligence Claim is Barred by the Economic Loss Doctrine .......... 18
2. Plaintiffs Do Not Allege Abbott Breached a Duty of Care .......... 19
3. Plaintiffs Do Not Allege Proximate Cause or Damages .......... 19

IV. CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Cmty*.
No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 15

*American Hospital Association, et al, v. Xavier Becerra, et al.*,
No. 4:23-cv-01110, 2024 WL 3075865 (N.D. Tex. June 20, 2024) .......... 1, 7

*B.K. v. Eisenhower Med. Ctr.*,
No. 23-cv-02092, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024) .......... 6

*Birdwell v. Costco Wholesale Corp.*,
No. C23-02416, 2024 WL 2240699 (Cal. Super. May 15, 2024) .......... 16

*Bissessur v. Ind. Univ. Bd. of Trs.*,
581 F.3d 599 (7th Cir. 2009) .......... 3

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
241 F. Supp. 3d 1084 (C.D. Cal. 2017) .......... 17

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) .......... 12, 13

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. July 12, 2023) .......... 14, 15

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. Nov. 17, 2023) .......... 14, 15

*Doe v. Davita*, *Inc*,
No. 23-CV-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) .......... 6

*Doe v. Genesis Health System*,
No. 23-cv-04209, 2024 WL 3890164 (C.D. Ill. 2024) .......... 18

*In re Facebook, Inc. Internet Tracking Litig*.,
956 F.3d 589 (9th Cir. 2020) .......... 12

*Flores v. Aon Corporation*,
2023 IL App (1st) 230140 (Ill. App. 1 Dist., 2023) .......... 18

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. July 18, 2022) .......... 15

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-cv-08002-SPG-E, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) .......... 13

*Johnson v. 3M*,
563 F. Supp. 3d 1253 (N.D. Ga. 2021), *aff'd sub nom. Johnson v. 3M Co.*, 55 F.4th 1304 (11th Cir. 2022) .......... 17

*Jones v. Tonal Sys., Inc.*,
No. 3:23-CV-1267, 2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) .......... 16, 17

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 14

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .......... 7, 10, 11

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 13

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 15

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) .......... 3

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 11

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) .......... 18

*Moorman Manf. v. Nat'l Tank Co.*,
435 N.E.2d 443 (Ill. 1997) .......... 18

*Motta & Motta LLC v. Lawyers 777, LLC*,
No. No. 18-cv-5811, 2020 WL 1433816 (N.D. Ill. 2020) .......... 9

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-cv-04674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) .......... 19

*Nelson v. Sotheby's Inc.*,
115 F. Supp. 2d 925 (N.D. Ill. 2000) .......... 9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-cv-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024) .......... 6

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) .......... 18

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)........................................16

*Santoro v. Tower Health*,
No. 22-cv-04580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) ..........................................6, 19

*Smart v. Main Line Health*,
No. 2:22-cv-05239, 2024 WL 2943760 (E.D. Pa. June 10, 2024)........................................5, 6

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (Cal. 1978)..................................................................................11, 17

*In re Vizio Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)........................................................................16

*Willard v. Tropicana Mfg. Co., Inc.*,
577 F. Supp. 3d 814 (N.D. Ill. 2021) ...........................................................................9

*Williams v. What If Holdings, LLC*,
No. 22-cv-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)...............................12

*Wittmeyer v. Heartland All. for Human Needs & Rights*,
No. 23-cv-01108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ..........................................17, 18

*Wolf Run Hollow, LLC v. State Farm Bank, F.S.B.*,
No. 12-cv-09449, 2013 WL 6182941 (N.D. Ill. Nov. 26, 2013).............................................17

**Statutes**

18 U.S.C. § 2520(e) ...........................................................................................8

Cal. Code Civ. Proc. § 340(a) ..................................................................................8

Cal. Pen. Code § 631(a)........................................................................................*passim*

Electronic Communications Privacy Act, 18 U.S.C. § 2511 ...............................................*passim*

Ill. Comp. Stat. Ann. 5/13-202.................................................................................8

Privacy Act, Cal. Penal Code § 630 *et seq*...................................................................*passim*

**Other Authorities**

45 C.F.R. § 160.103.........................................................................................7, 8, 11

Federal Rule of Civil Procedure 12(b)(6) .........................................................1, 2, 4, 10

Defendant Abbott Laboratories Inc. ("Abbott") respectfully moves to dismiss the Complaint filed by Lily Nguyen, Emzora Mitchell, and Frank Ortega ("Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiffs claim that Abbott disclosed communications, identities, medical information, and other information to Facebook[1] and other third parties, by embedding the Facebook Pixel and other similar technologies on its public-facing website in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511 ("ECPA") and California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq*. ("CIPA"), and amounting to negligence. Each of Plaintiffs' three claims for relief suffer from incurable legal and factual deficiencies that warrant dismissal of the Complaint with prejudice.

