**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LILY NGUYEN, EMZORA MITCHELL AND FRANK ORTEGA, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

ABBOTT LABORATORIES, INC.,

*Defendant*.

Case No. 1:24-cv-8289

Judge Manish S. Shah

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

**ALMEIDA LAW GROUP LLC**
Matthew J. Langley
David S. Almeida
Britany A. Kabakov
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
matt@almeidalawgroup.com
david@almeidalawgroup.com
britany@almeidalawgroup.com

**SIRI & GLIMSTAD LLP**
David DiSabato
Tyler Bean
745 Fifth Avenue, Suite 500
New York, NY 10151
T: 929-677-5144
ddisabato@sirillp.com
tbean@sirillp.com

*Counsel for Plaintiffs & the Putative Classes*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1
LEGAL STANDARD ........ 3
ARGUMENT ........ 4
I. PLAINTIFFS' CLAIMS WERE TOLLED BY ABBOTT'S SURREPTITIOUS INSTALLATION OF TRACKING TOOLS. ........ 4
II. PLAINTIFFS IDENTIFY THE SPECIFIC HEALTH INFORMATION THAT ABBOTT DISCLOSED. ........ 6
III. PLAINTIFFS' ALLEGATIONS DO NOT RELY ON HHS GUIDANCE AND THE DECISION IN *AHA* IS INAPPLICABLE HERE. ........ 8
IV. PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM IS NOT FORECLOSED BECAUSE THE CRIME-TORT EXCEPTION APPLIES. ........ 10
V. PLAINTIFFS' CIPA CLAIMS ARE WELL-PLED. ........ 13
A. Plaintiffs allege a direct violation of CIPA. ........ 13
B. Plaintiffs plausibly allege that Abbott aided and abetted Facebook and Google. 144
C. Plaintiffs allege that the "contents" of their communications were intercepted. ... 15
D. Plaintiffs allege the interception of their communications while 'in-transit.' ........ 16
E. Plaintiffs allege that Abbott aided and abetted Google and Facebook in using and communicating the contents of their intercepted communications. ........ 17
VI. PLAINTIFFS' NEGLIGENCE CLAIMS ARE SOUND. ........ 18
A. The Economic Loss Doctrine is inapplicable to Plaintiffs' negligence claims. ..... 18
B. Plaintiffs sufficiently plead the existence and breach of a duty of care. ........ 19
C. Plaintiffs adequately plead the existence of damages that were proximately caused by Abbott's breach of its duty to protect their Private Information. ........ 19
CONCLUSION ........ 20

# TABLE OF AUTHROITIES

**Cases** **Page(s)**


*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ........ *Passim*

*A.J. v. LMND Med. Grp., Inc.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) ........ 4

*American Hospital Association v. Becerra*,
2024 WL 3075865 (N.D. Tex. June 20, 2024) ........ 2, 9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 4

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 8

*Bazile v. Fin. Sys. of Green Bay, Inc.*,
983 F.3d 274 (7th Cir. 2020) ........ 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 555 (2007) ........ 3

*Birdwell v. Costco Wholesale Corp*.,
2024 WL 2240699 (Cal. Super. May 15, 2024) ........ 17

*Brown v. Google, LLC*,
525 F.Supp.3d 1049 (N.D. Cal. 2021) ........ 5

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........ 11

*Cooper v. Mount Sinai Health Sys., Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024) ........ 10

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 15, 16

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 15

*Doe v. Davita*, *Inc*,
2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ........ 8

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) ........ 17

*Doe v. Fullstory, Inc*.,
712 F.Supp.3d 1244 (N.D. Cal. 2024) ........ 5

*Flores v. AON Corp.*,
2023 IL App (1st) 230140 ........ 18

*Hartley v. Univ. of Chicago Med. Ctr.*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ........ 7

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018) ........ 3

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) ........ 17

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 13, 16

*In re Mondelez Data Breach Litig.*,
2024 WL 2817489 (N.D. Ill. June 3, 2024) ........ 18

*Javier v. Assurance IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 14

*Jones v. Tonal Systems, Inc.*,
2024 WL 4357558 (S.D. Cal. Sep. 30, 2024) ........ 17

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ........ 8

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ........ 8

*Kurowski v. Rush Sys. for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024) ........ 2, 9

*Lax v. Mayorkas*,
20 F.4th 1178 (7th Cir. 2021) ........ 3

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sep. 16, 2024) .......... 14

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 13

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 17

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 12

*Nienaber v. Overlake Hospital Medical Center*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 8

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 11, 12, 13

*Smart v. Main Line Health*,
2024 WL 2943760 (E.D. Pa. June 10, 2024) .......... 8

*Smith v. Loyola Univ. Med. Ctr.*,
2024 WL 3338941 (N.D. Ill. July 9, 2024) .......... 1, 7, 10, 19

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 14, 15, 17

*Sweet v. BJC Health Sys.*,
2021 WL 2661569 (S.D. Ill. June 29, 2021) .......... 18

*Willard v. Tropicana Mfg. Co., Inc.*,
577 F. Supp. 3d 814 (N.D. Ill. 2021) .......... 4

