**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LILY NGUYEN, EMZORA MITCHELL and FRANK ORTEGA, on behalf of themselves and all others similar situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES INC.,<br><br>Defendant. | Case No. 1:24-cv-8289-MSS |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Defendant Abbott Laboratories Inc. ("Abbott") hereby files this reply ("Reply") in support of its Motion to Dismiss and supporting Memorandum, Dkt. 23-24, (collectively, the "Motion") and in response to Plaintiffs' Opposition to Defendant's Motion to Dismiss, Dkt. 29, ("Opposition") and states as follows.

## I. Preliminary Statement

In their Opposition, Plaintiffs double-down on the buzzwords and legal labels contained in their conclusory, threadbare factual allegations in an effort to distract this Court from the core failings in the Complaint. While Plaintiffs' Complaint spans more than seventy-five (75) pages, it is defined not by what it contains, but by what it lacks. There are no allegations that Abbott's public-facing FreeStyle Libre marketing website (the "Website") requires that a browsing visitor log in with identifying information to gain access. Nor are there allegations that Abbott installed tracking technologies to collect user information after log-in that could potentially allow a third party like Facebook to connect that information to an identifiable human being. In fact, the Complaint lacks any factually-supported allegations that the Website actually collects any information that would qualify as Private Information, even under Plaintiffs' definition.[1] There are also no plausible allegations that Abbott's Website disclosed a user's selection of a medical provider, the scheduling of an appointment, or any medical condition whatsoever. Rather, Plaintiffs invite this Court to substitute impermissible guesswork for properly pled facts in an effort to manufacture a violation of HIPAA, a statute that does not even contain a private right of action. This Court should decline to do so and grant Abbott's Motion. There can be no privacy case in the absence of Private Information about known individuals.

[1] Defined in the Complaint as "confidential personally identifiable information ('PII') and protected health information ('PHI')."

## II. Plaintiffs Fail to Plausibly Allege Disclosure of "Private Information"

### a. Plaintiffs' Conclusory Allegations that Abbott Disclosed Private Information Are Contradictory and Insufficient As a Matter of Law.

Despite Plaintiffs' resolute insistence to the contrary, the facts pled in the Complaint simply do not demonstrate a disclosure of "Private Information." Plaintiffs' allegations that Abbott disclosed Plaintiffs' Private Information are entirely conclusory and should be disregarded. *See, e.g.*, Compl. ¶¶ 196-197, 213-214, 230-231 (concluding that Plaintiffs used the Website to send and communicate "Private Information" and that the website "revealed [their] PHI"). The only remotely concrete facts alleged in the complaint are that (1) Plaintiffs visited the Website and requested a free trial of products, and (2) the Pixel on the Website causes the Facebook cookies on Plaintiffs' browser to transmit to Facebook innocuous data elements, such as URL name and certain button clicks. *See, e.g.*, Compl. ¶¶ 111, Figure 4 (showing only that user accessed a URL and clicked "Print Voucher"); ¶ 124, Figure 10 (showing that only information transmitted from the MyFreeStyle coupon program signup page is button clicked for "Gender" and confirming that responses for name, email, DOB, phone, insurance type, etc. are NOT shared). These allegations do not show that Abbott disclosed Private Information and directly contradict Plaintiffs' assertions to the contrary.

Plaintiffs rely on hypotheticals and threadbare allegations to make an inferential leap: that the web tracking tools *must have* disclosed Plaintiffs' Private Information in violation of, inter alia, quasi-criminal state and federal wiretap laws. But conclusory allegations, like these, are not facts (*see* Opp. at 6-7). *See Doe v. Columbia College Chicago*, 993 F.3d 849, 854 (7th Cir.) ("A plaintiff must plead particularized ***factual content***, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct.") (emphasis added); *Aprill v. Aquila*, No. 20 C 04657, 2022 WL 614984, at *5 (N.D. Ill. Mar. 1, 2022) ("[N]aked assertion[s]

devoid of further factual enhancement" are insufficient.") (citation and internal quotations omitted). This Court should reject Plaintiffs' use of speculation and conjecture to try to connect the dots between their conclusory allegations and their hoped-for legal conclusion that their particular activity on the Website "revealed [their] PHI." *See., e.g.* Compl. ¶¶ 197, 214, 231.

