**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LILY NGUYEN, EMZORA MITCHELL and FRANK ORTEGA, on behalf of themselves and all others similar situated,

Plaintiffs,

v.

ABBOTT LABORATORIES INC.,

Defendant.

Case No. 1:24-cv-8289-MSS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page


I. PROCEDURAL BACKGROUND .....2

II. LEGAL STANDARD .....3

III. ARGUMENT .....4

A. THE FACC ADDS MEANINGLESS FACTS THAT FAIL TO ADDRESS WHAT DATA THE WEBSITE TOOLS ARE CAPABLE OF CAPTURING. .....4

B. THE FACC STILL LACKS ANY FACTS SUPPORTING THE ASSERTION THAT ABBOTT DISCLOSED PRIVATE INFORMATION. .....8

1. Plaintiffs' Conclusory Allegations Remain Insufficient. .....8

2. Plaintiffs Cling to Outdated, Unhelpful Federal Guidance. .....11

C. PLAINTIFFS' ECPA CLAIM REMAINS FATALLY DEFICIENT (COUNT I). .....12

D. EVEN WITH PLAINTIFFS' AMENDMENTS, THE FACC FAILS TO PLAUSIBLY PLEAD A CIPA VIOLATION (COUNT III). .....14

1. As a Party to the Communication, Abbott Cannot be Directly Liable Under CIPA. .....15

2. Plaintiffs Cannot State an Aiding and Abetting Claim Against Abbott Because They Do Not Plausibly Allege Third Parties Violated CIPA. .....15

i. Plaintiffs Cannot State a Claim for "Intentional Wiretapping" Under the First Clause of Section 631(a). .....15

ii. Plaintiffs Fail to Allege "Contents" of a Communication Within Scope of the Second Clause of Section 631(a). .....16

iii. Plaintiffs Do Not Allege Facebook Intercepted Communications While "In Transit" Under the Second Clause of Section 631(a). .....17

iv. Plaintiffs Fail to Allege Facebook Attempted To Use or Communicate Information Under the Third Clause of Section 631(a). .....19

E. PLAINTIFFS' NEGLIGENCE CLAIM REMAINS IMPLAUSIBLY PLED (COUNT II). .....19

1. Plaintiffs Do Not Allege Abbott Breached a Duty of Care. .....20

2. Plaintiffs Do Not Allege Proximate Cause or Damages. .....20

IV. CONCLUSION .....20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................1, 2, 12

*B.K. v. Eisenhower Med. Ctr.*,
No. 23-cv-02092, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024) ....................11

*Birdwell v. Costco Wholesale Corp.*,
No. C23-02416, 2024 WL 2240699 (Cal. Super. May 15, 2024) ....................18

*Bissessur v. Ind. Univ. Bd. of Trs.*,
581 F.3d 599 (7th Cir. 2009) ....................3

*Checksum Ventures, LLC v. Dell Inc.*,
412 F. Supp. 3d 906 (N.D. Ill. 2019) ....................3

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) ....................15

*Cousin v. Sharp Health*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....................16, 17

*Cousin v. Sharp Health*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ....................16, 17

*Cowper v. Nyberg*,
28 N.E.3d 768 (Ill. 2015) ....................19

*Doe 1 v. Chestnut Health Sys., Inc.*,
No. 1:24-cv-01475, 2025 WL 1616635 (C.D. Ill. June 6, 2025) ....................13

*Doe v. Davita, Inc.*,
No. 23-cv-01424, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ....................10, 11

*Doe v. Genesis Health Sys.*,
No. 4:23-cv-04209, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ....................14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................15

*G.T. v. Samsung Elec. Am., Inc.*,
760 F. Supp. 3d 665 (N.D. Ill. 2024) ....................4

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................17

*Hannant v. Culbertson*,
No. 4:24-cv-04164, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ....................7, 10

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D.Ill. 2020) ....................7

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-cv-08002, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023)....................16

*Jauquet v. Green Bay Area Cath. Educ., Inc.*,
996 F.3d 802 (7th Cir. 2021) ....................7

*Jones v. Tonal Sys., Inc.*,
No. 3:23-CV-1267, 2024 WL 4357558 (S.D. Cal. Sept. 30, 2024)....................18, 19

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................16

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................11, 13

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....................16

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................18

*McCauley v. City of Chi.*,
671 F.3d 611 (7th Cir. 2011) ....................3

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................13

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-cv-04674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ....................20

*Nguyen v. Abbott Lab'ys, Inc.*,
No. 24-CV-8289, 2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ....................3

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-cv-01159, 2024 WL 2133709 (W.D. Wash. May 13, 2024) ....................11

*Rand v. Eyemart Express*,
2024 WL 4376162 (N.D. Tx. Oct. 1, 2024)....................4, 10

*Rand v. Eyemart Express, LLC*,
No. 3:24-CV-621, 2025 WL 1519726 (N.D. Tex. May 27, 2025) ....................................9, 11

*Rodriguez v. Google LLC*,
No. 20-cv-04688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)..............................................18

*Ross v. Nat'l Gen. Ins.*,
No. 24-C-08222, 2025 WL 2256899 (N.D. Ill. Aug. 7, 2025) ................................................3

*Santoro v. Tower Health*,
No. 22-cv-04580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024).......................................11, 20

*Sheikh v. Wheeler*,
790 F. App'x. 793 (7th Cir. 2019) ..............................................................................................6

*Smart v. Main Line Health*,
No. CV 22-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024) .............................................11

*Stanard v. Nygren*,
658 F.3d 792 (7th Cir. 2011) ......................................................................................................5

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (Cal. 1978).................................................................................................14, 19

*In re Vizio Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...................................................................................19