As a preliminary matter, each claim suffers from a fatal flaw. Plaintiffs' case rests on the foundational allegation that the use of these third-party tools results in the interception and disclosure of consumers' "Private Information."[2] The problem for Plaintiffs is that this assumption, and their definition of "Private Information," is based on an outdated bulletin from the U.S. Department of Health and Human Services, Office of Civil Rights ("OCR") that a federal court rejected and vacated in June of this year.[3] Further, federal courts across several jurisdictions have dismissed the exact claims raised by Plaintiffs (violations of the ECPA, the CIPA, and negligence) based on allegations identical to those raised here.

Even if that was not the case, the named Plaintiffs failed to bring certain claims within the applicable statutes of limitations. Plaintiffs Nguyen and Mitchell's ECPA and negligence claims, and Plaintiff Ortega's CIPA claim are all untimely. Thus, those claims are time-barred.

---

[1] In October 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. Unless otherwise indicated, Facebook, Inc. and Meta Platforms, Inc. are referenced collectively as "Facebook."

[2] The Complaint defines "Private Information" to mean "confidential personally identifiable information ('PII') and protected health information ('PHI')." Compl. ¶ 4.

[3] *See American Hospital Association, et al, v. Xavier Becerra, et al.*, No. 4:23-cv-01110, 2024 WL 3075865 (N.D. Tex. June 20, 2024).

Separately, Plaintiffs fail to allege facts sufficient to support key elements of their claims:

- Plaintiffs' ECPA claim fails because Abbott qualifies under the "party exception" to the ECPA, and Plaintiffs cannot allege that Abbott's use of the Facebook Pixel for marketing was for "criminal or tortious" purposes.
- Plaintiffs' direct liability theory under the CIPA similarly fails because Abbott was a party to the communications and therefore cannot be directly liable.
- Plaintiffs cannot state a CIPA claim based on indirect liability because they fail to plausibly allege a predicate violation of the statute by Facebook or other third parties. With respect to Facebook's violation of the CIPA, Plaintiffs fail to show "content" within scope of the statute, and cannot demonstrate their communications were intercepted while "in transit."
- Plaintiffs' negligence claim fails because (1) the economic loss doctrine bars Plaintiffs from recovering economic damages under a tort theory of negligence; (2) Plaintiffs cannot demonstrate Abbott breached any duty where, as a matter of law, none of Plaintiffs' Private Information was disclosed; and (3) Plaintiffs cannot establish causation or damages because they do not describe what specific information they provided to the Website and any consequences of their interactions with Abbott's website.

For all these reasons, and as further discussed below, Abbott respectfully moves the Court to grant Abbott's motion and dismiss Plaintiffs' Complaint with prejudice under Rule 12(b)(6).

## I. STATEMENT OF FACTS

Plaintiffs filed the Complaint against Abbott on September 11, 2024, challenging Abbott's alleged use of the Facebook Pixel and other commonplace analytics technologies on the website for its continuous glucose monitoring product, FreeStyle Libre, www.freestyle.abbott/us-en/ (the "Website"). Plaintiffs allege they are customers of Abbott and claim to have used the Website for a variety of purposes, including to request free trials of FreeStyle Libre products.[4] Compl. ¶¶ 196, 214, 227. Plaintiffs do not allege that they logged into the Website to view any medical information or otherwise interacted with any authenticated (post-login) pages on the Website. Indeed, the

[4] The Complaint's allegations are vague about when and how each Plaintiff signed up for a free trial of FreeStyle Libre products and whether they are subject to the MyFreeStyle Libre Terms and Conditions. Abbott reserves all rights to assert all arguments related to whether Plaintiffs and/or prospective class members consented to arbitration and/or an Illinois choice-of-law provision, based on the Terms and Conditions. *See* MyFreeStyle Libre Terms and Conditions, https://www.freestyle.abbott/us-en/terms-and-conditions.html (governing use of the MyFreeStyle Libre Program).

Website ***only*** contains public-facing, unauthenticated webpages meant to provide general information about FreeStyle Libre products to the public. Nevertheless, Plaintiffs claim that by embedding the Pixel and similar technologies on the Website, Abbott improperly disclosed visitors' "Private Information" to unauthorized third parties by transmitting identifiers and other data such as the URL of pages visited, text entered into the search bar, and unspecified "details" of Plaintiffs' requests for free FreeStyle Libre products. *Id.* ¶¶ 197, 214, 231.

In connection with these allegations, Plaintiffs assert three claims for relief: (1) violation of the ECPA; (2) negligence; and (3) violation of the CIPA. Plaintiffs seek to represent a nationwide putative class of individuals "whose Private Information was disclosed to a third party without authorization or consent through the Facebook Pixel and other third-party tracking technologies on Abbott's Website", as well as Illinois and California subclasses. *Id.* ¶¶ 251-53.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff must provide "some specific facts to support the legal claims asserted" and cannot rely on conclusory allegations to make her claim. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## III. ARGUMENT

### A. Plaintiffs' Claims Fail on Their Face Because They Do Not Allege Any Facts Supporting the Assertion That Abbott Disclosed Private Information.