*Wittmeyer v. Heartland All. for Hum. Needs & Rights*,
2024 WL 182211 (N.D. Ill. Jan. 17, 2024) .......... 18, 19

**Statutes**

18 U.S.C. § 2511 .......... 10

42 U.S.C. § 1320d-6 .......... 12

720 ILCS § 5/14-1 .......... 3

Cal. Penal Code § 631 .......... 14, 17

## PRELIMINARY STATEMENT

Defendant Abbott Laboratories, Inc. ("Abbott") does not deny using tracking tools on its website, www.freestyle.abbott/us-en/ ("Website"), which offers products to patient with diabetes and surreptitiously collects its patients' personally identifiable information ("PII"), protected health information ("PHI," and with PII, "Private Information") and individually identifiable health information ("IIHI"). Nor does Abbott deny that it divulges Website users' sensitive Private Information to third parties, such as Facebook and Google, without consent. Abbott's tacit admission warrants denial of its Motion as its use of Tracking Tools[1] is unlawful under the Health Insurance Portability and Accountability Act ("HIPAA").

Despite Abbott's protestations to the contrary, the information it discloses to Facebook and other third parties is unquestionably protected Private Information. As the Complaint alleges, when Plaintiffs used Abbott's Website to search for information and products to help treat their diabetes (a protected health condition under HIPAA), unbeknownst to Plaintiffs, Abbott disclosed to Facebook and Google that Plaintiffs ordered continuous glucose monitoring devices, including the FreeStyle Libre 3 CGM and FreeStyle Libre 2 CGM, and communicated other information related to the treatment of diabetes through the URLs of the Website pages they visited, as well as specific phrases they entered in the Website's search bar. *See, e.g.*, ¶¶ 193-243.[2] As courts in this district have consistently held, information like this, related to and revealing of a plaintiff's specific medical condition, qualifies as IIHI pursuant to HIPAA. [3]

---

[1] Tracking Tools include, but are not limited to, the Meta Pixel (the "Meta Pixel" or the "Pixel"), Google Analytics, Google DoubleClick and Google Tag Manager.

[2] All references to ¶ herein refer to Plaintiffs' Class Action Complaint, ECF No. 1 ("Complaint").

[3] *See, e.g.*, *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (J.

Abbott relies on *American Hospital Association v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ("*AHA*"), a narrow decision out of the Northern District of Texas for the assertion that the information they disclosed was not protected health information. MTD at 7 & 13. But *AHA* has no applicability here because it addressed the Department of Health and Human Services Office of Civil Rights guidance ("HHS Guidance") on online tracking technologies. But more importantly, Plaintiffs do not assert a claim under the HHS Guidance. Rather, it is Abbott's flagrant violations of HIPAA in disclosing patients' IIHI and PHI to third parties that establishes its criminal and tortious purpose such that the party exception to Plaintiffs' Electronic Communications Privacy Act ("ECPA") claim is inapplicable. As Plaintiffs allege, the HHS Guidance is cited "for reference only." ¶ 15 n.22. And Judge Kennelly found, for almost identical allegations, ECPA claims are sufficiently pled even absent the HHS Guidance. *See Kurowski v. Rush Sys. for Health*, 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (denying motion for judgment on the pleadings for ECPA claim after finding HHS Guidance inapplicable).

Abbott's arguments regarding Plaintiffs' ECPA and California Invasion of Privacy Act ("CIPA") claims likewise fail. Plaintiffs allege that the sensitive information it disclosed was IIHI, Abbott's unlawful disclosure of Plaintiffs' information was separate from its interception, and Abbott's primary purpose in intercepting the information was the criminal and tortious disclosure in order to make money sufficient to state an ECPA claim. *Compare* MTD at 16-23, *with, e.g.*, ¶¶

---

Kendall) ("*Aspen*") (holding disclosure of "Plaintiffs' patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information to third parties" were sufficient to plausibly allege that Aspen disclosed information regarding their personal health conditions and that "[s]uch information qualifies as IIHI for purposes of HIPAA."); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7 (N.D. Ill. July 9, 2024) (J. Daniel) ("*Loyola*") (holding "plaintiffs' status as medical patients, the content of their communications with LUMC's webpage, information about their medical appointments, location of treatments, specific medical providers, specific medical conditions and treatments, and other sensitive health information to third parties" qualified as IIHI).

193-243, 282-85, & 291. Courts in this district agree. *See, e.g.*, *Aspen*, 2024 WL 4119153, at *3 (denying motion to dismiss ECPA claim and finding that information regarding plaintiffs' personal medical information was IIHI, defendant's purpose of making money was achieved through the disclosure of IIHI, and disclosure of that information to third parties was distinct from the interception). With respect to CIPA, Plaintiff Ortega alleges that Abbott directly intercepted and aided and abetted Facebook and Google's interception of his communications with it, in violation of Section 631(a) of CIPA.

Finally, Plaintiffs' negligence claim is adequately pled because the Economic Loss Doctrine does not apply and Defendant had a duty to maintain the confidentiality of their Private Information. Thus, the Court should deny the motion to dismiss in its entirety.[4]

## **LEGAL STANDARD**

A Rule 12(b)(6) motion tests whether Plaintiffs have provided "enough factual information to state a claim to relief that is plausible on its face" and has raised "a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citation omitted). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Courts must deny a motion to dismiss if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555-56 (2007)).