#### b. Plaintiffs' Case Law Does Not Support Their Argument That They Adequately Alleged Disclosure of Private Information.

Plaintiffs claim "[v]irtually identical allegations involving disclosures of medical information have been found to constitute IIHI by every court in this district that has considered them." Opp. at 7. They are wrong. Each case Plaintiffs cite in support of this flawed proposition contains materially distinguishable allegations about disclosure of patient information. For example, Plaintiffs cite to *A.D. v. Aspen Dental Mgt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) ("*Aspen*") and *Smith v. Loyola U. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *1-2 (N.D. Ill. July 9, 2024) over a dozen times throughout their opposition. These cases allege disclosure of patient-related health information, including details about medical appointments, searches for specific providers, communications with providers about medical conditions, test results, and drug prescription information. *See Smith*, at *1-2 (plaintiffs alleged Meta Pixel caused details regarding their surgical appointments, doctors, test results and prescriptions to be shared with Meta);[2] *Aspen*, at *3 (plaintiffs alleged disclosure of their medical appointments and specific medical providers); *see also Hartley v. Univ. of Chicago Med. Ctr.*, No. 22-C-5891, 2024 WL 1886909, at *2 (N.D. Ill. Apr. 30, 2024) (alleged disclosure of plaintiffs'

---

[2] The stark contrast between this case and the types of health information alleged in *Smith* is further emphasized by the fact that the specific allegations in the *Smith* complaint referencing plaintiff's health information were redacted due to the sensitive nature of health information allegedly disclosed. *See Smith v. Loyola U. Med. Ctr.*, No. 23 CV 15828, Dkt. 1-1 (N.D. Ill.). Here, Plaintiffs determined no such redactions were necessary. Any disclosure or publication of Plaintiffs' health information or condition was done voluntarily by Plaintiffs in their Complaint.

health information from defendant's patient portal, including plaintiffs' scheduled appointments, test results, searches for medical specialists, and prescriptions refills).

In stark contrast, no such information is at-issue here. The information contained in the Complaint's alleged "disclosures" shows nothing more than webpages visited, and some, but critically not all, buttons clicked on a short fillable form to request a coupon. A far cry from divulging details about an individual's medical conditions or disclosing information after a known patient has logged in, Plaintiffs cannot even allege that the "tracking tools" at issue capture whether users filled out the form for themselves or another person. *See* Compl. ¶ 124, Fig. 10 (providing screenshot of form and highlighting only that form was completed, gender was selected). Thus, Plaintiffs' speculative allegations are nowhere near "virtually identical" to the facts alleged in the cases on which they rely so heavily.

Without any disclosure of "Private Information" each of Plaintiffs' claims fail. Again, there simply cannot be a plausible privacy violation without a privacy interest at stake.

## III. Some of Plaintiffs' Claims Are Unquestionably Barred by the Statute of Limitations

Plaintiffs' Opposition asserts two arguments for why the statute of limitations should not bar everything except for Plaintiff Ortega's ECPA and negligence claims. The Court can easily dispose with both. First, Plaintiffs assert their claims are tolled because they "could not have known about Abbott's conduct until they contacted undersigned counsel in 2024." Opp. at 4. Plaintiffs cite no authority for this position and indeed cannot. Delaying application of the statute of limitations until litigants elected to speak with a lawyer would undermine the entire purpose of a limitations period. *Rosas v. Bd. of Educ. of City of Chicago*, 652 F. Supp. 3d 951, 969 (N.D. Ill. 2023) ("If every plaintiff could avoid timeliness requirements merely because they lack legal training, then timeliness would become a hollow requirement.").

Second, Plaintiffs argue the purported "technological complexity and secrecy of Abbott's Tracking Tools" relieves them of the reasonable diligence requirement otherwise necessary to establish tolling. Plaintiffs cite *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) in support of this position. But that court simply found that two articles published just before the filing of the at-issue complaint and only referenced in passing therein failed to put that plaintiff on notice of their claims. *Id*. at 1256. In contrast, the Complaint here is replete with citations to articles in diverse publications about the widespread use of the Tracking Tools alleged which were in circulation years before the filing of the Complaint. These Plaintiffs were plainly on notice.