*Williams v. What If Holdings, LLC*,
No. 22-cv-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)..........................................15

*Wolf Run Hollow, LLC v. State Farm Bank, F.S.B.*,
No. 12-cv-09449, 2013 WL 6182941 (N.D. Ill. Nov. 26, 2013) ............................................19

**Statutes**

18 U.S.C. § 2511(1)(a)...............................................................................................................12

18 U.S.C. § 2511(2)(d) ........................................................................................................12, 13

18 U.S.C. § 2520(a) ...................................................................................................................12

Cal. Pen. Code § 631(a) ......................................................................................................14, 16

**Other Authorities**

45 C.F.R. § 160.103 ..................................................................................................................12

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 2

Defendant Abbott Laboratories Inc. ("Abbott") respectfully moves to dismiss the First Amended Class Action Complaint ("FACC") (Dkt. 33) filed by Lily Nguyen, Emzora Mitchell, and Frank Ortega ("Plaintiffs") under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Despite this Court's clear holding that "merely browsing and searching Abbott's website doesn't amount to a disclosure of individually identifiable health information," Plaintiffs' FACC misses the mark entirely. The new allegations—centered around either Plaintiffs' general biographical details or their broader relationship with Abbott or its products—all describe interactions that occurred outside the scope of what the software on Abbott's public marketing website could capture. None of these amendments address the essential deficiencies: facts demonstrating that the specific website tools at issue actually captured and transmitted protected health information. Instead, Plaintiffs conflate their entire customer relationship with Abbott with the narrow question of what data the tools collected from the marketing website. The result is an 82-page FACC that still fails to bridge the "too tenuous" connection this Court identified, as Plaintiffs' own screenshots continue to show the website tools capturing only generic web analytics like button clicks and gender selection—not the protected health information required to state a claim.

Moreover, despite these new allegations, Plaintiffs still stumble over the same threshold issue: their theory that "Private Information" was intercepted and disclosed to third parties relies on rejected guidance from the U.S. Department of Health and Human Services, Office of Civil Rights ("OCR").[1] The random, innocuous information at issue here does not constitute health

---

[1] The (now-vacated) OCR guidance stated that if online tracking allowed a third party to know that someone from a certain IP address had accessed a healthcare provider's unauthenticated public webpage (websites that don't require login credentials or user verification), that alone could constitute "individually identifiable health information" under HIPAA. On review, a federal court flatly rejected this sweeping assumption, and vacated the relevant portions of the guidance (even as later revised). *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 807 (N.D. Tex. 2024). The court found that merely visiting a healthcare

information protected under HIPAA or any other law. Each of Plaintiffs' claims relies, in part, on the misapplication of this legal label. Each of Plaintiffs' claims is also independently insufficient:

- Plaintiffs' claim for violation of the Electronic Communications Privacy Act ("ECPA") still fails because Abbott qualifies under the "party exception," and Plaintiffs do not and cannot plausibly allege that Abbott's use of tracking technologies on its website was for "criminal or tortious" purposes.
- Plaintiffs' claim for violation of the California Invasion of Privacy Act ("CIPA") still fails for two reasons: (a) Plaintiffs' direct liability theory under the CIPA, like their ECPA claim, fails because Abbott was a party to the communications and therefore cannot be directly liable; and (2) Plaintiffs cannot state a CIPA claim based on indirect liability because they fail to plausibly allege a predicate violation of the statute by Facebook or other third parties. With respect to Facebook's alleged violation of CIPA, Plaintiffs still fail to show "content" within scope of the statute, and cannot demonstrate their communications were intercepted while "in transit."
- Plaintiffs' negligence claim fails because (1) Plaintiffs cannot demonstrate Abbott breached any duty where, as a matter of law, none of Plaintiffs' Private Information was disclosed; and (2) Plaintiffs cannot establish causation or damages because they do not describe what specific information they provided to the FSL Marketing Website (defined below) and any consequences of their interactions with Abbott's website.

Thus, Abbott seeks dismissal of Plaintiffs' FACC with prejudice under Rule 12(b)(6).

## I. <u>PROCEDURAL BACKGROUND</u>

Plaintiffs filed their initial complaint on September 11, 2024 ("Complaint") (Dkt. 1), based on the faulty premise that Abbott improperly disclosed purportedly "Private Information"[2] to Facebook[3] and Google through Abbott's use of pixels and similar technology embedded on its marketing website for the FreeStyle Libre glucose monitoring device (the "FSL Marketing

provider's unauthenticated public website does not necessarily relate to an individual's past, present, or future physical or mental health or condition, the individual's receipt of health care, or the individual's payment for healthcare. *Id*. at 801. The FACC acknowledges that the OCR guidance was partially vacated and now only applies in limited instances not applicable here, such as "making appointments for particular conditions, paying medical bills, or logging into (or using) a patient portal." *See* FACC ¶ 51, n. 22.

[2] The FACC defines "Private Information" to mean "confidential personally identifiable information ('PII') and protected health information ('PHI')." FACC ¶ 4.

[3] In October 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. Unless otherwise indicated, Facebook, Inc. and Meta Platforms, Inc. are referenced collectively as "Facebook."

Website").[4] Plaintiffs' Complaint contained approximately 60 pages of generalized and conclusory allegations along with numerous contradictory screenshots. Plaintiffs asserted three claims: violation of the ECPA (Count I), negligence (Count II), and violation of CIPA. (Count III).