The core assumption underlying all Plaintiffs' claims is that when consumers use the Abbott website, the Website discloses their "Private Information," which the Complaint defines as "confidential personally identifiable information ('PII') and protected health information ('PHI')".

However, the 76-page Complaint consists of only conclusions, and is devoid of any facts showing that any such information is disclosed. As federal courts considering similar claims across the country have held, vague allegations and references to categories of protected information are insufficient to state a claim under the ECPA, CIPA or negligence. Plaintiffs' inability to provide facts in support of their contention that Private Information was disclosed dooms each of their claims under Rule 12(b)(6).

### 1. Plaintiffs' Conclusory Allegations Are Insufficient To Support A Cause Of Action.

Plaintiffs use the term "Private Information" approximately 124 times throughout the Complaint, in most instances to assert in conclusory fashion that software on the Website transmits such information to Facebook and Google. Critically, Plaintiffs completely fail to identify any information captured or transmitted by these technologies that could even come close to being considered confidential or protected health information. In fact, their conclusory allegations that Private Information was disclosed to Facebook and other third parties are contradicted by the figures in their own Complaint. Plaintiffs provide screenshots from the Website alongside a purported "network analysis" showing the types of data they claim was shared with third parties in hypothetical scenarios, not in relation to any of the named Plaintiffs. *See, e.g.*, Compl. ¶ 124, Figure 10. At most, these figures demonstrate only that innocuous data categories are transmitted, such as the fact a form was completed ("Form Field Completion"), URL name, and buttons clicked ("SubscribedButtonClick"). *See, e.g.*, Compl. ¶¶ 111, Figure 4 (showing only that user accessed a URL and clicked "Print Voucher"); ¶ 124, Figure 10 (showing that only information transmitted from the MyFreeStyle program signup page is "Gender_Female"). Contrary to the allegations in the Complaint, ***none*** of these screenshots reveal a Website visitor's specific health condition, status as a patient, or even the person on whose behalf any activity is taken. Accordingly, nothing in

these "network analyses" of hypothetical website encounters demonstrates the disclosure of what Plaintiffs define as "Private Information."

Plaintiffs further fail to allege any specific facts demonstrating that ***their*** "confidential" or "protected health" information was disclosed. Plaintiffs allege that they used the unauthenticated (i.e., pre-login) Website to request free trials of glucose monitors and browse the Website's FAQs. Compl. ¶¶ 193, 210, 227. This is not enough to show a disclosure of ***Plaintiffs'*** Private Information to support claims for negligence and wiretapping—especially in light of the screenshots referenced above. Multiple federal courts have rejected ECPA, CIPA, and negligence claims premised on similar theories, holding that the sharing of browsing activity on the public website of a healthcare organization to a third party does not equate to a disclosure of healthcare information.

For example, in *Smart v. Main Line Health*, No. 2:22-cv-05239, 2024 WL 2943760 (E.D. Pa. June 10, 2024), the court dismissed negligence and ECPA claims brought by a plaintiff who alleged he had used defendant's website to request "information about specific health conditions, treatments and services." 2024 WL 2943760 at *3. The court found these allegations failed to describe the specific health information allegedly transferred to Facebook. *Id.*

> This Court cannot conclude from these general averments what information Plaintiff actually communicated with Main Line Health via his web browsing and when exactly such information was communicated. For example, Plaintiff has not alleged which specific web pages he clicked on for his medical condition or his history of treatment with Main Line Health. And although the Amended Complaint provides an example of a search by a *hypothetical visitor* to the Main Line Health webpage… Plaintiff fails to state what specific HIPPA-protected information Plaintiff *himself* provided to Defendant via his browsing activity that was subsequently disclosed to Meta.

*Id.* at *3 (emph. original). Here, Plaintiffs' allegations consist of the same conclusory statements the court rejected in *Smart*. Nothing in the Complaint suggests which pages ***Plaintiffs*** visited, or

the specific health information ***Plaintiffs*** supposedly provided to Abbott that was disclosed to third parties. Rather everything is about a hypothetical visitor. *See e.g.*, Compl. ¶¶ 102-14.

Similarly, in *Doe v. Davita*, *Inc.* the court rejected a CIPA claim because plaintiffs failed to connect their interactions with the defendant's website to the disclosure of their health information. *See Doe v. Davita*, *Inc,* No. 23-CV-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024). There, one plaintiff alleged that she used the website to submit a grievance to defendant about her misdiagnosis, research dialysis, watch videos required to receive treatment, and locate her treatment facility. *Id.* at *2. The court dismissed these allegations as "devoid of any facts" supporting the contention that health information was disclosed or otherwise "reveal[ed] that [plaintiffs] have chronic kidney disease." *Id*. Similarly here, Plaintiffs' attempt to equate the request for a free trial of FreeStyle Libre products to health information also fails, as Plaintiffs do not explain what specific information they provided to Abbott.