[4] Plaintiffs withdraws their claim for Violation of the Illinois Eavesdropping Statute, 720 ILCS § 5/14-1, *et seq*. (Count VI).

## ARGUMENT

### I. PLAINTIFFS' CLAIMS WERE TOLLED BY ABBOTT'S SURREPTITIOUS INSTALLATION OF TRACKING TOOLS.

Because Abbott fraudulently concealed its conduct through its use of Tracking Tools that are invisible on the consumer-facing portion of its Website, Plaintiffs' claims were tolled by both the doctrine of fraudulent concealment and the delayed discovery rule. As Plaintiffs allege, they could not have reasonably discovered their claims or had any reason to suspect them prior to May 2024 and thus their claims are not time-barred. *See* ¶ 244-49.[5]

First, Plaintiffs' claims were tolled due to the delayed discovery rule. To trigger the discovery rule, a plaintiff need only plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 839 (N.D. Ill. 2021). Here, Plaintiffs plead the time and manner in which they discovered their claims sufficient to establish that the delayed discovery rule applies, by alleging that they could not have known about Abbott's conduct until they contacted the undersigned counsel in 2024, as Abbott falsely represented to them that it would not disclose their health information to any third party. *See* ¶ 248.

Courts analyzing the delayed discovery rule in the context of online Tracking Tools have concluded that allegations that a defendant has secretly stored, and prevented the discovery of pixels on a webpage are sufficient to toll the statute of limitations at the pleading stage. *See, e.g.*, *B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024); *A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143, at *1 (N.D. Cal. Oct. 25, 2024) (holding that delayed

[5] Abbott's motion to dismiss Plaintiffs' ECPA and Negligence claims pursuant to the statute of limitations applies only to Plaintiffs Nguyen and Mitchell. MTD at 8-9. Even were the Court to find that Nguyen and Mitchell's ECPA and Negligence claims were not tolled, those claims would survive as there is no dispute that Plaintiff Orgeta's injuries occurred within the statutory period.

discovery rule tolled statute of limitations where defendant installed identical tracking technologies); *Doe v. Fullstory, Inc.*, 712 F.Supp.3d 1244, 1255-56 (N.D. Cal. 2024) (same). Plaintiffs here have alleged that the technological complexity and secrecy of Abbott's Tracking Tools prevented them from discovering the interception. *See, e.g.*, ¶ 245 ("Defendant secretly incorporated Tracking Tools into its Website, providing no indication to users that their sensitive personal data, including their PHI and PII, would be disclosed to unauthorized third parties"); ¶ 186 ("Plaintiffs and Class Members could not with due diligence have discovered the full scope of Abbott's conduct because the incorporation of Tracking Tools on the Website is highly technical and there were no disclosures or other indications that would inform a reasonable consumer that Abbott was disclosing and allowing Meta or Google to intercept PHI and PII."); ¶¶ 28-29, 69, 245-47 (alleging Tracking Tools were "hidden," "surreptitious," and "secretly incorporated").

Second, where plaintiffs allege, like here, that a defendant has intentionally hidden and misrepresented their website's practices, their claims are tolled. *See, e.g.*, *Brown v. Google, LLC*, 525 F.Supp.3d 1049, 1071 (N.D. Cal. 2021) (tolling claims where defendant's tracking methods were not apparent to users and its privacy policy failed to disclose the full scope of tracking). Abbott's contrary argument that the "articles, decisions and other authorities" cited in the Complaint establish Plaintiffs' knowledge of its Tracking Tools is unavailing as (1) none of those documents examine or mention Abbott's use of Tracking Tools and (2) their inclusion in the Complaint means Plaintiffs became aware of them only after learning of their claims in May 2024. MTD at 15.

Because Abbott concealed its tracking efforts and Plaintiffs could not have reasonably discovered their causes of action, Plaintiffs' Complaint is not time barred. *See Fullstory*, 712 F.Supp.3d at 1255 (dismissing similar argument and holding that "given the type of case this is –

based on defendants' use of highly technical proprietary software – and given plaintiff's clear statement that the earliest' plaintiff could have known of her injury was shortly before filing" was sufficient to toll the statute of limitations).

## II. PLAINTIFFS IDENTIFY THE SPECIFIC HEALTH INFORMATION THAT ABBOTT DISCLOSED.

Abbott's contention that the information Plaintiffs allege it disclosed to Facebook, Google and other third parties was not PHI ignores Plaintiffs' allegations and the controlling case law in this district. *See* MTD at 10-13. Plaintiffs allege that Abbott disclosed their requests for the continuous glucose monitoring devices used to help monitor and treat their diabetes they ordered through the Website, the search terms related to the treatment of diabetes that Plaintiffs typed into the Website's search bar, and their individual experiences using the Website to research information related to the treatment of their diabetes. *See, e.g.*, ¶ 193-243. These allegations are more than sufficient to establish that the information disclosed by Abbott qualifies as IIHI. *See Aspen*, 2024 WL 4119153, at *3 (holding that the disclosure of information regarding patient status, medical conditions, and treatments qualified as IIHI for purposes of HIPAA).