Moreover, Plaintiffs own allegations admit that Abbott's Privacy Policy discloses the use of Tracking Tools. Compl. at ¶ 133. Plaintiffs assert that Abbott misrepresented that it would obtain Plaintiffs' consent before transmitting health information and failed to do so. But as set forth above: Plaintiffs fail to plausibly allege that any Private Information—including health information—was ever disclosed. *See* Sec. II. Thus, there can be no concealment, fraudulent or otherwise, and Abbott's Privacy Policy—which Plaintiffs' admit expressly discloses the use of tracking technologies and could have been identified with basic diligence—eviscerates any potential application of tolling here. As such, the only claims that remain after application of the statute of limitations are Plaintiff Ortega's ECPA and negligence claims.

## IV. The One-Party Consent Exception Bars Plaintiffs' Claims Under the ECPA and the Crime-Tort Exception Does Not Apply

As Plaintiffs concede, Abbott was a party to any alleged communication. *See* Compl. ¶ 293; ¶ 66 (describing Abbott as the "intended recipient" of Plaintiffs' communications). Thus, Abbott could not "intercept" its own communication in violation of the ECPA's one-party consent rule. *See* Mot. at 10. Plaintiffs assert in Opposition that they may circumvent the ECPA's strict one-party consent rule due to the crime-tort exception, arguing that (1) Abbott committed a tortious

or criminal act that is independent from the alleged wiretapping; (2) Abbott's primary motivation in implementing the tracking tools was to commit a crime or tort; and (3) Abbott's disclosure of Private Information constitutes a violation of HIPAA. Each argument is unavailing.

**a. Plaintiffs Cannot Satisfy the "Independent Purpose" Element of the Crime-Tort Exception.**

As Plaintiffs acknowledge (*see* Opp. at 11), to state a claim for violation of the ECPA under the crime tort exception, they must plead facts showing that the alleged interception was committed for a criminal or tortious purpose that was *independent* from the act of disclosure. *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (citation omitted).

Plaintiffs fail to show an "independent" purpose separate from disclosure. In Opposition, Plaintiffs disingenuously attempt to argue that the alleged ***disclosure*** (transmission) to third parties is sufficiently separate from the ***interception***, despite pleading that interception and disclosure are part of the same process. *See* Compl. ¶¶ 78-87. This nonsensical argument plainly fails. *See T.D. v. Piedmont Healthcare, Inc.,* No. 1:23-CV-5416-TWT, 2024 WL 5284883, at *4 (N.D. Ga. Dec. 10, 2024) ("*Piedmont II*") (rejecting plaintiffs' argument "that Piedmont's *disclosure* of the communication to Facebook was a tortious or criminal act independent of the *interception* of the communication") (italics in original); *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. May 13, 2024) (same); *see also id.* ("The alleged conduct in *Pena* was significantly more bifurcated than the conduct alleged here, where Plaintiff alleges the simultaneous transmission of communications to third parties like Facebook, yet the court declined to distinguish between the act of recording and the act of transmitting.") (citing *Pena v. GameStop*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023)).

Further, as the Complaint's allegations clearly illustrate, Plaintiffs claim that the use of the tracking tools at issue result in the disclosure of information to third parties and allow for the ***third***

***parties*** to intercept such information. Compl. ¶¶ 201, 218, 235 (alleging Plaintiffs' information was "intercepted, disclosed, viewed, analyzed and used by unauthorized third parties"). Plaintiffs plainly do not allege two independent acts of interception and disclosure on behalf of Abbott, despite the Opposition's misleading argument. Because the alleged criminal or tortious purposes are duplicative of the allegedly unlawful wiretapping itself, Plaintiffs fail to establish the crime-tort exception applies and their ECPA claim must fail. *See Kurowski*, 683 Supp. at 844 (declining to apply crime-tort exception where alleged criminal or tortious purpose was duplicative of the alleged wiretapping and dismissing plaintiffs' ECPA claim).