On August 8, 2025, this Court dismissed Plaintiffs' Complaint in its entirety. *See* August 8, 2025, Mem. Op. & Order, *Nguyen v. Abbott Lab'ys, Inc.,* No. 24-CV-8289, 2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) (the "Order") (Dkt. 32). In assessing Plaintiffs' allegations regarding how information was collected and purportedly transferred to third parties, this Court found "the connection between [P]laintiffs' web activities and disclosure of individually identifiable health information is 'too tenuous' to support an inference that Abbott violated HIPAA." *Id*. at *6. This Court then concluded Plaintiffs' ECPA claim was insufficiently pled. The Court also dismissed Plaintiffs' state law negligence and CIPA claims due to insufficient facts to invoke jurisdiction under the Class Action Fairness Act. *Id*. On September 5, 2025, Plaintiffs filed the FACC.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff must provide "some specific facts to support the legal claims asserted" and cannot rely on conclusory allegations to make her claim. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Nor can allegations contradicted in the complaint be accepted as true in the plaintiff's favor. *See Ross v. Nat'l Gen. Ins.,* No. 24-C-08222, 2025 WL 2256899, at

[4] The Court can use common sense in reviewing the allegations of the complaint. *Checksum Ventures, LLC v. Dell Inc.,* 412 F. Supp. 3d 906, 911 (N.D. Ill. 2019) (relying on common sense and judicial experience to assess the plausibility of the plaintiff's claims). Here, it is facially obvious that the FSL Marketing Website is not behind a log-in screen. *See* FACC ¶ 7. Rather, the FSL Marketing Website is public facing and unauthenticated. *See FreeStyle Libre*, Abbott, https://www.freestyle.abbott/us-en/home.html (last visited Sept. 22, 2025).

*5 (N.D. Ill. Aug. 7, 2025) (holding that the Court accepts allegations as true unless they are directly contradicted by a document incorporated into the complaint). A plaintiff is not entitled to unlimited opportunities to attempt to plausibly plead their claims. *G.T. v. Samsung Elec. Am., Inc.,* 760 F. Supp. 3d 665, 668-671 (N.D. Ill. 2024) (granting defendant's second motion to dismiss with prejudice after plaintiff failed to cure the deficiencies in the complaint).

Plaintiffs' FACC should be dismissed with prejudice.

## III. ARGUMENT

### A. The FACC Adds Meaningless Facts That Fail To Address What Data The Website Tools Are Capable Of Capturing.

In response to this Court's Order, Plaintiffs inject marginally-modified screenshots of hypothetical user activity and a handful of cookie-cutter allegations purportedly reflecting their individual experiences with Abbott in an effort to plug the gaping factual holes undermining their claims. However, these new allegations are, individually and collectively, some combination of immaterial, contradictory, or conclusory. In fact, none of the new allegations relate to specific data that was captured, either expressly or impliedly, by the website technology at issue. Accordingly, none of these new allegations support the inference that Plaintiffs' "Private Information" was transmitted by Abbott to third parties without Plaintiffs' consent.

First, each Plaintiff alleges that their physician purportedly prescribed them with a continuous glucose monitor ("CGM") device to treat their respective diabetes condition and referred them to Abbott's website. FACC ¶¶ 195, 218, 241. But whether each Plaintiff was prescribed with a CGM, or directed to go to Abbott's website—facts that Abbott could have never known—is legally irrelevant to the Court's inquiry here,[5] which is simply whether Abbott

[5] *Rand v. Eyemart Express*, 2024 WL 4376162, at *4 (N.D. Tx. Oct. 1, 2024) ("*Rand I*") ("Courts have found that HIPAA does not extend liability for entities to guard against 'visitors' subjective motives for visiting the page.'" (citing *Am. Hosp. Ass'n*, 2024 WL 3075865 at *12)).

transmitted Plaintiffs' HIPAA-protected information without Plaintiffs' consent. Legally irrelevant allegations need not be considered by this Court in determining whether facts are sufficiently pled. *See, e.g., Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (noting "fat in a complaint can be ignored" on a motion to dismiss) (citation omitted).

Similarly, each Plaintiff alleges that they purportedly "disclosed" certain limited identifying information to Abbott. For example, Plaintiffs alleged that they "disclosed to [Abbott]" the type of their insurance, the specific glucose monitoring device they were using, and that they "provided a prescription from [their] doctor when [they] ordered the device." FACC ¶¶ 195, 200, 218, 223, 241, 246. However, there are no clear allegations that Plaintiffs entered any of this information ***into the FSL Marketing Website***. In fact, none of the screenshots—which Plaintiffs included in the FACC to purportedly show the sign-up flow they alleged went through—reflect options or form fields to submit any such information. Similarly, none of the screenshots reflecting the back-end network traffic on the website show anything remotely close to prescription or medical device information being captured by any of the website tools. *Id.* at ¶¶ 103, 111, Figures 3, 5 & 11. Plaintiffs go through painstaking detail, over dozens of pages, to describe both the alleged functionality of the website tools, and the appearance of the website itself, but completely gloss over crucial details related to the submission of any of the newly-added medical details.

As to the new allegations surrounding other identifying information (e.g., name, email, date of birth, etc.), Plaintiffs at least allege that they entered this information into an online form, but they did not amend their allegations to demonstrate that this information was actually ***transmitted to third parties*** via the website technologies at issue. In fact, their allegations demonstrate the opposite. For example, the screenshots in the FACC, which are selectively highlighted by Plaintiffs to emphasize alleged data capture, reflect that the website tools ***are not***

capturing name, email address, date of birth, phone number, zip code, or whether an applicant is signing up for a trial for themselves or someone else. Plaintiffs attempt to make it appear as if they have added details about sensitive information to their allegations, but in reality, they just parrot the fields in the sign-up form that was included in both versions of the complaint. *Compare* Dkt. 1, Figure 10 *with* FACC, Figure 11. In other words, Plaintiffs' additional allegations about the information they purportedly disclosed to Abbott remain insufficient to support an inference that Plaintiffs' Private Information was disclosed to third parties because Plaintiffs' allegations are both internally inconsistent and conclusory. *Sheikh v. Wheeler,* 790 F. App'x. 793, 796 (7th Cir. 2019) (reasoning that it would not draw inferences in plaintiff's favor based on conclusory allegations).