*Smart* and *Davita* are consistent with numerous other district courts that have dismissed negligence and wiretapping claims when plaintiffs fail to identify the specific health information allegedly transferred to Facebook. *See, e.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2024 WL 2133709, at *5 (W.D. Wash. May 13, 2024) (dismissing negligence and ECPA claims where allegations that plaintiff used defendant's public website to schedule appointments, communicate with doctors, complete medical forms, and review medical records were insufficient to plead defendant had disclosed her PII and PHI to Facebook); *Santoro v. Tower Health*, No. 22-cv-04580, 2024 WL 1773371, at *3–5 (E.D. Pa. Apr. 24, 2024) (dismissing ECPA and negligence claims where complaint lacked specific examples of what health information from plaintiffs was allegedly transferred to Facebook); *B.K. v. Eisenhower Med. Ctr.*, No. 23-cv-02092, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) (dismissing negligence and other claims where

plaintiffs failed to allege "what, if any, medical information or medical records were transmitted or disclosed"); *see also Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) ("*Kurowski I*") (dismissing ECPA claim based on "hypothetical data disclosures" that failed to demonstrate health information was disclosed to third parties in violation of HIPAA). Like the plaintiffs in those cases, Plaintiffs here fail to allege that any health information was transmitted to Facebook.[5] Plaintiffs' failure to show that such information was disclosed undercuts their Complaint and is fatal to each of their claims.

**2. Plaintiffs' Reliance on Outdated Federal Guidance is Misplaced.**

In support of their allegations that Abbott disclosed Private Information, Plaintiffs point to a December 2022 Bulletin by OCR (the "2022 Bulletin") stating that the use of online tracking technologies that transmit PHI constitute a violation of HIPAA. Compl. ¶¶ 52-53. The 2022 Bulletin stated that if online tracking allowed a third party to know that someone from a certain IP address had accessed a healthcare provider's unauthenticated public webpage (meaning webpage that does not require a log in), that alone could constitute disclosure of PHI in violation of HIPAA. Plaintiffs insinuate that Abbott discloses Private Information because its public-facing Website purportedly transmits unidentified PHI to Facebook in violation of this guidance.[6]

A federal court this Summer, however, rejected the 2022 Bulletin's sweeping conclusion and vacated the portions of the Bulletin (even as later revised). *American Hospital Association, et al, v. Xavier Becerra, et al.*, No. 4:23-cv-01110, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ("*AHA*").[7] The court held that visiting a healthcare provider's unauthenticated public website does

[5] Or to any of the miscellaneous other third parties intermittently thrown into the Complaint.

[6] Under HIPAA, "protected health information" ("PHI") is defined as "individually identifiable" information that is "created or received by a health care provider" (or similar entities) that "[r]elates to the past, present, or future physical or mental health or condition of an individual." 45 C.F.R. § 160.103.

[7] The government noticed an appeal of the court's decision, but dismissed it in September 2024.

***not*** necessarily relate to an individual's health condition, receipt of health care, or payment for healthcare—the necessary elements for data to be within scope of HIPAA. *Id.* at 21. The court emphasized, "[w]ithout *knowing* information that's never received—i.e., the visitor's subjective motive—the resulting metadata [shared with third parties] could never identify that individual's PHI." *Id*. at 25 (underline added). Likewise, Plaintiffs' assertion that the purported disclosure of their browsing activity on Abbott's public Website constitutes PHI must also fail.

**B. Each Plaintiff Brings Claims That Are Time Barred And Must Be Dismissed.**

Plaintiffs Nguyen and Mitchell's ECPA and negligence claims and Plaintiff Ortega's CIPA claim are barred by the applicable statute of limitations because they failed to file the Complaint within two and one years, respectively, of their alleged interactions with the Website, despite having a reasonable opportunity to discover the conduct underlying their claims.

**1. Plaintiff Nguyen and Mitchell's ECPA and Negligence Claims Are Untimely.**

Plaintiffs Nguyen and Mitchell base their ECPA and negligence claim on injuries suffered when they visited the Website, perhaps as early as August 2021. Compl. ¶¶ 194-95, 210.[8] Both claims have a two-year statute of limitations. *See* 18 U.S.C. § 2520(e) (ECPA); 735 Ill. Comp. Stat. Ann. 5/13-202 (negligence). These Plaintiffs therefore had until August 2023 to file their claims. Because the Complaint was not filed until September 11, 2024, over a year after the statutory period ended, Plaintiffs Nguyen and Mitchell's ECPA and negligence claims are too late.

**2. Plaintiff Ortega's CIPA Claim Is Time-Barred.**

Plaintiff Ortega – the only California Plaintiff – alleges he was injured when he visited the Website in July 2023. Compl. ¶ 227. The CIPA has a one-year statute of limitations. Cal. Code

[8] Plaintiff Nguyen is vague on when her claim accrued. She alleges she has been a "customer" of Abbott's since August 2021, and visited the website "on several occasions, including in May 2023[.]" Compl. ¶¶ 193, 194.