Moreover, Abbott's contention that the Complaint only addresses "hypothetical visitors" and not the specific health information that Plaintiffs provided to Abbott and was disclosed to third parties completely misses the mark. *See* MTD at 11-12. For example, Plaintiff Nguyen alleges that she was a customer of Abbott since 2021 and, in May 2023 used the Website to "request a FreeStyle Libre 3 CGM product via the free trial offered by Abbott." ¶¶ 193-94. Plaintiff Nguyen also alleges that her communications with Abbott through the Website "revealed her PHI through the URLs, as well as searches through the Website's search bar that disclosed the specific phrases she used to search for information related to her medical condition, her searches related to insurance coverage for diabetes monitoring systems sought from Defendant, and the details of her

requests for Defendant's diabetes monitoring products." ¶¶ 196-98. Plaintiff Ortega alleges that he communicated he used the Website "in July 2023, to review and request FreeStyle Libre CGM products via the free trial offered by Abbott, review cost and coverage information as well as other parts of the Website FAQ section, and to sign up for Defendant's newsletter." ¶¶ 227-28. And Plaintiff Mitchell requested Free Style Libre CGM products through the Website in August 2021 and entered specific phrases into the Website search bar related to insurance coverage for diabetes monitoring systems and the details of her requests for Abbott's diabetes monitoring products which were then disclosed to Facebook and other third parties. ¶¶ 210-14. Plaintiffs' requests for continuous glucose monitoring systems through the Website alone establish that Abbott disclosed information regarding their personal health conditions and treatments to third parties.

Virtually identical allegations involving disclosures of medical information have been found to constitute IIHI by every court in this district that has considered them. *See, e.g.*, *Hartley v. Univ. of Chicago Med. Ctr.*, 2024 WL 1886909, at *2 (N.D. Ill. Apr. 30, 2024) (holding that plaintiff's allegations that defendant disclosed "that she was seeking specific medical specialists, that she sought to obtain prescriptions of various medications, that she was seeking information about sexually transmitted diseases, and alleging that Meta sold this information to entities that sent her advertisements" were sufficient to make plausible allegations of IIHI); *Loyola*, 2024 WL 3338941, at *7 (holding that transmission of plaintiffs' status as medical patients, content of their communications with LUMC's webpage, and specific medical conditions and treatments); *Aspen*, 2024 WL 4119153, at *3 (holding that transmission of "Plaintiffs' patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information to third parties" qualified as IIHI under HIPAA).

The out-of-circuit cases cited by Abbott do not compel a different result. In both, the plaintiffs' ECPA claims were dismissed because the plaintiffs failed to state what medical information—*i.e.,* specific medical conditions or treatment—were communicated to the defendants. *See* MTD at MTD at 11-12 (citing *Smart v. Main Line Health*, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024); *Doe v. Davita*, *Inc,* 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024)).[6]

In contrast, Plaintiffs here allege communication of information regarding their specific medical condition (diabetes) and the treatments they sought for their medical condition (the specific continuous glucose monitoring devices they requested). *See* ¶ 193-243. Courts in this district agree that such information is IIHI for purposes of HIPAA. *Compare Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) ("*Kurowski I*") (dismissing ECPA claim based on "hypothetical data disclosures"), *with Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *4 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (holding that the amended complaint states a claim for relief under the wiretap act because it included "allegations regarding the information she contends was transmitted to third parties with Rush's knowledge").

## III. PLAINTIFFS' ALLEGATIONS DO NOT RELY ON HHS GUIDANCE AND THE DECISION IN *AHA* IS INAPPLICABLE HERE.

In June 2024, the United States District Court for the Northern District of Texas issued an opinion in *AHA* reaffirming the HHS Guidance in part and vacating one discrete aspect not

[6] The other out-of-circuit cases cited by Abbott are inapposite. Whereas here, Plaintiffs affirmatively requested the continuous glucose monitoring devices used to treat their medical condition, the court in *Nienaber v. Overlake Hospital Medical Center*, 733 F. Supp. 3d 1072, 1085 (W.D. Wash. 2024) found that plaintiffs failed to allege that "her interactions plausibly related to the provision of healthcare." And though Abbott cites to *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024), it fails to cite to the same court's granting in part plaintiff's motion for reconsideration wherein the court cited to *Kurowski III* in finding that the "inclusion of "additional factual allegations regarding the information [plaintiffs] contend was transmitted to third parties" would allow plaintiff to plausibly state a claim for relief under ECPA. *See* 2024 WL 2037404, at *4 (C.D. Cal. Apr. 11, 2024).

applicable to this case. Abbott argues that the sensitive medical information it disclosed was rendered lawful by *AHA* because that information is no longer IIHI. MTD at 13-14. However, Plaintiffs are not suing Abbott for violating the HHS Guidance; rather, they assert claims for violating the ECPA, CIPA, and common law. In fact, though Plaintiffs reference the HHS Guidance, they specifically state that it is cited "for reference only." ¶ 45, n. 13. Thus, whether a portion of the HHS Guidance was vacated does not address (and certainly does not resolve) the legal viability of Plaintiffs' claims.