**b. Plaintiffs Cannot Demonstrate Abbott's Primary Motivation Was to Commit a Crime or Tort.**

Even if the alleged disclosure was considered an independent act, Plaintiffs plead no facts to show that committing a crime or tort was Abbott's "purpose" or "primary motivation" in using the tracking tools at issue. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("plaintiffs must allege that either the "primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously"). Moreover, the exception "is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party." *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013). *Cf. Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) (finding plaintiff's allegations "that defendants' conduct amounted to a tort" insufficient under the crime-tort exception, and noting "whether a tort was committed is irrelevant—the test is whether Defendants intended to commit a tort.") (underline in original). While there are times when determining intent can become a disputed issue of fact, here, there is no such ambiguity as the Complaint lacks any good faith allegations that Abbott had such an unlawful intent.

**c. Plaintiffs Cannot Satisfy the Crime-Tort Exception With Implausible Allegations that Abbott Violated HIPAA.**

As discussed above, *supra* Sec. II, the facts alleged in the Complaint fail to demonstrate Abbott violated HIPAA because no Private Information was disclosed. And certainly, in the absence of such facts, the Complaint also contains nothing to support an inference that Abbott *intended* to violate HIPAA by utilizing commonplace technologies on its Website. Instead, the Complaint demonstrates that Abbott's "primary motivation was to make money, not to injure plaintiffs tortiously." *Piedmont II*, at *4 (citing *Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024)). In *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) ("*Piedmont I*"), *reconsideration denied* in *Piedmont II*) the court rejected plaintiffs' argument that the defendant hospital had acted with a criminal or tortious intent by installing tracking technologies on its website, finding instead that defendant "could [not] have acted with a tortious or criminal purpose in seeking to drive marketing and revenue." The court noted that "the weight of persuasive authority in similar pixel tracking cases supports [this] position," citing seven decisions in which district courts found the crime-tort exception inapplicable and dismissed plaintiffs' ECPA claims. *See id*. (citing *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015); *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023); *Nienaber*, 2024 WL 2133709, at *15; *Santoro v. Tower Health*, 2024 WL 1773371, at *3-4 (E.D. Pa. Apr. 24, 2024); *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1268-71 (N.D. Ca. 2001); *Okash*, 2024 WL 1285779, at *3-4). As in *Piedmont I* and the plethora of other similar pixel tracking cases, Plaintiffs cannot demonstrate a criminal or tortious purpose where the Complaint itself repeatedly admits Abbott's motivation

in implementing the tracking tools is for "for marketing purposes." S*ee, e.g.,* Compl. ¶¶ 22, 135, 137, 151, 303.

In the absence of disclosure of Private Information in violation of HIPAA, Abbott's marketing purposes do not qualify as a primary motivation under crime-tort exception. Plaintiffs' cited cases to the contrary are each readily distinguishable because they all alleged facts to show a disclosure of sensitive health information, thereby pleading a violation of HIPAA or otherwise establishing a tort claim.[3] Plaintiffs' attempt to equate the substance of their allegations with those cases is flawed. As discussed above, *see supra,* Sec. II, the information at issue here is not PHI; Plaintiffs cannot shoehorn their claims through the pleadings stage with their inapposite square-peg allegations.

## V. Plaintiffs Fail to Plausibly Allege a Violation of the CIPA

### a. The One-Party Consent Exception Bars Plaintiffs' Claims Under the CIPA

Like Plaintiffs' ECPA claim, Plaintiffs' CIPA claim is also barred by the CIPA's one-party consent provision. *See* Mot. at 12; *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 152 (3d Cir. 2015) ("*In re Google*") (affirming the district court's dismissal of plaintiffs' CIPA "for the same reason that [the district court] dismissed the plaintiffs' federal wiretapping claim" and noting "§ 631 [of the CIPA] is aimed only at 'eavesdropping, or the secret monitoring