Plaintiffs also inexplicably allege that they ordered and received CGMs, received texts and emails from Abbott related to the treatment of diabetes, downloaded Abbott's mobile application to scan their CGM sensors and share data with Abbott related to treatment, communicated with Abbott through a chat function, and ordered additional CGMs. FACC ¶¶ 202, 225, 248. As to the order and receipt of CGMs, any express or implied allegation that they did so through signing up for the MyFreestyle Program on the website is contradicted by their own screenshots. Figures 5, 11 and 12 in the FACC show that a consumer can sign-up herself or someone else for a free trial through the MyFreestyle Program, and/or obtain a voucher which she must either download or retrieve from her email, take to a pharmacist, and instruct the pharmacist to follow certain instructions in order to receive a device. FACC ¶124, Figure 11 & Figure 12. As to the receipt of communications and Plaintiffs' continued engagement through mobile applications and additional products, none of these allegations relate to any interaction with analytics tools on the FSL Marketing Website. What's more, Plaintiffs do not even allege that these services were unwanted

or harmful. Rather, common sense suggest that Plaintiffs received benefits from Abbott's products and voluntarily continued to use the services.

Curiously, Plaintiffs also boldly assert that Abbott somehow "intentionally configured the Pixels" on the FSL Marketing Website to transmit "large amounts of additional user data." FACC ¶¶ 207, 253. But the FACC does not contain a single fact supporting this assertion; it is the definition of conclusory. *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 811 (7th Cir. 2021) (clarifying that allegations without any factual support are conclusory allegations insufficient to survive a motion to dismiss). More than a third of Plaintiffs' voluminous FACC is dedicated to a detailed dissection of the function and characteristics of website tools, including Abbott's alleged use of them, but nowhere do they allege anything related to Abbott's supposedly special configuration of the tools to go beyond their default state. Unsurprisingly, none of the screenshots or technical allegations support anything of the sort. This is simply a last-ditch attempt by Plaintiffs to rescue their deficient allegations, which should be disregarded by the Court.

Finally, Plaintiffs also speculate "on information and belief" that Abbott uses tracking tools in its mobile app and there is a "significant probability" that their "specific health information" is also "transmitted through the Tracking Tools." FACC ¶¶ 208, 231, 254. The FACC is again devoid of ***any facts*** supporting this allegation. *See Hannant v. Culbertson*, No. 4:24-cv-04164, 2025 WL 2413894 at *5 (C.D. Ill. Aug. 20, 2025) (rejecting allegations "on information and belief" that defendant's website disclosed patient status or patient portal activity, where such allegations lacked specificity and were mere legal conclusions.) Separately, such allegations are only permissible when the factual support is in the exclusive possession of the defendant. *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (holding plaintiff was not entitled to plead claims "on information and belief" without demonstrating the defendant had exclusive possession

of the facts necessary to prove the claim). That is not the case here. Plaintiffs and their lawyers could investigate and determine whether such facts exist and are true. This Court cannot and should not accept these improper, factually unsupported allegations as a basis to draw any inferences in Plaintiffs' favor.

While the FACC contains new allegations, none make the connection between Plaintiffs' activities on the FSL Marketing Website and the disclosure of individually identifiable health information any less tenuous. Order at 12. Thus, this Court should dismiss the FACC with prejudice.

### B. The FACC Still Lacks Any Facts Supporting The Assertion That Abbott Disclosed Private Information.

The core assumption underlying Plaintiffs' claims is that when consumers use the FSL Marketing Website, the website discloses their "Private Information" to third parties. However, the 82-page FACC consists entirely of conclusions and contradictions and is devoid of any facts showing that any such information is disclosed. Courts considering similar claims across the country have held vague allegations and references to categories of protected information are insufficient to state a claim under the ECPA, CIPA or negligence. Plaintiffs' inability to provide facts to support their contention that Private Information was disclosed dooms each of their claims.

#### 1. Plaintiffs' Conclusory Allegations Remain Insufficient.

Plaintiffs use the term "Private Information" 124 times in the FACC, largely to conclusorily assert that software on the FSL Marketing Website transmits such information to Facebook and Google. Critically, Plaintiffs continue to fail to identify any information captured or transmitted by these technologies that could even come close to being considered confidential or protected health information. In fact, their conclusory allegations that Private Information was disclosed to Facebook and other third parties remain contradicted by the figures in their own

FACC. The FACC contains substantively the same screenshots, from anonymous purported users of the FSL Marketing Website, alongside the same purported "network analysis" showing the types of data Plaintiffs claim was shared with third parties in hypothetical scenarios, not in relation to any of the named Plaintiffs. *See, e.g.*, FACC ¶ 124, Figure 10. At most, these figures demonstrate only that innocuous data categories are transmitted, such as the fact a form was completed ("Form Field Completion"), URL name, and buttons clicked ("SubscribedButtonClick"). *See, e.g.*, *Id.* ¶ 111, Figure 5 (showing only that user accessed a URL and clicked "Print Voucher"); ¶ 124, Figure 11 (showing that only information transmitted from the MyFreeStyle program signup page is "Gender_Female"). Contrary to the allegations in the FACC, ***none*** of these screenshots reveal a FSL Marketing Website visitor's specific health condition, status as a patient, or even the person on whose behalf any activity is taken. Accordingly, nothing in these "network analyses" of hypothetical website encounters demonstrates the disclosure of what Plaintiffs define as "Private Information." *See Rand v. Eyemart Express, LLC*, No. 3:24-CV-621, 2025 WL 1519726, at *4 ("*Rand II*") (N.D. Tex. May 27, 2025) (dismissing complaint where "the figures showing the metadata and identifying specifically what information is sent to Meta belie any conclusory statements that the prescription information is included, because it is notably absent from the data seen to be tracked there.")