Civ. Proc. § 340(a). Plaintiff Ortega therefore had until July 2024 to file his claim. He delayed an additional two months, however, and the Complaint was not filed until September 11, 2024. The CIPA claim is therefore time-barred on its face.

**3. Plaintiffs' Claims Cannot Be Tolled Because They Were On Notice Of Abbott's Conduct.**

Plaintiffs seek to toll the statute of limitations under the "discovery rule" based on conclusory allegations that they "could [not] have known about" Abbott's alleged conduct until May 2024 because Abbott "secretly" incorporated tracking tools on the Website. *See* Compl.¶¶ 244, 248. To invoke the "delayed discovery doctrine," Plaintiffs must plead facts to show the "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 839 (N.D. Ill. 2021) (citation omitted) (emph. added). Plaintiffs fail to plead facts showing even minimal diligence during the statutory period, let alone demonstrate that a "reasonable inquiry or investigation" would not have revealed the factual basis for their claims. *Nelson v. Sotheby's Inc.*, 115 F. Supp. 2d 925, 930 (N.D. Ill. 2000).

Plaintiffs' own allegations also contradict their assertion that they could not have known about the Website's analytics tools. Plaintiffs cite to nineteen articles, decisions, and other authorities on these exact issues and published during the statutory period.[9] There was nothing secret about Abbott's use of tracking technologies and a reasonable investigation would have revealed their existence to Plaintiffs when they first visited the Website. Accordingly, tolling is unavailable to Plaintiffs and the Court should dismiss their time-barred claims. *See Motta & Motta*

[9] *See* Compl. ¶¶ 1 n.1, 3 n.2, 16 n.8, 30 n.15, 31 n.16, 50 n.20, 55 n.24, 55 n.25, 64 n.30, 75 n.32, 76 n.33, 146 n.50, 145 n.49, 158 n.51, 167 n.52, 172 n.56, 177 n.57, 180 n.60, 181 n.61.

*LLC v. Lawyers 777, LLC*, No. No. 18-cv-5811, 2020 WL 1433816, at *5 (N.D. Ill. 2020) (dismissing ECPA claim under Rule 12(b)(6) on statute of limitations grounds).

### C. Plaintiffs' Claim For Violation Of The ECPA (Count I) Fails On Its Face And Cannot Be Rectified Through Amendment.

Notwithstanding the fact that two of the three Plaintiffs' ECPA claim is time-barred, all of Plaintiffs' ECPA claims fail because Abbott was "a party to the communications" and therefore cannot violate the Act. 18 U.S.C. § 2511(2)(d). The ECPA provides a civil cause of action to a person whose wire, electronic, or oral communications to another are intentionally intercepted. 18 U.S.C. §§ 2511(1)(a), 2520(a). Section 2511(2)(d) of the statute provides an exception when the person intercepting a communication "is a party to the communication or where one of the parties to the communication has given prior consent to such interception." "[A] communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient," who is necessarily one of the parties to the communication. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015).

Plaintiffs here admit Abbott "is a 'party to the communication' with respect to customer communications." Compl. ¶ 293; *see also id.* ¶ 66 (describing Abbott as the "intended recipient" of Plaintiffs' communications). As such, Abbott "cannot be liable under the [Federal] Wiretap Act for its alleged interception of [communications], if such an interception even occurred." *Kurowski I,* 659 F. Supp. at 938.

Plaintiffs attempt to plead around the party exception with conclusory allegations that Abbott "had a purpose that was tortious, criminal, and designed to violate state constitutional and statutory provisions[.]" Compl. ¶ 153. This principle is known as the crime-tort exception. 18 U.S.C. § 2511(2)(d). "[I]t is well established" however, that the crime-tort "exception only applies where the defendant allegedly committed a tortious or criminal act independent from" the allegedly

unlawful wiretapping. *Kurowski I*, at 844 (citing *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010)) (emph. added). The Complaint specifically rebuts the existence of any criminal or tortious purpose, instead alleging that the purpose of Abbott's disclosures to third parties was "to increase [Abbott's] profit margins" and for "financial gain." Compl. ¶ 295. The crime-tort exception is "inapplicable[, however,] where the defendant's primary motivation was to make money[.]" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022). Thus Plaintiffs cannot allege "that this purpose constitutes independently illegal or actionable conduct." Nor can Plaintiffs show a criminal or tortious purpose by concluding that Abbott violated HIPAA. As discussed above, Plaintiffs do not plausibly allege that any sensitive health data was disclosed to unauthorized third parties. *See supra*, Sec. III(A).

The failure to allege any facts plausible to support the crime-tort exception means that Abbott cannot be liable under the ECPA. Thus, Plaintiffs' ECPA claim must be dismissed.