Judge Kennelly's holding in *Kurowski IV* is instructive as there the Court held that defendant disclosed plaintiffs' IIHI in violation of HIPAA even though it declined to apply the HHS Guidance. 2024 WL 3455020, at *6. As Judge Kennelly explained, "the Court expressly declined to defer to this bulletin in deciding whether Kurowski had stated a claim" but "[t]he Court permitted Kurowski to proceed with her Wiretap Act claim [] when she added factual allegations that her private, care-related communications were also intercepted and transmitted." *Id*.

In addition, the *AHA* opinion, an administrative law decision that questioned the rulemaking process, addresses only a single discrete issue not present here. Judge Pittman specifically held that HHS exceeded its authority by issuing guidance prohibiting healthcare providers from utilizing "an online technology" that discloses (i) an individual's IP address along with (ii) a visit to an unauthenticated public webpage addressing specific health conditions or healthcare providers. 2024 WL 3075865, at *2. Judge Pittman labeled this "new rule" as the "Proscribed Combination." *Id.* As Judge Pittman was careful to note, his opinion concerned *only* the "Proscribed Combination." *Id.* at *17, n. 8 ("Such vacatur is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document.").

Indeed, Judge Pittman observed that the HHS Guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound." *Id.* at *4, n. 3.

In contrast, this case does ***not*** concern the use of unauthenticated public websites and merely the disclosure of IP addresses. Rather, this case challenges Abbott's use of Tracking Tools to collect and disclose PHI. *See, e.g.*, ¶¶ 6, 10-11, 41, 66, 73 & 139. The *AHA* decision does not undermine the HHS Guidance prohibiting such disclosures, rather, it reinforces that such disclosures *would* reveal PHI and that HHS "[c]an and should remind covered entities that the Privacy Rule would apply in those circumstances." 2024 WL 3075865, at *14.[7]

## IV. PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM IS NOT FORECLOSED BECAUSE THE CRIME-TORT EXCEPTION APPLIES.

Plaintiffs allege that Abbott violated the ECPA, which forbids (i) interception of electronic communications, (ii) disclosure of electronic communications and (iii) using the contents of those electronic communications. *See* ¶¶ 269-306. Abbott argues that there can be no ECPA liability because it was a party to the communications at issue. *See* MTD at 16-17. But where the crime-tort exemption applies, that exemption overrides the one-party consent rule.[8] Nevertheless, Abbott claims that the crime-tort exception does not apply because: (i) the tortious or criminal act must

---

[7] Multiple federal courts in the wake of *AHA* have continued to find that information intercepted by tracking technologies on hospital websites can constitute IIHI. *See, e.g.*, *Aspen*, 2024 WL 4119153, at *3 (denying motion to dismiss ECPA where healthcare defendant used tracking technologies to collect IIHI in violation of HIPAA); *Loyola*, 2024 WL 3338941, at *6-8 (same); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *7 (S.D.N.Y. July 30, 2024) (denying motion to dismiss ECPA & common law claims where defendant was alleged to have collected IIHI in violation of HIPAA) (collecting cases).

[8] "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication **… unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State**." 18 U.S.C. § 2511(2)(d) (emphasis added).

be independent from the alleged interception, (ii) its primary motivation was financial, and (iii) Plaintiffs do not allege that the information disclosed was PHI. MTD at 11-17. In making these arguments, Abbott disregards the holdings of courts in this district and nationwide and contradicts Plaintiffs' well-pleaded allegations.

First, Abbott argues that the crime-tort exception cannot apply because the criminal or tortious purpose was not independent from the interception. *See* MTD at 16-17. But Abbott misunderstands the Complaint, which alleges that Abbott's unlawful disclosure of Plaintiffs' Private Information was a separate act from its interception. *See, e.g.*, ¶¶ 86, 282 & 285 (explaining Abbott violated wiretap acts by "intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiffs and Class Members to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication"). Plaintiffs' allegations of disclosure—independent and separate from the interception—when done with the purpose of committing a criminal or tortious act (invading Plaintiffs' privacy and violating HIPAA) suffice to allege the crime-tort exception. *See, e.g.*, *Aspen*, 2024 WL 4119153 at *3 (explaining that "[e]ven if the crime-tort exception did require an act distinct from the alleged wiretapping, Plaintiffs plausibly allege that Aspen intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception at issue in the ECPA claim."); *R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("*Walgreens*") (recognizing that "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is ***independent*** of the intentional act of recording or interception itself" and holding that crime-tort exception applied because communications were intercepted with intent to commit the tort of invasion of privacy) (emphasis in original); *Castillo v. Costco*

*Wholesale Corp.*, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) ("The Court concludes that alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception.").