[3] *See also Aspen*, 2024 WL 4119153 *3 (plaintiffs alleged defendant transmitted their patient status, medical conditions, details about medical appointments and treatments, specific medical providers, and other sensitive health information.); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (plaintiff alleged that defendant disclosed the name and location of her personal physician, her physician's specialty, and medical condition); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 926 (D. Minn. 2024) (plaintiffs allege that substantive personal health information, including details about medical appointments, conditions, and treatments, was obtained via the Pixel.); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024) (plaintiff alleged that defendant disclosed patient status, prescription information (including specific drugs and pricing information), immunization information, treatments, patient location, and health insurance coverage.); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 886 (C.D. Cal. 2024) ("Walgreens") (plaintiffs alleged that their identities, personal identifiers, and personal health information (including their medical conditions and treatments sought) were disclosed to Meta without their consent.).

of conversations by *third parties.* ") (emphasis added)). Just this month, a district court found that plaintiffs in a similar case could not maintain their CIPA claim due to the one-party consent rule because the defendant was an "intended recipient" of the requests sent from plaintiffs' browsers. *See Cole v. Quest Diagnostics*, Inc., No. 2:23-CV-20647-WJM, 2025 WL 88703, at *2 (D.N.J. Jan. 14, 2025). In *Cole*, like here, plaintiffs alleged that defendant improperly disclosed plaintiffs' medical information to Facebook via the operation of the Facebook Pixel on their website. The district court reconsidered its prior denial of defendant's motion to dismiss plaintiffs' CIPA claim and found that under *In re Google*, plaintiffs' CIPA claim failed because defendant was a party to the communication. *Id*. at *3 (noting "plaintiffs' browsers directly communicate with the [alleged eavesdropper] about the webpages they are visiting, and as such, there is no need for the [eavesdropper] to acquire that information from transmissions to which they are not a party.") (internal quotations omitted). As in *Cole*, Plaintiffs here allege that Abbott was a recipient of their communications with the Website. *See* Compl. ¶¶ 66, 293. Plaintiffs' CIPA claim too must fail.

**b. Plaintiffs' Complaint Fails to Allege "Contents" of Communication Under the First Clause of Section 631(a).**

Plaintiffs' Opposition attempts to reframe their CIPA claim by asserting they seek to impose both direct and derivative liability against Abbott. Even so, Plaintiffs' claim for direct liability under the CIPA fails because Abbott is a party to the communication. *See* Mot. at 12. Separately, Plaintiffs present nothing to show that the threadbare allegations in the Complaint demonstrate derivative aiding and abetting liability under CIPA.

The Complaint's use of conclusory allegations fails to assert facts demonstrating that the "contents" of Plaintiffs' communications were disclosed under Section 631(a). Plaintiffs assert in circular fashion that URLs of pages visited, button clicks and search bar queries are "contents of communications" because they "communicate Private Information" Compl. ¶¶ 103, 110, 168. But

Plaintiffs fail to allege plausible facts demonstrating that Private Information of any kind, let alone ***their*** Private Information, was disclosed. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) (*Cousin I*) (rejecting plaintiffs' "vague" conclusions that they entered sensitive health information into defendant's website as "utterly devoid of factual enhancement"). Contrary to Plaintiffs' argument, their allegations are distinctly unlike those in *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. 2023) ("*Cousin II*") (holding plaintiffs had sufficiently alleged disclosure of "contents" of communications under the CIPA).

In *Cousin II*, plaintiffs alleged in their amended complaint that the Pixel on the defendant's website caused to be shared with Meta information about their scheduled appointments, test results, interactions with doctors and "specific information to dictate the reason for [their] visit to [the website]." *See Cousin v. Sharp Healthcare*, No. 3:22-cv-02040, Dkt. 14 ¶¶ 10-13 (Amended Complaint) (S.D. Cal. Mar. 3, 2023). The court found these allegations sufficient to plead disclosure of PHI and "contents" of communication under the CIPA. Here, no such allegations are present. Plaintiffs do not allege that they used the Website to schedule medical appointments, receive test results, communicate with their doctors, or otherwise "dictate the reason" for their interactions with the Website (nor do they allege the Website even had the capability to do any of those things. They allege only that they requested free trials of the FreeStyle Libre products and ran unspecified searches through the Website's search bar and conclude that such actions "communicate[d] information related to [their] diabetes and other Private Information" Compl. ¶ 214. But these allegations simply do not meet Plaintiffs' burden to establish "contents or meaning of any message, report, or communication" under the CIPA, as required to establish "contents" of a communication were disclosed. Section 631(a)(ii). *See Cousin I,* at 1224 (dismissing CIPA and other privacy claims where the complaint alleged details in a hypothetical manner and otherwise

"fail[ed] to allege that these webpage interactions … plausibly conveyed their patient status" or otherwise disclosed sensitive medical information).