Plaintiffs further fail to allege any specific facts demonstrating that ***their*** "Private Information" was disclosed. Plaintiffs allege that they used the unauthenticated (i.e., pre-login) FSL Marketing Website to sign up for the "MyFreeStyle Program," request FreeStyle Libre CGM products, and search for information related to diabetes. FACC ¶¶ 193, 197, 216, 220, 239, 243. This is not enough to show a disclosure of ***Plaintiffs'*** Private Information to support claims for negligence and wiretapping — especially in light of the screenshots referenced above. Courts have

rejected identical claims premised on similar allegations, holding that the sharing of browsing activity on the public website of a healthcare organization to a third party does not equate to a disclosure of protected health information. *See, e.g.*, *Rand I,* 2024 WL 4376162, at *4 ("HIPAA does not extend liability for entities to guard against 'visitors' subjective motives for visiting the page.'" (citing *Becerra*, 738 F. Supp. at 801)).

For example, in *Hannant v. Culbertson*, a federal court in Illinois dismissed an ECPA claim brought by a plaintiff who alleged she had used defendant's website to "find a specific physician, to research treatments, including information related to an MRI test, to search for treatment information; to find out how to obtain medical records; to use the patient portal, and more." 2025 WL 2413894, at *5. The court found that these allegations "lack[ed] the detail necessary to plausibly invoke the crime-tort exception via a HIPAA violation," noting that the plaintiff failed to allege "that she actually contacted any specific physician, that she actually obtained any of her medical records, nor even that she logged into the patient portal." *Id*. Instead, the complaint consisted only of "vague generalities" lacking the necessary specificity about plaintiff's use of the website. *Id*. Here, Plaintiffs rely on the same conclusory statements the court rejected in *Hannant*. The FACC lacks the specific health information ***Plaintiffs*** supposedly provided to Abbott that was disclosed to third parties; it only describes a hypothetical visitor. *See e.g.*, FACC ¶¶ 102-14.

Similarly, in *Doe v. Davita*, *Inc.* the court rejected a CIPA claim because plaintiffs failed to connect their interactions with the defendant's website to the disclosure of their health information. *See* No. 23-cv-01424, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024). There, one plaintiff alleged that she used the website to submit a grievance to defendant about her misdiagnosis, research dialysis, watch videos required to receive treatment, and locate a treatment facility. *Id.* at *2. The court dismissed these allegations as "devoid of any facts" supporting the

contention that health information was disclosed or otherwise "reveal[ed] that [plaintiffs] have chronic kidney disease." *Id*. Here Plaintiffs falsely equate a request for a free trial of FreeStyle Libre products to a disclosure of health information, but their own screenshots belie this position.

*Hannant* and *Davita* are consistent with numerous other district courts that have dismissed negligence and wiretapping claims when plaintiffs fail to identify the specific health information allegedly transferred to Facebook.[6] Like the plaintiffs in those cases, Plaintiffs here fail to allege that any health information was transmitted to Facebook.[7] Plaintiffs' failure to show that such information was disclosed undercuts their FACC and is fatal to each of their claims.

### 2. Plaintiffs Cling to Outdated, Unhelpful Federal Guidance.

To bolster their otherwise insufficient allegations that Abbott disclosed Private Information, Plaintiffs cite a December 2022 Bulletin by OCR (the "2022 Bulletin") stating that the use of online tracking technologies that transmit PHI constitute a violation of HIPAA. FACC ¶¶ 52-53. The 2022 Bulletin stated that if online tracking allowed a third party to know that someone from a certain IP address had accessed a healthcare provider's unauthenticated public

[6] *See, e.g.*, *Rand II*, 2025 WL 1519726, at *5; *Smart v. Main Line Health*, No. CV 22-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024) (dismissing ECPA claim for "fail[ure] to state what specific HIPPA[sic]-protected information Plaintiff *himself* provided to Defendant via his browsing activity that was subsequently disclosed to Meta") (emphasis in original); *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2024 WL 2133709, at *5 (W.D. Wash. May 13, 2024) (dismissing negligence and ECPA claims where allegations that plaintiff used defendant's public website to schedule appointments, communicate with doctors, complete medical forms, and review medical records were insufficient to plead defendant had disclosed her PII and PHI to Facebook); *Santoro v. Tower Health*, No. 22-cv-04580, 2024 WL 1773371, at *3–5 (E.D. Pa. Apr. 24, 2024) (dismissing ECPA and negligence claims where complaint lacked specific examples of what health information from plaintiffs was allegedly transferred to Facebook); *B.K. v. Eisenhower Med. Ctr.*, No. 23-cv-02092, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) (dismissing negligence and other claims where plaintiffs failed to allege "what, if any, medical information or medical records were transmitted or disclosed"); *see also Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) ("*Kurowski I*") (dismissing ECPA claim based on "hypothetical data disclosures" that failed to demonstrate health information was disclosed to third parties in violation of HIPAA).