**D. Plaintiffs Fail To State A Claim For Violation Of The CIPA (Count III).**

Section 631(a) of the CIPA contains three operative clauses covering "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (Cal. 1978). Section 631(a) further contains a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability. Cal. Pen. Code § 631(a). While not artfully pled, Plaintiffs' CIPA claim appears

premised on the first and fourth clause.[10] *See* Compl. ¶¶ 319-23. Plaintiffs cannot state a claim against Abbott under either clause for multiple independent reasons. First, Abbott was a party to the communications at issue and therefore cannot be directly liable under the first clause of the CIPA. Second, Plaintiffs cannot state a claim for "aiding and abetting" liability under the fourth clause of CIPA because they fail to plausibly allege an underlying violation by Facebook. Specifically, Plaintiffs do not allege the information intercepted constitutes "contents" of a communication within scope of the statute, and Plaintiffs cannot demonstrate their communications were intercepted by Facebook while "in transit."

**1. As a Party to the Communication, Abbott Cannot be Directly Liable Under the CIPA.**

Like the ECPA, the CIPA exempts "from liability . . . a person who is a 'party' to the communication, whether acting under the color of law or not[.]" *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 607 (9th Cir. 2020). "Parties to a conversation cannot eavesdrop on their own conversation[.]" *Williams v. What If Holdings, LLC*, No. 22-cv-03780-WHA, 2022 WL 17869275, *2 (N.D. Cal. Dec. 22, 2022) (discussing first clause of the CIPA). Plaintiffs here acknowledge that Abbott was the intended recipient of their communication on the Website. *See* Compl. ¶ 66. As such, Abbott cannot be directly liable under the CIPA. *See Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) ("under this well-established 'party exception', Plaintiff's claim that Defendant is directly liable for wiretapping [under Section 631(a)] fails").

**2. Plaintiffs Cannot State an Aiding and Abetting Claim Against Abbott Because They Do Not Plausibly Allege Third Parties Violated the CIPA.**

[10] Nothing in the Complaint can be read to allege a violation of the CIPA's second clause (willfully attempting to learn the contents of an intercepted communication) or third clause (attempting to use information gained from actions in violation of the first or second clause).

Plaintiffs baldly assert that Abbott "aided, agreed with, employed, and conspired with Facebook, Google and other third parties to use the Tracking Tools to wiretap consumers to Defendant's Website...." Compl. ¶ 320. To assert a violation of the CIPA based on derivative liability, Plaintiffs must allege facts showings Facebook's (or some other third party's) predicate violation of clause (i), (ii), or (iii) of Section 631(a). *See Cody,* 658 F. Supp at 782 ("in order to plead Defendant's liability for aiding and abetting [under the CIPA], [plaintiff] must first adequately plead [a third-party]'s underlying violations of the statute.") It is unclear here exactly which clause of Section 631(a) that Plaintiffs allege Facebook violated, but their allegations cannot state a claim under any section of the statute.

i. Plaintiffs Cannot State a Claim for "Intentional Wiretapping" Under the First Clause of Section 631(a).

The first clause of Section 631(a) prohibits intentionally tapping or making any unauthorized connection "with any telegraph or telephone wire, line, cable, or instrument[.]" Cal. Pen. Code § 631(a). "Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023). Because Plaintiffs here allege the communications at issue took place over the Internet (Compl. ¶¶ 77-83) and not the telephone, they cannot plausibly premise their aiding and abetting claim against Abbott on Facebook's alleged violation of the first clause of Section 631(a).[11] *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-cv-08002-SPG-E, 2023 WL 9319049, at *2 (C.D. Cal. Dec. 26, 2023) (collecting cases).

ii. Plaintiffs Fail to Allege "Contents" of a Communication Within Scope of the Second Clause of Section 631(a).

[11] For this reason, a direct liability claim against Abbott under this section would also fail.

The second clause of Section 631(a) prohibits willfully reading or attempting to read or learn the "contents" of a communication "while the same is in transit…" Cal. Pen. Code § 631(a). An aiding and abetting claim against Abbott premised on Facebook's alleged violation of the second clause fails because Plaintiffs have not alleged "contents" of a communication within the scope of the statute. "'Contents' refers to the "intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023) (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1105 (9th Cir. 2014) (noting the standard for determining "contents" is the same under the CIPA and ECPA)).

Plaintiffs' conclusory allegations that tracking tools collected their information shared with the Website are insufficient to plausibly support their claim that "contents" were intercepted. *Compare Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. July 12, 2023) ("*Cousin I"*) with *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975-976 (S.D. Cal. Nov. 17, 2023) ("*Cousin II"*). In both *Cousin I* and *Cousin II* plaintiffs alleged that the defendant healthcare provider disclosed patients' sensitive health information to Facebook via the Pixel embedded on the defendant's website. *See Cousin I*, 681 F.Supp. at 1121; *Cousin II*, 702 F. Supp. at 971. In the original complaint considered by the district court, plaintiffs alleged that the "sensitive medical information" disclosed included "(1) the patient's unique and persistent Facebook ID; (2) the fact that the patient clicked on a specific medical provider's profile page; (3) the patient's search parameters; and (4) the patient's location filter." *Cousin I*, 681 F. Supp. at 1122. The court found such allegations insufficient to establish "content" under the CIPA and dismissed the claim. *Id*. at 1130 (noting "Plaintiffs provide significant detail but in a hypothetical manner."). Plaintiffs thereafter amended their complaint to include facts about their own activity on the website and

alleged booking medical appointments as well as running "personal search queries" for specialty healthcare providers and for information about symptoms, treatments and procedures relating to their conditions. *Cousin II*, 702 F. Supp at 973. The court found these amendments "plausibly conveyed" "contents" within scope of the statute. *Id*.