Second, Abbott's argument that Plaintiffs allege that the primary purpose of intercepting their communications was to make money is unavailing. MTD at 17. As courts in this district have found, even where a defendant's purpose in intercepting communications is financial, "this purpose cannot be detached from the reality that Aspen achieved this improved marketing and revenue boost by disclosing Plaintiffs IIHI." *Aspen*, 2024 WL 4119153 at *3; *see also Walgreens*, 733 F. Supp. 3d at 901 (explaining that "even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928, n.4 (D. Minn. 2024) ("[T]he Court has serious doubts that a pecuniary purpose and an injurious purpose can always be so clearly distinguished. And it defies common sense that a clearly harmful act could escape liability as long as it was done for profit.").

Third, Plaintiffs allege that the information Abbott collected and disclosed without consent in violation of HIPAA was IIHI. *See supra* §II; *see also* ¶¶ 116-18 & 239-42.[9] Plaintiffs allege that Abbott disclosed their status as medical patients, the contents of their communications with Abbott's Website, and information about their medical conditions and treatments, including requests for continuous glucose monitoring devices. *See, e.g.*, ¶¶ 6, 10-11, 41, 66, 73 & 139. For these reasons, Abbott's motion to dismiss Plaintiffs' ECPA claim should be denied.

---

[9] Information is IIHI if it is PHI that (i) is "created or received by" a health care provider and (ii) either "identifies the individual" or provides a reasonable basis to identify the individual. *See* ¶ 239 (citing 42 U.S.C. § 1320d-6(A)-(B)).

## V. PLAINTIFFS' CIPA CLAIMS ARE WELL-PLED.

Abbott incorrectly argues that Plaintiffs have failed to state a claim under any of the clauses of Section 631(a) of CIPA. *See* MTD at 17-18. Plaintiffs successfully allege claims under the second, third, and fourth clauses of Section 631(a) because (i) Plaintiffs argument that Abbott violated the ECPA establishes a direct violation of CIPA, (ii) Plaintiffs allege that Abbott aided and abetted Facebook's and Google's interception of their communications with it, in violation of the second clause of Section 631(a), and (iii) Plaintiffs allege that Abbott aided and abetted Facebook's use of their communications in violation of the third clause of Section 631(a).

### A. Plaintiffs allege a direct violation of CIPA.

As to Abbott's direct violation of CIPA, Abbott's argument that it was a party to the communication fails for the same reasons it failed regarding Plaintiffs' ECPA claim. *Compare* MTD at 18, *with supra* § IV. Courts analyze claims under CIPA and ECPA using the same framework because the statutes contain similar provisions protecting against unauthorized interception of communications. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (using same analysis for CIPA and ECPA claims). "Under both the ECPA and CIPA, '[i]t shall not be unlawful ... for a person ... to intercept a[n] electronic communication where such person is a party to the communication,' so long as such interception is not 'for the purpose of committing any criminal or tortious act.'" *Walgreens*, 733 F. Supp. 3d at 901 (citations omitted); *see also Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *4 (N.D. Cal. July 3, 2024) (holding that where ECPA claim survives due to application of crime-tort exception, CIPA claim must also survive for the same reasons). Accordingly, the party exception does not apply to Plaintiffs' CIPA claim.

**B. Plaintiffs plausibly allege that Abbott aided and abetted Facebook and Google.**

Section 631(a)(4) of CIPA provides a cause of action where a person 'aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.'" *Javier v. Assurance IQ LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (quoting Cal. Penal Code § 631(a)). To assert a violation of CIPA based on derivative liability, a plaintiff must allege facts showing a third party's predicate violation of clause (i), (ii), or (iii) of Section 631(a). It is sufficient for a plaintiff to allege a defendant intentionally procured Meta Pixel or other tracking apps and installed it on its website in order to satisfy this requirement." *See M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sep. 16, 2024) (allegations that defendant "knowingly agreed to use Google Analytics, embedded tracking technology code on its website, and allowed Google to have direct access to [defendant's website] users' private medical information" sufficient aiding and abetting under the CIPA).

Here, Plaintiffs allege that Abbott installed Google and Facebook's Tracking Tools on its Website, "allow[ing] unauthorized third parties to intercept the contents of customer communications, view customers' Private Information, mine its customer's Private Information for purposes unrelated to the provision of healthcare and further monetize it to deliver targeted advertisements[.]" ¶¶ 9-10. Plaintiffs further allege that "[i]n exchange for disclosing the Private Information of its customers, Abbott is compensated by Facebook and Google in the form of enhanced advertising services and more cost-efficient marketing[,]" and "Facebook and Google, in turn, use that Private Information for various business purposes, including … to target specific demographics and selling such information to third-party marketers who target those users online[.]"¶¶ 17 & 164. These allegations are sufficient to establish that Abbott aided and abetted Facebook and Google in collecting Private Information for their advertising enterprise. *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024) (allegations that

defendant chose to install Facebook pixel and Facebook Pixel transmitted medical information to Facebook are sufficient to show aiding and abetting).

### C. Plaintiffs allege that the "contents" of their communications were intercepted.

Courts—including in this district—have concluded that under the CIPA, the "'[c]ontents' of a communication include 'any information concerning the substance, purport, or meaning of that communication.'" *Aspen*, 2024 WL 4119153, at *14. In determining whether URLs constitute 'contents' under CIPA, courts have distinguished between URLs that contain basic identification and address information and those that contain information communicated by the user. Descriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication. *St. Aubin*, 2024 WL 4369675, at *5.