**c. Plaintiffs' Complaint Fails to Allege Interception "In Transit" Under the Second Clause of Section 631(a).**

In Opposition, Plaintiffs use word like "simultaneous" and "contemporaneous" in an attempt to establish an interception "in transit." But these legal conclusions should not distract the Court from Plaintiffs actual allegations in the Complaint about the Meta Pixel's functionality. According to the Complaint, Facebook's alleged interception occurs *after* Plaintiffs' purported communication reaches its destination at Abbott's server, thereby making it implausible – in fact, at least in the space-time continuum governing the Northern District of Illinois, impossible -- that the interception took place "in transit" as required under the CIPA. *See* Compl. ¶¶ 78-87. Plaintiffs' opposition legal arguments offered now that such transmissions occurred "simultaneously" and "contemporaneously" cannot undo their prior allegations in the Complaint.

**d. Plaintiffs' Complaint Fails to Allege Use of Information Under the Third Clause of Section 631(a).**

Plaintiffs' failure to show that Abbott violated either of the first two clauses of Section 631(a) also dooms their claim that Facebook violated the third clause of Section 631(a), which requires a predicate violation of one of the first two clauses.

## VI. Plaintiffs Fail to State a Claim for Negligence.

**a. The Economic Loss Doctrine Precludes Plaintiffs' Negligence Claim.**

The Complaint plainly alleges a breach of contractual promises asserted in Abbott's Website Privacy Policy and seeks recovery of economic damages. *See* Compl. ¶¶ 128-136. Such recovery is barred by the economic loss doctrine, thereby requiring dismissal of Plaintiffs'

negligence claim. Plaintiffs' attempts in Opposition to reel back their pled allegations about the contractual nature of the Privacy Policy are unavailing.

In *Doe v. Genesis Health System*, the Central District of Illinois dismissed the plaintiff's negligence claim under the economic loss doctrine in a similar case involving the alleged disclosure of personal information via defendant's use of website tracking technologies. No. 23-CV-4209, 2024 WL 3890164 (C.D. Ill. Aug. 21, 2024). Like the Complaint here, the *Doe* complaint included allegations about defendant's violation of its own website privacy policies. The court considered these allegations to find defendant's privacy policies amounted to a contract, noting "other courts have accepted this as well." *Id*. at *8 (citing *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 598-99 (N.D. Ill. 2022) (finding an express contract where plaintiff alleged that she "was offered and accepted the Terms of Use and Privacy Policy"); *Kurowski*, 683 F. Supp. at 850-51 (finding an express contract based on the "promises" defendant made its portal's "terms and conditions)). The court then considered the nature of the plaintiff's claims and theory of recovery to find that the economic loss doctrine required dismissal of the plaintiff's negligence and negligence *per se* claims. *Id*. at *12. Because the plaintiff alleged the defendant's duty "arose by operation of contract" via the privacy policies described in the complaint, the economic loss doctrine applied, thereby barring tort liability for the plaintiff's economic losses. *Id*. In reaching this decision, the *Doe* Court considered the three exceptions to the economic loss rule but declined to apply any of the exceptions.[4] *Id.* (noting "Plaintiff does not

[4] The three exceptions considered by the *Doe* court were "(1) where a plaintiff sustains personal injury or property damage resulting from a sudden or dangerous occurrence; (2) where plaintiff's damages were proximately caused by defendant's intentional, false representation; and (3) where plaintiff's damages were proximately caused by the negligent misrepresentation of a defendant in the business of supplying information for the guidance of others in business transactions." *Id*. at *11. (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (1982)).

discuss any of the *Moorman* exceptions and merely cites cases where the unauthorized disclosure of PII or PHI was found sufficient to sustain a claim for negligence damages.")