[7] Or to any of the miscellaneous other third parties intermittently thrown into the FACC.

webpage (meaning webpage that does not require a log in), that alone could constitute disclosure of PHI in violation of HIPAA. Plaintiffs insinuate that Abbott discloses Private Information because its public-facing FSL Marketing Website purportedly transmits unidentified PHI to Facebook in violation of this guidance.[8]

But the 2022 Bulletin's sweeping conclusion has been rejected and certain portions vacated (even as later revised). *See Becerra*, 738 F. Supp. at 807.[9] The court in *Becerra* held that visiting a healthcare provider's unauthenticated public website does ***not*** necessarily relate to an individual's health condition, receipt of health care, or payment for healthcare—the necessary elements for data to be within scope of HIPAA. *Id.* at 801. The court emphasized, "[w]ithout *knowing* information that's never received—i.e., the visitor's subjective motive—the resulting metadata [shared with third parties] could never identify that individual's PHI." *Id.* at 803 (underline added). Likewise, Plaintiffs' assertion that the purported disclosure of their browsing activity on the FSL Marketing Website constitutes PHI must also fail.

### C. Plaintiffs' ECPA Claim *Remains* Fatally Deficient (Count I).

Plaintiffs' ECPA claim still fails because Abbott was "a party to the communications" and therefore cannot violate the Act. 18 U.S.C. § 2511(2)(d). The ECPA provides a civil cause of action to a person whose wire, electronic, or oral communications to another are intentionally intercepted. 18 U.S.C. §§ 2511(1)(a), 2520(a). But Section 2511(2)(d) of the statute provides an exception when the person intercepting a communication "is a party to the communication or where one of the parties to the communication has given prior consent to such interception." "[A] communication will always consist of at least two parties: the speaker and/or sender, and at least

8 Under HIPAA, "protected health information" ("PHI") is defined as "individually identifiable" information that is "created or received by a health care provider" (or similar entities) that "[r]elates to the past, present, or future physical or mental health or condition of an individual." 45 C.F.R. § 160.103.

9 The government noticed an appeal of the court's decision, and dismissed it in September 2024.

one intended recipient," who is necessarily a party to the communication. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015).

Plaintiffs admit Abbott "is a 'party to the communication.'" FACC ¶ 311; ¶ 66 (describing Abbott as the "intended recipient" of Plaintiffs' communications). As such, Abbott "cannot be liable under the [Federal] Wiretap Act for its alleged interception of [communications], if such an interception even occurred." *Kurowski I,* 659 F. Supp. at 938.

Plaintiffs attempt to plead around the party exception with conclusory allegations that Abbott "had a purpose that was tortious, criminal, and designed to violate state constitutional and statutory provisions[.]" FACC ¶ 153. This principle is known as the crime-tort exception. 18 U.S.C. § 2511(2)(d). "[I]t is well established" however, that the crime-tort "exception only applies where the defendant allegedly committed a tortious or criminal act <u>independent</u> from" the allegedly unlawful wiretapping. *Kurowski I*, at 844 (citing *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010)) (emph. added). The FACC specifically contradicts the existence of any criminal or tortious purpose, instead alleging that the purpose of Abbott's disclosures to third parties was "to increase [Abbott's] profit margins" and for "financial gain." FACC ¶ 305. The crime-tort exception is "inapplicable[, however,] where the defendant's primary motivation was to make money[.]" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022). *See also Doe 1 v. Chestnut Health Sys., Inc.*, No. 1:24-cv-01475, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) (rejecting ECPA claim where plaintiffs alleged defendant's used tracking tools "for the purpose of creating targeted online advertisements and enhanced marketing services, not tortious or criminal conduct.") (internal quotations omitted). Thus, Plaintiffs cannot allege that this purpose constitutes independently illegal or actionable conduct. Nor can Plaintiffs show a criminal or tortious purpose by concluding that Abbott violated HIPAA. As discussed above, Plaintiffs do not plausibly allege

that any sensitive health data was disclosed to unauthorized third parties. *See supra*, Sec. III(A); *see also Doe v. Genesis Health Sys*., No. 4:23-cv-04209, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing ECPA claim because "by Plaintiff's own account, the 'trackers' were 'used by the Defendant to benefit Genesis Health and its marketing and advertising purposes,' not for the purpose of knowingly committing a violation of the HIPAA.").

The failure to allege any facts plausible to support the crime-tort exception means that Abbott cannot be liable under the ECPA. Plaintiffs' ECPA claim must be dismissed with prejudice.

### D. Even With Plaintiffs' Amendments, The FACC Fails To Plausibly Plead A CIPA Violation (Count III).

Section 631(a) of CIPA contains three operative clauses covering "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (Cal. 1978). Section 631(a) contains a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability. Cal. Pen. Code § 631(a). While still not artfully pled, Plaintiffs' CIPA claim appears premised on the first and fourth clause.[10] *See* FACC ¶¶ 337-340. Plaintiffs cannot state a claim against Abbott under either clause. First, Abbott was a party to the communications at issue and therefore cannot be directly liable under the first clause of CIPA. Second, Plaintiffs cannot state a claim for "aiding and abetting" liability under the fourth clause of CIPA because they fail to plausibly allege an underlying violation by Facebook. Specifically, Plaintiffs still do not allege the information

[10] Despite amendment, nothing in the FACC can be read to allege a violation of the CIPA's second clause (willfully attempting to learn the contents of an intercepted communication) or third clause (attempting to use information gained from actions in violation of the first or second clause).

intercepted constitutes "contents" of a communication within scope of the statute, and Plaintiffs cannot demonstrate their communications were intercepted by Facebook while "in transit."