Here, Plaintiffs' allegations are similar to those in *Cousin I* and discussed only in a hypothetical manner. *See, e.g.*, Compl. ¶ 168 ("The information the Pixel captures, 'includes URL names of pages visited, and actions taken—all of which ***could*** be ***potential examples*** of health information.'") (emph. added); *id* at ¶¶ 102-15 (providing screenshots of the Website and describing how information could be disclosed "for example"). This is insufficient to plausibly allege "contents" within scope of the CIPA. *Cousin I*, 681 F. Supp. at 1130.

iii. Plaintiffs Do Not Allege Facebook Intercepted Communications While "In Transit" Under the Second Clause of Section 631(a).

The second clause of Section 631(a) only protects a communication "while" it "is in transit… or is being sent from, or received at any place within this state…." *Adler v. Cmty*. No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *2 (C.D. Cal. Aug. 2, 2021); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, at *36 (N.D. Cal. July 18, 2022). Thus, the "crucial question" is whether the communication at issue was read "while it was still in transit, i.e. before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021).

Here, Plaintiffs allege that when they accessed the Website, the Pixel caused their "Private Information" to be shared with Facebook. Despite a lengthy discussion on the Pixel, Plaintiffs go to great lengths to obfuscate from where the offending transmission actually originates. *See*, *e.g.*, Compl. ¶¶ 85, 86. A careful reading of the Complaint, however, confirms that the transmission was sent by users' browsers, directly to Facebook:

> Every website is hosted by a computer "server" which allows the website's owner (Defendant) to display the Website and exchange communications with the

> website's visitors...via the visitors' web browser. When customers used Defendant's Website, they engaged in an ongoing back-and forth exchange of electronic communications with Defendant wherein their web browser communicated with Defendant's computer server. ... A patient's HTTP Request essentially asks Defendant's Website to retrieve certain information..., and the HTTP Response renders or loads the requested information [on the user's browser]. ... Source code is simply a set of instructions that commands the website visitor's browser to take certain actions when the web page first loads or when a specified event triggers the code. ... Defendant's source code manipulates the patient's browser by secretly instructing it to duplicate the patient's communications (HTTP Requests) with Defendant and to send those communications to Facebook and Google.

Compl. ¶¶ 78-87. The only plausible interpretation of these allegations is that the claimed duplication and transmission to Facebook happens after Plaintiffs' purported communication reaches its destination – Abbott's server – and not while "in transit" to Abbott. Indeed, California courts considering substantively identical allegations have therefore concluded that plaintiffs fail to allege an interception necessary to state a CIPA claim. *Jones v. Tonal Sys., Inc.*, No. 3:23-CV-1267, 2024 WL 4357558, at *7 (S.D. Cal. Sept. 30, 2024); *Birdwell v. Costco Wholesale Corp.*, No. C23-02416, 2024 WL 2240699, at *1 (Cal. Super. May 15, 2024) ("[T]he duplication and sending of Facebook's secret code happens after the requests reaches its destination ([defendant]'s server). Plaintiff has [therefore] not alleged Defendant's 'interception' while 'in transit.'")

Plaintiffs' labeling the transmission as "contemporaneous," Compl. ¶ 282, is insufficient to salvage this theory. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at * 2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting [plaintiffs] data in transit."); *In re Vizio Inc.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("vague allegations about how [defendant]'s data collection occurs 'in real time'" insufficient to state ECPA claim). The Court here should look to Plaintiffs' more specific allegations which confirm that the transmission to Facebook occurs after data reaches Abbott's servers and in fact is sent directly

from Plaintiffs' own browsers, to Facebook. *See Wolf Run Hollow, LLC v. State Farm Bank, F.S.B.*, No. 12-cv-09449, 2013 WL 6182941, at *1 (N.D. Ill. Nov. 26, 2013) (dismissing complaint where "[p]laintiff's specific facts alleged…assumed to be true, actually disprove[d] [defendant's liability]"). Thus, there can be no interception in transit, and any aiding and abetting claim against Abbott premised on Facebook/others' alleged violation of the second clause of the CIPA fails.

iv. Plaintiffs Fail to Allege Facebook Attempted To Use or Communicate Information Under the Third Clause of Section 631(a).

The third clause of Section 631(a) penalizes one who "attempt[s] to use or communicate information obtained as a result of engaging in either of [Section 631(a)'s] two previous [clauses]." *Tavernetti*, 22 Cal. 3d at 192. Because Plaintiffs cannot show Facebook engaged in the activities prohibited by the first two clauses of Section 631(a), *see supra*, they also cannot show Facebook violated clause (iii) of Section 631(a). *Jones*, 2024 WL 4357558, at *9.