Abbott cites two motion to dismiss rulings from the same case, *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) ("*Cousin I*") and *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975-976 (S.D. Cal. 2023) ("*Cousin II*"), arguing that Plaintiffs' allegations resemble those made by the *Cousin I* plaintiffs. Abbott is incorrect—in reality, Plaintiffs' allegations are far more similar to those pled in *Cousin II*.

In *Cousin I*, the plaintiffs failed to allege "what information they each provided to [the defendant], via their browsing activity." 681 F. Supp. 3d at 1123 (S.D. Cal. 2023). Rather, the complaint merely stated that they entered nonspecific "sensitive personal and health information" on the defendant's website. Case No. 22-cv-2040-MMA (S.D. Cal. Mar. 3, 2023) (Dkt. No. 14) at ¶ 66. The *Cousin* plaintiffs subsequently amended their complaint to include specific allegations that they used the defendant's website to perform "personal search queries—such as specialty healthcare providers and treatments for medical conditions." *Cousin II*, 702 F. Supp. 3d at 976. The court concluded that these allegations had "plausibly conveyed content: their PHI." *Id.*

Like in *Cousin II*, Plaintiffs here specifically allege how they used the Website and what Private Information was communicated to third parties as a result. *See supra* § II. These allegations are sufficient to establish the interception of the "contents" of Plaintiffs' communications under CIPA. *See Aspen*, 2024 WL 4119153, at *14-16 (holding that URLS that include "terms entered into search fields and forms" constitute content under the CIPA); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 785 (N.D. Cal. 2022) (information about "medical conditions, and appointments associated with a patient's session" constitute contents).

**D. Plaintiffs allege the interception of their communications while 'in-transit.'**

"At the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured[.]" *St. Aubin*, WL 4369675, at *6. Rather, a CIPA plaintiff must merely "'provide fair notice to [d]efendant of how and when she believe[s]' the defendant or the conspiring third party intercepts her communications.'" *Id.*

Plaintiffs satisfy this standard. Plaintiffs allege that "Defendant's source code manipulates the patient's browser by secretly instructing it to duplicate the patient's communications (HTTP Requests) with Defendant and to send those communications to Facebook and Google. These transmissions occur contemporaneously, invisibly and without the patients' knowledge." ¶ 87; *see also* ¶¶ 88-89 & 293. Abbott prematurely urges the Court to believe that "[t]he only plausible interpretation of these allegations is that the claimed duplication and transmission to Facebook happens after Plaintiffs' purported communication reaches its destination—Abbott's server—and not while 'in transit' to Abbott." MTD at 22. Not true. As Plaintiffs explain and demonstrate through network transmission exhibits, Abbott's Website was programmed to ***simultaneously*** and ***contemporaneously*** transmit Plaintiffs' Private Information to Facebook and Google as it was communicated through their actions taken on the Website. ¶¶ 77-88, 110-14, 280-82. Judge

Kendall held that allegations like these are sufficient to satisfy the second clause of Section 631(a). *See Aspen*, 2024 WL 4119153, at *19-20 (holding that almost identical allegations were sufficient to plausibly allege that Plaintiff's communications were intercepted in transit)..[10]

Abbott cites two inapposite cases to support its argument. First, *Jones v. Tonal Systems, Inc.* did not involve third-party pixel software and the customer support chats were simply forwarded by the defendant to the transcription service. *See* 2024 WL 4357558, at *8 (S.D. Cal. Sep. 30, 2024). In *Birdwell v. Costco Wholesale Corp*., unlike here, plaintiffs failed to plead that the transmission of their communications on the defendant's website occurred contemporaneously with their use of the defendant's website. 2024 WL 2240699, at *1 (Cal. Super. May 15, 2024). Because Plaintiffs allege the simultaneous and contemporaneous transmission of website information through a third-party pixel, they have adequately alleged the interception of information "in-transit." *See Aspen*, 2024 WL 4119153, at *7 ("That Aspen disagrees with Plaintiff's factual allegation is insufficient to justify dismissing Plaintiff's CIPA claim.").

**E. Plaintiffs allege that Abbott aided and abetted Google and Facebook in using and communicating the contents of their intercepted communications.**

Abbott argues that because Plaintiffs fail to allege that "Facebook engaged in the activities prohibited by the first two clauses of Section 631(a)," they cannot show that Abbott violated the third clause of the CIPA. *See* MTD at 23. But, as demonstrated above, Plaintiffs allege that

[10] Many courts agree. *See, e.g.*, *St. Aubin*, 2024 WL 4369675, at *5 (allegations that Facebook Pixel transmission was "concurrent" with communications with host website establish interception 'in-transit'); *Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) (allegations that Pixel transmission is "instantaneous" and "simultaneous[]" with website communications); *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *8 (C.D. Cal. July 19, 2024) (allegations that "Search Terms were replicated and sent in parallel to the tracking entities"); *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (allegations that data was transmitted "whenever" a video was watched on defendant's website, even though "[p]laintiff did not use words like 'real time' and 'simultaneously'").