Here, Plaintiffs' allegations regarding the privacy policy demonstrate the contractual nature of their negligence claim, and like the *Doe* plaintiffs, Plaintiffs present nothing (in their Complaint, Opposition, or otherwise) to qualify under any of the exceptions to the economic loss rule. *See* Opp. at 18 (acknowledging that Plaintiffs allege Abbott's duty arose from its Privacy Policy). Instead, they merely "cite cases where the unauthorized disclosure of PII or PHI was found sufficient to sustain a claim for negligence damages." *Doe*, 2024 WL 3890164 at *12. Specifically, Plaintiffs cite only to data breach cases in which the court found defendants had a common law or statutory duty to safeguard plaintiffs' information from unauthorized intruders. *See Flores v. Aon Corp.*, 242 N.E.3d 340, 361 (Ill. App. 1st Dist. 2023) (finding negligence duty to protect plaintiffs' information from data beach arose under common law); *In re Mondelez Data Breach Litig.*, No. 23 C 3999, 2024 WL 2817489, at *5 (N.D. Ill. June 3, 2024) (declining to apply economic loss doctrine to data breach case); *Sweet v. BJC Health System*, No. 3:20-CV-00947-NJR, 2021 WL 2661569, at *8 (S.D. Ill. June 29, 2021) (noting common law duty existed in data breach case where plaintiffs' allegations that they were patients of defendant healthcare provider demonstrated the existence of both statutory and common law duties). No such common law or statutory duty can be inferred here where no data breach occurred and no sensitive information was disclosed.[5] Instead, the duty Plaintiffs attempt to assert arises from perceived obligations that are contractual

[5] For the same reasons that *Aspen* and *Smith* are clearly distinguishable from Abbott regarding disclosure of health information, those cases' findings of a statutory duty based on 815 ILCS 530/45(a) are also inapplicable here. 815 ILCS 530/45(a) protects against the disclosure of "personal information" which is defined to include sensitive information such as "medical information." 815 Ill. Comp. Stat. Ann. 530/5. Because no such information is plausibly alleged to be disclosed here, a statutory duty based upon 815 ILCS 530/45(a) cannot be established. *See supra*, Sec. II.

in nature via the Privacy Policy. Accordingly, the economic loss doctrine precludes Plaintiffs' negligence claim and requires dismissal.

#### b. Plaintiffs Fail to Establish the *Prima Facie* Elements Necessary to Plead a Negligence Claim.

As discussed above, Plaintiffs cannot plausibly show that their medical information was disclosed to Facebook or any other third party through the publicly-accessible Website. *See supra*, Sec. II. In other words, there was no privacy duty breached. Therefore, Plaintiffs' negligence claim fails for this reason as well. Furthermore, in the absence of facts showing the disclosure of Private Information, Plaintiffs also fail to establish that they suffered any cognizable injury. Plaintiffs fail to establish that their vague allegation of "fear, anxiety and worry about the status of, and the loss of control over, their private health information" constitutes negligence damages, since they have not plausibly pled a disclosure or any "loss of control" of their health information at all. *Compare Smith*, 2024 WL 3338941 at *7 (finding allegations of emotional harm sufficient to state a negligence claim where plaintiffs alleged defendant's website tracking devices transmitted information about plaintiffs' medical appointments, treatment location, specific healthcare providers, and test results that was so sensitive it had to be redacted from the public record). Because Plaintiffs cannot establish any of the elements of their *prima facie* negligence claim, their negligence claim must fail.

## VII. Conclusion

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.

Dated: January 31, 2025

*/s/ William F. Farley*

William F. Farley (6305896)
Timothy Ray (6230099)
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
(312) 928-6024
william.farley@hklaw.com

Mark S. Melodia (admitted *pro hac vice*)
HOLLAND& KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, NY 10019
(212) 513-3583
mark.melodia@hklaw.com

Ashely L. Shively (264912)
HOLLAND & KNIGHT LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
(415) 743-6906
ashley.shively@hklaw.com

Caitlin F. Saladrigas (admitted *pro hac vice*)
HOLLAND & KNIGHT LLP
777 South Flagler Drive,
Suite 1900, West Tower
West Palm Beach, FL 33401
(561) 650-8349
caitlin.saladrigas@hklaw.com

*Counsel for Defendant*
*Abbott Laboratories, Inc.*