**1. As a Party to the Communication, Abbott Cannot be Directly Liable Under CIPA.**

Like the ECPA, CIPA exempts "from liability . . . a person who is a 'party' to the communication, whether acting under the color of law or not[.]" *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 607 (9th Cir. 2020). "Parties to a conversation cannot eavesdrop on their own conversation[.]" *Williams v. What If Holdings, LLC*, No. 22-cv-03780, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (discussing first clause of CIPA). Plaintiffs here acknowledge that Abbott was the intended recipient of their communication on the FSL Marketing Website. *See* FACC ¶ 66. As such, Abbott cannot be directly liable under the statute. *See Cody v. Boscov's, Inc.,* 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) ("well-established 'party exception'" precludes claim that defendant is directly liable for wiretapping under Section 631(a)).

**2. Plaintiffs Cannot State an Aiding and Abetting Claim Against Abbott Because They Do Not Plausibly Allege Third Parties Violated CIPA.**

Plaintiffs baldly assert that Abbott "aided, agreed with, employed, and conspired with Facebook, Google and other third parties to use the Tracking Tools to wiretap consumers to Defendant's Website.…" FACC ¶ 320. To assert a violation of CIPA based on derivative liability, Plaintiffs must allege facts showing Facebook's (or some other third party's) predicate violation of clause (i), (ii), or (iii) of Section 631(a). *See Cody,* 658 F. Supp at 782 ("in order to plead Defendant's liability for aiding and abetting [under the CIPA], [plaintiff] must first adequately plead [a third-party]'s underlying violations of the statute.") It is unclear here exactly which clause of Section 631(a) that Plaintiffs allege Facebook violated, but their allegations cannot state a claim under any section of the statute.

i. <u>Plaintiffs Cannot State a Claim for "Intentional Wiretapping" Under the First Clause of Section 631(a).</u>

The first clause of Section 631(a) prohibits intentionally tapping or making any unauthorized connection "with any telegraph or telephone wire, line, cable, or instrument[.]" Cal. Pen. Code § 631(a). "Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023). Because Plaintiffs here allege the communications at issue took place over the Internet (FACC ¶¶ 77-85) and not the telephone, they cannot plausibly premise their aiding and abetting claim against Abbott on Facebook's alleged violation of the first clause of Section 631(a).[11] *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-cv-08002, 2023 WL 9319049, at *2 (C.D. Cal. Dec. 26, 2023) (collecting cases).

ii. Plaintiffs Fail to Allege "Contents" of a Communication Within Scope of the Second Clause of Section 631(a).

The second clause of Section 631(a) prohibits willfully reading or attempting to read or learn the "contents" of a communication "while the same is in transit…" Cal. Pen. Code § 631(a). An aiding and abetting claim against Abbott premised on Facebook's alleged violation of the second clause fails because Plaintiffs have not alleged "contents" of a communication within the scope of the statute. "'Contents' refers to the "intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023) (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1105 (9th Cir. 2014) (noting the standard for determining "contents" is the same under CIPA and ECPA)).

Plaintiffs rely on conclusory allegations that Abbott disclosed their health information to third parties to implausibly assert that "contents" were intercepted. *Compare Cousin v. Sharp Health*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("*Cousin I*") with *Cousin v. Sharp Health*,

[11] For this reason, a direct liability claim against Abbott under this section would also fail.

702 F. Supp. 3d 967, 975-976 (S.D. Cal. 2023) ("*Cousin II*"). In both *Cousin I* and *Cousin II* plaintiffs alleged that their health information was disclosed to Facebook via the Pixel embedded on the defendant's website. *See Cousin I*, 681 F. Supp. at 1121; *Cousin II*, 702 F. Supp. at 971. In the original complaint (*Cousin I*), plaintiffs alleged that the "sensitive medical information" disclosed to Facebook included the patient's Facebook ID, search parameters, location filter, and the fact that the patient clicked on a specific medical provider's profile page. *Cousin I*, 681 F. Supp. at 1122. The court found such allegations insufficient to establish "content" under CIPA and dismissed the claim. *Id*. at 1130 (noting "Plaintiffs provide significant detail but in a hypothetical manner."). Plaintiffs then amended the complaint (*Cousin II*) to include even more granular and specific allegations about their own activity on the website, such as booking medical appointments and running "search queries" for specialty healthcare providers and information about symptoms and treatments relating to their conditions. *Cousin II*, 702 F. Supp at 973. The court found these amendments "plausibly conveyed" "contents" within scope of the statute. *Id*.

Here, Plaintiffs' allegations remain similar to those in *Cousin I* and discussed only in a hypothetical manner. *See, e.g.*, FACC ¶ 168 ("The information the Pixel captures, 'includes URL names of pages visited, and actions taken—all of which **_could_** be **_potential examples_** of health information.'") (emph. added); (*Id.* ¶¶ 102-15) (providing screenshots of the FSL Marketing Website and describing how information could be disclosed "for example"). This is insufficient to plausibly allege "contents" within scope of the CIPA. *Cousin I*, 681 F. Supp. at 1130.

iii. Plaintiffs Do Not Allege Facebook Intercepted Communications While "In Transit" Under the Second Clause of Section 631(a).

The second clause of Section 631(a) only protects a communication "while" it is in transit or is being sent from, or received at any place in California. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). Thus, the "crucial question" is whether the communication

at issue was read "while it was still in transit, i.e. before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021).

Here, Plaintiffs allege that when they accessed the FSL Marketing Website, the Pixel caused their "Private Information" to be shared with Facebook. Despite a lengthy discussion on the Pixel, Plaintiffs go to great lengths to obfuscate from where the offending transmission actually originates. *See*, *e.g.*, FACC ¶¶ 85, 86. A careful reading of the FACC, however, confirms that the transmission was sent from users' browsers directly to Facebook:

> The [FSL Marketing] Website…exchange[s] communications with the website's visitors...via the visitors' web browser...where[by] their web browser communicate[s] with Defendant's computer server.... Defendant's source code manipulates the patient's browser by secretly instructing it to duplicate the patient's communications (HTTP Requests) with Defendant and to send those communications to Facebook and Google.