**E. Plaintiffs Fail To State A Claim For Negligence (Count II).**

Plaintiffs claim that Abbott breached its duty to keep Plaintiffs' "Private Information" confidential by installing web tracking tools on the Website. *See* Compl. ¶¶ 308, 310. "To state a claim for negligence in Illinois,[12] a plaintiff must allege facts showing that (1) the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, and (3) that the breach was the proximate cause of the plaintiff's injuries." *Wittmeyer v. Heartland All. for Human Needs & Rights,* No. 23-cv-01108, 2024 WL 182211, at *2 (N.D. Ill. Jan. 17, 2024). Plaintiffs' negligence claim fails because: (1) it is barred by the economic loss doctrine; (2) Plaintiffs cannot establish

[12] To the extent any Plaintiff's negligence claim survives, Abbott will address any choice of law issues at the class certification stage, but notes that Georgia and California also apply the economic loss doctrine. *See, e.g, Johnson v. 3M*, 563 F. Supp. 3d 1253, 1303 (N.D. Ga. 2021), *aff'd sub nom. Johnson v. 3M Co.*, 55 F.4th 1304 (11th Cir. 2022); *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091 (C.D. Cal. 2017).

Abbott breached any duty because no Private Information was disclosed; and (3) Plaintiffs fail to plead Abbott proximately caused their damages.

**1. Plaintiffs' Negligence Claim is Barred by the Economic Loss Doctrine.**

The "'economic loss doctrine' bars a plaintiff from recovering for purely economic losses under a tort theory of negligence." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761 (C.D. Ill. 2020); *Moorman Manf. v. Nat'l Tank Co.,* 435 N.E.2d 443 (Ill. 1997). Economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Flores v. Aon Corporation*, 2023 IL App (1st) 230140 (Ill. App. 1 Dist., 2023) (internal quotation marks omitted). The doctrine holds that tort law affords the proper remedy for loss arising from personal injury or damage to one's property, whereas contract law provides the appropriate remedy for economic loss stemming from diminished commercial expectations without related injury to person or property. *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011). "To determine whether the doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Doe v. Genesis Health System*, No. 23-cv-04209, 2024 WL 3890164, at *11 (C.D. Ill. 2024) (internal quotations omitted).

Here, Plaintiffs pursue recovery of economic damages resulting from the purported sharing their information with unauthorized third parties. The Complaint points to Abbott's alleged violation of the terms of its Website Privacy Policy. *See* Compl. ¶¶ 128-36. Assuming for the sake of argument that the Privacy Policy amounts to a "contract," the Privacy Policy's existence demands that Plaintiff recover any monetary damages under a contract claim rather than a tort theory of negligence. *See Doe*, 2024 WL 3890164, at *8. The economic loss doctrine also covers alleged speculative damages such as the "diminution in value" of personal information as pled by Plaintiffs. *See Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, No. 23-cv-01108, 2024 WL

182211, at *6 (N.D. Ill. Jan. 17, 2024) ("Illinois has "decline[d] to hold that the alleged diminution in value of plaintiffs' personal information amounts to actual monetary damages.").

### 2. Plaintiffs Do Not Allege Abbott Breached a Duty of Care.

Plaintiffs also have not alleged any facts to show that Abbott breached any duty owed to them. Plaintiffs' conclusory allegations that Abbott disclosed "customers' personally identifiable, non-public medical information" (Compl. ¶ 314) plainly fails to demonstrate a breach of duty of care. As discussed above, Plaintiffs cannot plausibly show that their medical information was disclosed to Facebook or any other third party through the publicly-accessible Website. *See supra*, Sec. III(A). *See also Santoro*, 2024 WL 1773371, at *5 (granting dismissal and noting plaintiff's negligence claim was "critically undermined by his failure to adequately plead how [defendant]'s public website supposedly collected and transmitted individually identifiable health information.")

### 3. Plaintiffs Do Not Allege Proximate Cause or Damages.

Moreover, Plaintiffs have not adequately pled causation as the Complaint lacks allegations describing what specific information Plaintiffs provided to the Website and any consequences of their interactions with the Website. *See Santoro*, 2024 WL 1773371, at *6; *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-cv-04674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) (finding causation allegations insufficient where plaintiffs failed to describe, the "content, timing, or number of the alleged communications"). And in the absence of facts showing the disclosure of Private Information, Plaintiffs fail to establish that they suffered any injury. *See supra*, Sec. III(A).

For all these reasons, their negligence claim fails.

## IV. CONCLUSION

For the reasons discussed above, Abbott respectfully requests the Court dismiss Plaintiffs' Complaint with prejudice as a matter of law.

Dated: November 21, 2024

Respectfully submitted,

**ABBOTT LABORATORIES, INC.**
Defendant

By: */s/ William F. Farley*
One of Its Attorneys

Timothy Ray
William F. Farley
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Phone 312.263.3600
Fax 312.578.6666
timothy.ray@hklaw.com
william.farley@hklaw.com