Facebook violated the second clause of the CIPA. *See supra* §§ V(B)-(D). In addition, Plaintiffs allege that Facebook has both used and communicated the contents of the communications at issue "for various business purposes, including using such information to 'improve' advertisers' ability to target specific demographics and selling such information to third-party marketers who target those users online[.]" ¶ 164. Abbott supports its argument with only one case—*Tonal Systems*—but as discussed above, *Tonal Systems* is not applicable to the facts of this case. *See supra* § V(D).[11]

## VI. PLAINTIFFS' NEGLIGENCE CLAIMS ARE SOUND.

### A. The Economic Loss Doctrine is inapplicable to Plaintiffs' negligence claims.

Though the Economic Loss Doctrine "bars tort recovery for purely economic losses ***based on the failure to perform contractual obligations***." *Wittmeyer v. Heartland All. for Hum. Needs & Rights*, 2024 WL 182211, at *3 (N.D. Ill. Jan. 17, 2024) (emphasis added). Where, like here "plaintiffs' injuries arose from defendant's alleged breach of its duty to safeguard personal information incidental to the transaction itself" rather than "by any defect in the actual product of the transaction," the economic loss doctrine is inapplicable, as its application would stretch "the doctrine far beyond its products liability roots[.]" *Flores v. AON Corp.*, 2023 IL App (1st) 230140, ¶ 57; *see also In re Mondelez Data Breach Litig.*, 2024 WL 2817489, at *5 (N.D. Ill. June 3, 2024).

Unlike the cases cited by Abbott, Plaintiffs do not allege ***any*** contractual claims. Rather, they allege that Abbott's duty of confidentiality arose out of its role as a medical provider and data collector, its Privacy Policy, and its statutory obligations. *Compare* MTD at 24-25, *with, e.g.*, ¶¶ 143-61 & 308-11. Federal courts applying Illinois law have concluded that similar allegations do not invoke the Economic Loss Doctrine. *See, e.g.*, *Sweet v. BJC Health Sys.*, 2021 WL 2661569,

---

[11] As Abbott only argues that Plaintiffs' claims under the third clause of the CIPA are defective as applied to Facebook, it presumably concedes that those claims are meritorious as applied to Google.

at *8 (S.D. Ill. June 29, 2021) (holding as "[d]efendants are health care providers, and [p]laintiffs are their patients[,]" defendant's "[statutory and common law] obligations provide an independent basis for tort liability, and dismissal is thus not warranted under the economic loss doctrine[.]").

Abbott's attempt to read in a contractual claim based on Plaintiffs' allegations regarding its Privacy Policy is unavailing. This very district has held that "allegations regarding [a defendant]'s privacy notices are insufficient to show that an express contract was formed between the parties regarding the security measures that would be employed to protect PII and PHI." *Wittmeyer*, 2024 WL 182211, at *12.

**B. Plaintiffs sufficiently plead the existence and breach of a duty of care.**

Abbott argues that Plaintiffs cannot show a breach of the duty of care because they "cannot plausibly show that their medical information was disclosed to Facebook or any other third party through the publicly accessible Website." MTD at 19. This argument fails for the reasons stated in Section II, *supra.*

**C. Plaintiffs adequately plead the existence of damages that were proximately caused by Abbott's breach of its duty to protect their Private Information.**

Abbott argues that "Plaintiffs have not adequately pled causation as the Complaint lacks allegations describing what specific information Plaintiffs provided to the Website and any consequences of their interactions with the Website." MTD at 25. This argument fails for the same reasons stated in Sections II and V(C), *supra*. Moreover, Plaintiffs allege that they "have suffered fear, anxiety and worry about the status of, and the loss of control over, their private health information." ¶ 313. "Allegations of emotional harm, such as these, are sufficient to state a negligence claim under Illinois law, including in the data privacy context." *Loyola*, 2024 WL 3338941, at *7.

## CONCLUSION

For these reasons, this Honorable Court should deny Abbott's motion to dismiss, grant leave to amend to address pleading deficiencies, if any, and order all such other relief.[12]

Date: January 10, 2025

Respectfully submitted,

*/s/ Matthew J. Langley*
Matthew J. Langley (ARDC No. 6337129)
David S. Almeida (ARDC No. 6285557)
Britany A. Kabakov (ARDC No. 6336126)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
matt@almeidalawgroup.com
david@almeidalawgroup.com
britany@almeidalawgroup.com

David DiSabato
Tyler Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
929-677-5144
ddisabato@sirillp.com
tbean@sirillp.com

*Attorneys for Plaintiffs & the Putative Classes*

[12] Under Rule 15, courts "should freely give leave" to amend a pleading "when justice so requires." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020). While Plaintiff contends sufficient facts are pled to support each cause of action and associated damages, should the Court be persuaded to dismiss any claim, Plaintiff respectfully requests leave to file a First Amended Complaint. Plaintiff submits that this is a reasonable request, particularly where courts nationwide analyzing similar pleadings have done so with varying levels of specificity in the pleadings.

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on January 10, 2025, I filed the attached with the Clerk of the Court using the Court's electronic filing system and will send such filing to all attorneys of record.

*/s/ Matthew J. Langley*