FACC ¶¶ 78-87. The only plausible interpretation of these allegations is that the claimed duplication and transmission to Facebook happens <u>after</u> Plaintiffs' purported communication reaches its destination – Abbott's server – and <u>not</u> while "in transit" to Abbott. Indeed, California courts considering substantively identical allegations have therefore concluded that plaintiffs fail to allege an interception necessary to state a CIPA claim. *Jones v. Tonal Sys., Inc.*, No. 3:23-CV-1267, 2024 WL 4357558, at *7 (S.D. Cal. Sept. 30, 2024); *Birdwell v. Costco Wholesale Corp.*, No. C23-02416, 2024 WL 2240699, at *1 (Cal. Super. May 15, 2024) ("[T]he duplication and sending of Facebook's secret code happens after the requests reaches its destination ([defendant]'s server). Plaintiff has [therefore] not alleged Defendant's 'interception' while 'in transit.'")

Plaintiffs' labeling the transmission as "contemporaneous" (FACC ¶ 298), is insufficient to salvage this theory. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at * 2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting [plaintiffs] data

in transit."); *In re Vizio Inc.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("vague allegations about how [defendant]'s data collection occurs 'in real time'" insufficient to state ECPA claim). The Court here should look to Plaintiffs' more specific allegations, which confirm that the transmission to Facebook occurs after data reaches Abbott's servers and in fact is sent directly from Plaintiffs' own browsers, to Facebook. *See Wolf Run Hollow, LLC v. State Farm Bank, F.S.B.*, No. 12-cv-09449, 2013 WL 6182941, at *1 (N.D. Ill. Nov. 26, 2013) (dismissing complaint where "[p]laintiff's specific facts alleged…assumed to be true, actually disprove[d] [defendant's liability]"). Thus, there can be no interception in transit, and any aiding and abetting claim against Abbott premised on Facebook/others' alleged violation of the second clause of the CIPA fails.

iv. Plaintiffs Fail to Allege Facebook Attempted To Use or Communicate Information Under the Third Clause of Section 631(a).

The third clause of Section 631(a) penalizes one who "attempt[s] to use or communicate information obtained as a result of engaging in either of [Section 631(a)'s] two previous [clauses]." *Tavernetti*, 22 Cal. 3d at 192. Because Plaintiffs cannot show Facebook engaged in the activities prohibited by the first two clauses of Section 631(a), *see supra*, they also cannot show Facebook violated clause (iii) of Section 631(a). *Jones*, 2024 WL 4357558, at *9.

**E. Plaintiffs' Negligence Claim Remains Implausibly Pled (Count II).**

Plaintiffs claim that Abbott breached its duty to keep Plaintiffs' "Private Information" confidential by installing web tracking tools on the FSL Marketing Website. *See* FACC ¶¶ 326, 328. To state a claim for negligence in Illinois,[12] a plaintiff must plead that (1) the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, and (3) that the breach was the proximate cause of the plaintiff's injuries. *Cowper v. Nyberg*, 28 N.E.3d 768, 772 (Ill. 2015).

[12] To the extent any Plaintiff's negligence claim survives, Abbott will address any choice of law issues at the class certification stage.

Plaintiffs' negligence claim fails because: (1) Plaintiffs cannot establish Abbott breached any duty; and (2) Plaintiffs fail to plead Abbott proximately caused their damages.

### 1. Plaintiffs Do Not Allege Abbott Breached a Duty of Care.

Plaintiffs have not alleged any facts to show that Abbott breached any duty owed to them. Plaintiffs' conclusory allegations that Abbott disclosed "customers' personally identifiable, non-public medical information" plainly fails to demonstrate a breach of duty of care. FACC ¶ 332. As discussed above, Plaintiffs do not plausibly show that their medical information was provided on the FSL Marketing Website, let alone disclosed to a third party. *See supra*, Sec. III(A). *See also Santoro*, 2024 WL 1773371, at *5 (dismissing negligence claim where plaintiff failed to plead how defendant's website collected and transmitted health information.)

### 2. Plaintiffs Do Not Allege Proximate Cause or Damages.

Moreover, Plaintiffs have not adequately pled causation as the FACC lacks allegations describing what specific information the provided on the FSL Marketing Website and any consequences of their interactions with the website. *See Santoro*, 2024 WL 1773371, at *6; *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-cv-04674, 2023 WL 7017734, at *5 (E.D. Pa. Oct. 10, 2023) (finding causation lacking where plaintiffs failed to describe, the "content, timing, or number of the alleged communications."). And in the absence of facts showing the disclosure of Private Information, Plaintiffs fail to establish that they suffered any injury. *See supra*, Sec. III(A).

## IV. <u>CONCLUSION</u>

Abbott respectfully requests the Court dismiss the FACC with prejudice as a matter of law.

Dated: October 3, 2025

*/s/ William F. Farley*

William F. Farley (6305896)
Timothy Ray (6230099)
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
(312) 928-6024
william.farley@hklaw.com

Mark S. Melodia (admitted *pro hac vice*)
HOLLAND& KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, NY 10019
(212) 513-3583
mark.melodia@hklaw.com

Ashely L. Shively (264912)
HOLLAND & KNIGHT LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
(415) 743-6906
ashley.shively@hklaw.com

Caitlin F. Saladrigas (admitted *pro hac vice*)
HOLLAND & KNIGHT LLP
777 South Flagler Drive,
Suite 1900, West Tower
West Palm Beach, FL 33401
(561) 650-8349
caitlin.saladrigas@hklaw.com

*Counsel for Defendant*
*Abbott Laboratories, Inc.*