**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LILY NGUYEN, EMZORA MITCHELL AND FRANK ORTEGA, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ABBOTT LABORATORIES, INC.,<br><br>*Defendant*. | Case No. 1:24-cv-8289<br><br>Judge Manish S. Shah |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**


**ALMEIDA LAW GROUP LLC**
Matthew J. Langley
David S. Almeida
Britany A. Kabakov
849 W. Webster Avenue
Chicago, Illinois 60614
T: (312) 576-3024
matt@almeidalawgroup.com
david@almeidalawgroup.com
britany@almeidalawgroup.com

**SIRI & GLIMSTAD LLP**
Sonjay Singh (*pro hac vice*)
Tyler Bean (*pro hac vice*)
745 Fifth Avenue, Suite 500
New York, NY 10151
T: 929-677-5144
ssingh@sirillp.com
tbean@sirillp.com

*Counsel for Plaintiffs and the Putative Classes*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................................................................ 1

LEGAL STANDARD...................................................................................................... 4

ARGUMENT ................................................................................................................ 4

I. PLAINTIFFS SUFFICIENTLY ALLEGE THAT THEIR PRIVATE, HIPAA-PROTECTED MEDICAL INFORMATION WAS DISCLOSED .................................. 4

A. Plaintiffs Are Not Required to Provide Specific *Evidence* to Support Each and Every Allegation Made in the FAC. Specific *Allegations* Are Sufficient. ...................... 7

B. Plaintiffs' allegations Regarding Abbott's Mobile Apps are proper........................ 9

II. PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM IS NOT FORECLOSED BECAUSE THE CRIME-TORT EXCEPTION APPLIES............................................ 10

III. PLAINTIFFS' CIPA CLAIMS ARE WELL-PLED. .................................................... 13

A. Plaintiffs' allegations are sufficient to show that Abbott aided and abetted Facebook and Google. ........................................................................................ 15

B. Plaintiffs properly allege that the "contents" of their communications were intercepted, as required by the second clause of Section 631(a). ................................. 16

C. Plaintiffs properly allege the interception of their communications while "in-transit," as required by the second clause of Section 631(a). ....................................... 17

D. Plaintiffs allege that Abbott aided and abetted Google and Facebook in using and communicating the contents of their intercepted communications............................... 19

IV. PLAINTIFFS' NEGLIGENCE CLAIMS ARE SOUND. ............................................. 19

CONCLUSION............................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*A.D. v. Aspen Dental Management, Inc.*,
2024 U.S. Dist. LEXIS 161090 (N.D. Ill. 2024) ("*Aspen*") .......................................... passim

*Bazile v. Fin. Sys. of Green Bay, Inc.*
983 F.3d (7th Cir. 2020). ................................................................................................ 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. (2007)................................................................................................................ 4

*Birdwell v. Costco Wholesale Corp.*,
2024 Cal. Super. LEXIS 12721 (Cal. Super. 2024)............................................................ 19

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash.2024) ............................................................ 12

*Conley v. Gibson*,
355 U.S. (1957)................................................................................................................ 4

*Cousin v. Sharp Healthcare* ("*Cousin I*"),
681 F. Supp. 3d (S.D. Cal. 2023)........................................................................... 16, 17

*Cousin*, *et al. v. Sharp Healthcare* ("*Cousin II*"),
702 F. Supp. 3d (S.D. Cal. 2023)........................................................................... 16, 17

*Danforth v. Placentia-Linda Hosp.*,
2023 Cal. Super. LEXIS 67193 (Cal. Super. Ct. 2023)........................................................ 15

*Doe v. Eating Recovery Ctr. LLC*,
2024 U.S. Dist. LEXIS 99236 (N.D. Cal. 2024) ................................................................. 18

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 U.S. Dist. LEXIS 66733 (N.D. Cal. 2024) ................................................................. 14

*Hannant v. Sarah D. Culbertson Mem'l Hosp.*,
2025 U.S. Dist. LEXIS 161412 (C.D. Ill. 2025)..................................................................... 6

*Hartley v. Univ. of Chi. Med. Ctr.* ("*Hartley II*"),
2024 U.S. Dist. LEXIS 78517 (N.D. Ill. 2024) ...................................................................... 8

*Heerde v. Learfield Commc'ns, LLC*,
2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024)................................................................ 18

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d (N.D. Cal. 2022) ...................................................................................... 14

*In re Zynga Privacy Litigation*,
750 F. 3d (9th Cir. 2014) ........................................................................................ 16

*Javier v. Assurance IQ LLC,*
649 F. Supp. 3d (N.D. Cal. 2023) ............................................................................. 15

*Jones v. Tonal Systems*,
2024 U.S. Dist. LEXIS 178056 (S.D. Cal. 2024) ........................................................ 18, 19

*Kurowski v. Rush Sys. for Health* ("*Rush III*"),
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. 2023) ............................................................ 8

*Lax v. Mayorkas*,
20 F.4th (7th Cir. 2021) ................................................................................................ 4

*M.G. v. Therapymatch, Inc.*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. 2024) ........................................................ 15

*Mayer v. Midwest Physician Admin. Servs., LLC*,
2025 U.S. Dist. LEXIS 60486 (N.D. Ill. 2025) ...................................................... 12, 20

*R.S. v. Prime Healthcare Servs*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. 2025)........................................................... 13

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. 2024) ............................................ 16, 17, 18

*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. 2025) ...................................................... 12, 20

**Statutes**

17 U.S.C. 1201 ............................................................................................................ 10

18 U.S.C. 1030 ............................................................................................................ 10

42 U.S.C. § 1320 ............................................................................................................ 4

815 Ill. Comp. Stat. Ann. 530/45 ................................................................................. 20

Cal. Penal Code ]§ 631 ............................................................................................... 15

## PRELIMINARY STATEMENT

In dismissing without prejudice Plaintiffs' first filed Complaint, the Court found that "individual plaintiffs don't allege what information they disclosed when requesting a free trial" and stated that, "[w]ithout allegations about what individual disclosures were made to Abbott, plaintiffs fail to plausibly allege that Abbott received HIPAA-protected information." Dkt. No. 32 (the "Order) at 13. In their First Amended Complaint, Plaintiffs now allege, in detail, the protected health information they disclosed to Defendant Abbott Laboratories, Inc. ("Abbott" or "Defendant") when requesting a continuous glucose monitoring device ("CGM") from Abbott's Website.

For example, through the Website, Plaintiff Nguyen provided Abbott with a prescription from her doctor, signed up for the "MyFreeStyle Program," ordered a CGM for herself, transmitted her name, email address, date of birth, gender, phone number, and zip code, and disclosed the specific CGM device she was *already* using to treat her diabetes. *See* ¶¶ 193, 195, 198-201 (emphasis added).[1] Each of the Plaintiffs went to Abbott's Website to research and treat their diabetes, including to purchase and/or request a medical device, the sole purpose of which is to treat the medical condition of each of the Plaintiffs. Plaintiffs provided Abbott with a prescription, ordered a GCM device to treat their diabetes, communicated that the device was for themselves, told Abbott what CGM they were already using to treat their diabetes, shared specific phrases they used to search for information related to their medical condition, ran searches related to insurance coverage for diabetes monitoring systems sought from Abbott, and disclosed the details of their requests for Abbott's diabetes monitoring products. ¶¶ 193-202 (Plaintiff Nguyen), 216-225 (Plaintiff Mitchell), 239-248 (Plaintiff Ortega). As a result of their continuing relationship with

[1] All paragraph citations are to Plaintiffs' First Amended Complaint ("FAC"). *See* Dkt. No. 33.

Abbott, Plaintiffs received follow-up emails and ordered additional CGMs from Abbott. ¶¶ 202 (Plaintiff Nguyen), 225 (Plaintiff Mitchell), 248 (Plaintiff Ortega). These allegations establish that Plaintiffs were much more than mere consumers browsing Abbott's Website.

Like a medical patient, Plaintiffs sought treatment for their specific medical conditions from Abbott and communicated their HIPAA-protected health information. Abbott then disclosed Plaintiffs' PHI (including that they were members of a diabetes support program and purchased CGMs to treat their diabetes) to Facebook and other third parties through the use of surreptitious tracking technology they embedded in their Website. This was a violation of HIPAA and sufficiently states claims for violations of the Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA").

In its Motion to Dismiss (ECF No. 39, the "Motion" or "MTD"), Abbott attempts to excuse their unlawful conduct by characterizing Plaintiffs' amended allegations as meaningless and demands "facts," including screenshots for each disclosure. But Rule 8 doesn't require factual evidence prior to discovery. The amended allegations, which are taken as true at this stage of litigation, establish that Plaintiffs were not just browsing the Website when Abbott violated their privacy by disclosing their PHI. Abbott's claim that the illustrative screenshots must show every disclosure misconstrues the pleading standard as well as misunderstands the information the screenshots demonstrate are being disclosed. As explained below, the screenshots support the FAC allegations that Abbott was disclosing Plaintiffs' PHI through "pageview" events that transmit descriptive URLs, "subcribedbuttonclick" events that disclose the exact buttons Plaintiffs, and the personally identifying FacebookID of each the Plaintiffs and purported class members. *See e.g.* ¶¶ 102-125.

Moreover, Plaintiffs' additional amended allegations are far from meaningless. They establish that Plaintiffs were interacting with Abbott's Website, and with Abbott itself, in order to receive treatment for their medical condition – much like a patient. Importantly, Abbott need not disclose every piece of information that Plaintiffs communicated to them while continuously treating their diabetes. Instead, when Abbott, a covered entity regulated under HIPAA, discloses ***any*** information that "relates to the present, past, or future physical or mental health or condition of an individual," as they did here when they disclosed to Facebook that Plaintiffs were researching and purchasing a CGM to treat their diabetes, they violated HIPAA. *See* 42 U.S.C. § 1320d(6).

Abbott also argues that Plaintiffs' ECPA claims should be dismissed because the party exception forecloses liability and the crime-tort exemption does not apply, including because: (1) the sensitive health information it disclosed was not, in fact, individually identifiable health information ("IIHI"), (2) any criminal and tortuous purpose is not separate from the interception, and (3) its primary purpose was to make money. MTD at 12-14. But courts in this District, in denying motions to dismiss wiretap claims, including ECPA claims, have rejected each of Abbott's arguments. *See e.g.*, *A.D. v. Aspen Dental Management, Inc*. 2024 U.S. Dist. LEXIS 161090, at *3 (N.D. Ill. Sept. 9, 2024) ("*Aspen*") (denying motion to dismiss ECPA claim and finding that: 1) information regarding plaintiffs' personal medical information was IIHI, 2) disclosure of that information to third parties was distinct from the interception, and 3) defendant's purpose of making money was achieved through the disclosure of IIHI).

Abbott's arguments regarding Plaintiff Ortega's CIPA claim fare no better. Plaintiff successfully alleges claims under Section 631(a) by pleading that 1) Abbott directly intercepted as well as aided and abetted Facebook and Google's interception of her communications with it, in

violation of the second clause of Section 631(a); and 2) aided and abetted Facebook's use, or attempted use, of her communications in violation of the third clause of Section 631(a).

Finally, Plaintiffs' negligence claim is adequately pled because they successfully allege a breach of Abbott's duty to maintain the confidentiality of their Private Information and damages proximately caused by Abbott's breach. For these reasons, the Motion should be denied in its entirety.

## LEGAL STANDARD

Rule 8(a)(2) requires only a short and plain statement showing that the pleader is entitled to relief, giving "defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This standard does not require inclusion of "detailed factual allegations," rather the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. In deciding a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

## ARGUMENT

### I. PLAINTIFFS SUFFICIENTLY ALLEGE THAT THEIR PRIVATE, HIPAA-PROTECTED MEDICAL INFORMATION WAS DISCLOSED

As defined by HIPAA, Individually identifiable health information ("IIHI") "means ***any*** information" that "relates to the present, past, or future physical or mental health or condition of an individual" 42 U.S.C. § 1320d(6) (emphasis added). The information Abbott disclosed to Facebook and other third parties, as Plaintiffs allege in the FAC, meets this standard.

Plaintiffs allege that, along with their unique Facebook ID and device identifiers, Abbott transmitted each of their "particular health condition, the type of medical service sought, and the fact that Plaintiff attempted to or did sign up created an account to order and receive a CGM to treat [his or her] diabetes" to Facebook. ¶¶ 206, 228, 252. As a result, this information was disclosed to Facebook through Abbott's use of the Tracking Tools. Indeed, every Plaintiff specifically alleges that the information disclosed to Facebook by Abott included his or her "the type of CGM [he or she] was using to treat [his or her] diabetes, and the specific diabetes monitoring devices [the] Plaintiff was seeking from Defendant to treat [his or her] diabetes." ¶¶ 201, 224, 247. Such information, disclosed to Facebook and other third parties, related to the treatment of Plaintiffs' medical condition, disclosing to the third parties that they had diabetes.

Importantly, the allegations in the FAC demonstrate that Plaintiffs were not merely browsing Abbott's Website when their IIHI was disclosed. Every Plaintiff alleges that he or she "filled out the form on Defendant's Website to sign up for the 'MyFreeStyle Libra' system and order a CGM system to treat [his or her] diabetes," and that filling out the Website form required him or her to disclose the fact that he or she "was signing up for the MyFreeStyle Libra and ordering a CGM" and to provide his or her "name, email address, date of birth, gender, phone number, and zip code[,]…the type of insurance [he or she] was using to receive [his or her] CGM, as well as the specific glucose monitoring device [he or she] was already using to treat [his or her] diabetes" ¶¶ 199-200, 222-223, 245-246. In addition, Plaintiffs used Abbott's mobile application to monitor their glucose levels, continued to receive emails and texts related to the treatment of her diabetes and her CGM, and ordered additional CGMs from Abbott. ¶¶ 208, 225, 248. This is the type of information disclosed between a patient and their healthcare provider, not just a consumer interested in a free trial of a product. *See e.g. Aspen*, 2024 U.S. Dist. LEXIS 161090, at

*3 (holding that "Plaintiffs' allegations regarding their individual experiences using Aspen's online platform" and the disclosure of "Plaintiffs' patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information to third parties" were sufficient to plausibly allege that Aspen disclosed information regarding their personal health conditions and that "[s]uch information qualifies as IIHI for purposes of HIPAA"); *see also R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 885, 893-894 (C.D. Cal. 2024) (finding plaintiff's "intent to purchase a diabetes test kit when she placed the diabetes test kit into her virtual shopping cart on the website" of an "Illinois Corporation, headquartered in Illinois" was IIHI under HIPAA).

Plaintiffs go on to allege that Abbott disclosed to Facebook their specific medical condition (diabetes); that they were enrolled in a program to treat their medical condition, and the specific medical device that they used to manage their diabetes (the FreeStyle Libra CGM). Each of these items individually is HIPAA-protected; together they represent a near-complete record of Plaintiffs' diabetes management history. These allegations are more than sufficient to show the disclosure of medical information, including information constituting IIHI under HIPAA. Abbott analogizes Plaintiffs' allegations to those considered in *Hannant v. Sarah D. Culbertson Mem'l Hosp.*, 2025 U.S. Dist. LEXIS 161412, at *13 (C.D. Ill. Aug. 20, 2025). Far from supporting its argument, *Hannant* actually shows why Abbott's MTD must fail. In *Hannant*, the court found that while the plaintiff had hypothetically described disclosures that would constitute IIHI, such as information relating to the acts of "calling to schedule an appointment, calling a specific provider, and logging in to Defendant's patient portal," she had failed to explain the actions that she ***personally*** took on the defendant's website that could "demonstrate[] her patient status or what activities she took with respect to the patient portal." *Id*. Unlike in *Hannant*, Plaintiffs specifically

detail both the information that they communicated to Abbott and the specific PHI that Abbott then disclosed to third parties.

Plaintiffs have sufficiently alleged their detailed communications with Abbott established a relationship wherein Abbott, a health care provider and a covered entity under HIPAA, was receiving PHI related to Plaintiffs' treatment of their specific medical condition. Abbott then disclosed IIHI related to that medical condition to Facebook and other third parties. In so doing, Abbott violated HIPAA and their motion to dismiss arguing otherwise must be denied.

### A. Plaintiffs Are Not Required to Provide Specific *Evidence* to Support Each and Every Allegation Made in the FAC. Specific *Allegations* Are Sufficient.

The sufficiency of Plaintiffs' claims is not dependent on their inclusion of screenshots in the Amended Complaint. It is axiomatic that a complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief" and that "[n]o technical form" is required in doing so. Fed. R. of Civ. P. 8(a)(2), (d)(1). Abbott argues that Plaintiffs' failure to provide a specific screenshot for each and every piece of information at-issue dooms their claims. MTD at 5-7. But Plaintiffs' allegations are more than sufficient to state a claim for the causes of action in the FAC and the illustrative screenshots, while not required to establish Abbott's violations of the law, demonstrate the veracity of those allegations.

Despite Abbott's claims to the contrary, the screenshots in the FAC do in fact support Plaintiffs' claims. ¶ 84 (Facebook Pixel was installed on the Website); ¶ 103 (Facebook Pixel transmitted the specific pages that Plaintiffs visited); ¶¶ 104-109 (transmissions included Facebook's c_user and Facebook ID identifiers); ¶ 111 (Facebook Pixel transmitted affirmative actions required to request a voucher for a Freestyle Libre CGM and to submit the sign-up form for a free trial of the MyFreeStyle Program).

Abbott contends that these figures show only the transmission of "innocuous data categories." But this argument is belied by the plain allegations in the FAC and the figures themselves. For example, Figure 5 not only discloses that a user clicked the "Print Voucher" button, but it also shows that the user clicked a button on the sensor-voucher-confirmation page to submit a form titled "Thank You For Joining the MyFreeStyle Program." ¶ 111.[2] Figure 6 shows that Abbott disclosed to Facebook when a user, like Plaintiffs, clicked the button labeled "Start Free Trial" for a "FreeStyle Libre Continuous Glucose Monitoring" device. ¶ 113. This information is sufficient to inform anyone, let alone the most sophisticated data processing companies in the world, that a user affirmatively printed a voucher for a CGM device and initiated a free trial for a Freestyle Libre CGM.[3] The Rules require nothing more, as affirmed by numerous Courts in this District under analogous circumstances, even where less specific information was alleged than by Plaintiffs here.[4]

---

[2] Notably, Figure 5 shows the information that is disclosed by the Tracking Tools when a Website user submits a completed form, ***after*** the user has already entered their name, email address, date of birth, gender, phone number, and zip code into the form's fields. It does not show the transmissions made when the user clicks on or enters information into the form's fields while filling it out.

[3] In its MTD, Abbott repeatedly claims that the screenshots in the FAC do not disclose that the Plaintiffs suffer from diabetes. But, as Plaintiffs state repeatedly in the FAC, the FreeStyle Libre CGMs are diabetes monitoring products. *See*, *e.g.*, FAC ¶¶ 68, 71, 100, 112, 126. The fact that an individual currently uses, and is ordering for future use, a device that is explicitly and exclusively used for the management of diabetes necessarily implies that the individual suffers from diabetes. Abbott's public statements further reinforce this conclusion. *See Homepage*, ABBOTT FREESTYLE LIBRE WEBSITE, https://www.freestyle.abbott/us-en/home.html (representations on landing page of Website include that Libre CGMs are "indicated for the management of diabetes", and that FreeStyle Libre program is "available for patients with Type 1 diabetes or Type 2 diabetes or gestational diabetes" with no mention of any other medical condition).

[4] *See Kurowski v. Rush Sys. for Health* ("*Rush III*"), 2023 U.S. Dist. LEXIS 219895, at *8 (N.D. Ill. Dec. 11, 2023) ("communications and information that [the defendant] discloses through third-party tracking tools includes detailed content, including doctors, condition, and/or location information, often transmitted together"—even absent allegations naming the specific doctors, conditions, and locations in-question–stated disclosure of IIHI); *Hartley v. Univ. of Chi. Med. Ctr.* ("*Hartley II*"), 2024 U.S. Dist. LEXIS 78517, at *6 (N.D. Ill. Apr. 30, 2024) (allegations that plaintiff was "seeking specific medical specialists," "sought to obtain prescriptions of various medications," and was "seeking information about sexually transmitted diseases" constituted IIHI even without plaintiff pleading the names of the medical specialists and medications in-question, or that she actually ever obtained an appointment or prescription).

Abbott also argues that the FAC does not "contain a single ***fact*** supporting [Plaintiffs'] assertion" that Abbott "'intentionally configured the Pixels' on the FSL Marketing Website to transmit 'large amounts of additional user data.'" MTD at 7 (quoting ¶¶ 207, 235) (emphasis added). Putting aside Abbott's attempt to impose a heightened pleading standard, the allegations clearly establish Abbott's intentional configuration of the Pixel. As Plaintiffs allege, the "Pixel is customizable and programmable, meaning that the website owner controls which of its web pages contain the Pixel and which events are tracked and transmitted to Facebook." ¶ 61. Plaintiffs also specifically allege that while the default events tracked by any Facebook Pixel are those known as "'automatic events,' consisting largely of routine user behavior, such as viewing a webpage[,]" Importantly, Plaintiffs state in the FAC that the "Tracking Tools used on Defendant's Website are not in their default state" and were instead configured to "transmit large amounts of additional user data" such as the "specific actions taken by Plaintiff[s] on the Website including the fact that [they] ordered a MyFreeStyle Libra device, and signed up for the MyFreeStyle Program." FAC ¶¶ 207, 230, 253, 207. These allegations clearly show that Abbott purposefully configured the Website's Facebook Pixel to collect Plaintiffs' Private Information through the non-automatic events described in the FAC that are only tracked when the Pixel is specifically configured to do so.[5]

**B. Plaintiffs' allegations Regarding Abbott's Mobile Apps are proper.**

Plaintiffs, through their counsel, were able to investigate the network traffic depicted in the figures to the FAC using web browser developer tools, but mobile applications (or apps) are

[5] Abbott describes these allegations as a "a last-ditch attempt by Plaintiffs to rescue their deficient allegations[.]" MTD at 7. In response, Plaintiffs note that even in their original complaint, they alleged that the "Pixel is customizable and programmable, meaning that the website owner controls which of its web pages contain the Pixel and which events are tracked and transmitted to Facebook[;]" that the "process of adding the Pixel to webpages is a multi-step process that must be undertaken by the website owner[;]" and that "Facebook explains that there are two steps to set up a Pixel: (1) Create your pixel and set up the pixel base code on your website…(2) Set up events on your website to measure the actions you care about, like making a purchase." ECF No. 1, at ¶¶ 61-63 (citing Facebook's product documentation).

designed to prevent that kind of inspection. Most mobile apps—including Abbott's—use a security measure called "SSL pinning," which ensures that data transmitted is encrypted and can only be viewed under authorized, intended circumstances by the sender and recipient.[6] Abbott argues that Plaintiffs are not entitled to allege that it uses Tracking Tools because "Plaintiffs and their lawyers could investigate and determine whether such facts exist and are true." MTD at 8. This is incorrect. While the SSL pinning installed in Abbott's mobile app protects against third-party interception, it also prevents users from viewing the raw transmissions on mobile themselves. Moreover, even if Plaintiffs or their counsel could bypass this security measure (doubtful), such measures might violate federal laws including the Digital Millenium Copyright Act and Computer Fraud and Abuse Act. *See* 18 U.S.C. 1030(a)(2)(C) (prohibition on accessing computer information by exceeding authorized access); 17 U.S.C. 1201(a)(1)(A) (prohibition on "circumvent[ing] a technological measure that effectively controls access to a copyright work"). Thus, facts supporting Abbott's use of Tracking Tools on its mobile apps are indeed in its exclusive possession.

## II. PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM IS NOT FORECLOSED BECAUSE THE CRIME-TORT EXCEPTION APPLIES.

Plaintiffs allege that Abbott violated the ECPA, which forbids (i) interception of electronic communications, (ii) disclosure of electronic communications, and (iii) using the contents of those electronic communications. *See* ¶¶ 288-296. Abbott argues that there can be no ECPA liability because it was a party to the communications at issue. *See* MTD at 12-13. But where the crime-tort exception applies, that exception overrides the one-party consent rule.[7] Abbott claims that the

---

[6] *See*, *e.g.*, *What is SSL Pinning*, INDUSFACE, https://www.indusface.com/learning/what-is-ssl-pinning-a-quick-walk-through.

[7] "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication **… unless such**

crime-tort exception does not apply because: 1) the tortious or criminal act must be independent from the alleged interception, 2) Abbott's primary motivation was to make money, and 3) Plaintiffs do not allege that the information disclosed was PHI. MTD at 13-14. But in making these arguments, Abbott disregards the holdings of courts in this District and nationwide and contradicts Plaintiffs' well-pleaded allegations.

***First***, Abbott argues that the crime-tort exception cannot apply because any criminal or tortious purpose was not independent from the interception. *See* MTD at 13. But Plaintiffs do not allege that Abbott's violations of HIPAA arise through the ***interception*** of their communications made through the Website. Rather, Plaintiffs allege that these violations arose through Abbott's ***disclosure of the intercepted communications to unauthorized third parties***. *See, e.g.*, ¶¶ 10, 86, 88, 303, 282, 285, 313 (explaining, *e.g.*, that Abbott violated wiretap acts by "intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiffs and Class Members to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication"). As one court explains, this theory of liability conforms with the text of the ECPA:

> The Court disagrees that use of health information 'inheres in the alleged interception.' In setting forth the crime-tort exception, the Wiretap Act expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be '*intercepted* for the purpose of committing any criminal or tortious act.' The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose.

---

**communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State**." 18 U.S.C. § 2511(2)(d) (emphasis added).

*Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *18-19 (W.D. Wash. Nov. 14, 2024) (holding that disclosure of health information through Facebook Pixel satisfies ECPA crime-tort exception). Numerous courts, including courts within this District, concur. *See Mayer v. Midwest Physician Admin. Servs., LLC*, No. 23-cv-3132, 2025 U.S. Dist. LEXIS 60486, at *7 (N.D. Ill. Mar. 31, 2025) ("When statutes speak in terms of an illicit 'purpose,' the fact that there may also have been some legitimate reason motivating the defendant's conduct does 'not sanitize the illegitimate one'); *Aspen*, 2024 U.S. Dist. LEXIS 161090, at *3 ("Plaintiffs plausibly allege that Aspen intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception at issue in the ECPA claim.").

***Second***, Abbott cannot escape liability under the ECPA merely because its motivation in installing the Tracking Tools was financial, as it argues. MTD at 11. Indeed, such a motivation is irrelevant to its liability under the ECPA because a criminal or tortious ***act***, not ***purpose***, is all that is required to satisfy the crime-tort exception. As one court in this District explains:

> A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose. Imagine changing lanes on the highway without looking, and nailing the car in the other lane. The bad driver may have acted with the purpose of committing an act — changing lanes — that was tortious (because of the lack of ordinary care). But that's different than saying that the driver acted with a tortious purpose…
>
> But that's not what the text says. The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious.
>
> Even if the carve-out required a criminal or tortious purpose, it would be odd to exclude an otherwise criminal or tortious act solely because it was also motivated by financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime — it was to make money.

*Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *14-16 (N.D. Ill. Feb. 21, 2025); *see also Aspen*, 2024 U.S. Dist. LEXIS 161090, at *3 (the defendant's

"[profit-related] purpose cannot be detached from the reality that [defendant] achieved this improved marketing and revenue boost by disclosing [p]laintiffs IIHI"); *see also Walgreen*, 733 F. Supp. 3d 876, 901 ("even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims").

Taking the argument on its face, Abbott's position would necessarily imply, for example, that "the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money." *R.S. v. Prime Healthcare Servs*., 2025 U.S. Dist. LEXIS 6338, at *10 (C.D. Cal. Jan. 13, 2025). With blackmail, "the interceptor's primary purpose would be to make money. And blackmail would merely be a means by which to make money. Of course, this is often the end goal for blackmail." *Id*. at *20. Thus, under Defendant's reading, "blackmail would rarely, if ever, violate the ECPA…This cannot be the case." *Id*.

***Third***, as explained in Sec. I, *supra*, Plaintiffs allege that the information Abbott collected and disclosed without consent in violation of HIPAA was indeed IIHI. *See, e.g.*, ¶¶ 198-201, 221-24, 244-47, 313. Specifically, Plaintiffs allege that Abbott disclosed their status as medical patients, the contents of their communications with Abbott's Website, and information about their specific medical conditions and treatments, including requests for continuous glucose monitoring devices. *See, e.g.*, ¶¶ 23, 198, 201, 221, 224, 244, 247. This sensitive health information was disclosed with Plaintiffs' PII, allowing Facebook and Google to uniquely identify them and send targeted advertisements related to their medical conditions. *See* ¶¶ 67-68, 82-83 & 187-191. For these reasons, Abbott's motion to dismiss Plaintiffs' ECPA claim should be denied.

## III. PLAINTIFF ORTEGA'S CIPA CLAIM IS WELL-PLED.

Abbott incorrectly argues that Plaintiffs have failed to state a claim under any of the four clauses of Section 631(a) of the CIPA. *See* MTD, at 14-19. As explained herein, Plaintiffs successfully allege claims under the second, third, and fourth clauses of Section 631(a) because (1) Plaintiffs' argument that Abbott violated the ECPA also establishes a direct violation of the CIPA, (2) Plaintiffs successfully allege that Abbott aided and abetted Facebook's interception of their communications with it, in violation of the second clause of Section 631(a), and (3) Plaintiffs successfully allege that Abbott aided and abetted Facebook's use of their communications in violation of the third clause of Section 631(a).

As to Abbott's direct violation of CIPA, Abbott's argument that it was a party to the communication fails for the same reasons it failed regarding Plaintiffs' ECPA claim. *See* Sec. II, *supra*. Courts analyze claims under CIPA and the ECPA using the same framework because the statutes contain similar provisions protecting against unauthorized interception of communications. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2024 U.S. Dist. LEXIS 66733, at *13 (N.D. Cal. Apr. 11, 2024) ("CIPA is similar in nature to the ECPA" and "courts perform the same analysis"); *In re Facebook Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (using same analysis for CIPA and ECPA claims). "Under both the ECPA and CIPA, '[i]t shall not be unlawful ... for a person ... to intercept a[n] electronic communication where such person is a party to the communication,' so long as such interception is not 'for the purpose of committing any criminal or tortious act.'" *Walgreen Co.*, 733 F. Supp. 3d at 901 (citations omitted); *see also Marden v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 132292 at *4 (N.D. Cal. July 3, 2024) (holding that where ECPA claim survives due to application of crime-tort exception, CIPA claim must also survive for the same reasons). Accordingly, the party exception does not apply to Plaintiffs' CIPA claim for the reasons stated in Sec. II, *supra*.

### A. Plaintiffs' allegations are sufficient to show that Abbott aided and abetted Facebook.

Section 631(a)(4) of the CIPA provides a cause of action: where a person "'aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.'" *Javier v. Assurance IQ LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (*quoting* Cal. Penal Code § 631(a)). To assert a violation of the CIPA based on derivative liability, a plaintiff must allege facts showing a third party's predicate violation of clause (i), (ii), or (iii) of Section 631(a). "[Cal. Penal Code ]§ 631(a) imposes liability on one who 'aids, agrees with, employs, or conspires' with another violator…It is sufficient for a [p]laintiff to allege [a d]efendant[] intentionally procured Facebook Pixel or other tracking apps and installed it on [its] website in order to satisfy this requirement." *Danforth v. Placentia-Linda Hosp.*, 2023 Cal. Super. LEXIS 67193, *6 (Cal. Super. Ct. Aug. 31, 2023); *see also M.G. v. Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534, at *14-15 (N.D. Cal. Sep. 16, 2024) (allegations that defendant "knowingly agreed to use Google Analytics, embedded tracking technology code on its website, and allowed Google to have direct access to [defendant's website] users' private medical information" sufficient aiding and abetting under the CIPA).

Here, Plaintiffs allege that Abbott installed Facebook's Tracking Tools on its Website, "allow[ing] unauthorized third parties to intercept the contents of customer communications, view customers' Private Information, mine its customer's Private Information for purposes unrelated to the provision of healthcare and further monetize it to deliver targeted advertisements[.]" ¶ 10. Plaintiffs further allege that "[i]n exchange for disclosing the Private Information of its customers, Abbott is compensated by Facebook and Google in the form of enhanced advertising services and more cost-efficient marketing[,]" and "Facebook and Google, in turn, use that Private Information for various business purposes, including … to target specific demographics and selling such

information to third-party marketers who target those users online[.]"¶¶ 17, 164. These allegations are sufficient to establish that Abbott aided and abetted Facebook and Google in collecting Private Information for their advertising enterprise. *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *21-22 (N.D. Cal. Oct. 1, 2024) (allegations that defendant chose to install Facebook pixel and Facebook Pixel transmitted medical information to Facebook are sufficient to show aiding and abetting).

**B. Plaintiffs properly allege that the "contents" of their communications were intercepted, as required by the second clause of Section 631(a).**

Under the CIPA, the "'[c]ontents' of a communication include 'any information concerning the substance, purport, or meaning of that communication.'" *Aspen*, 2024 U.S. Dist. LEXIS 161090, at *14. Abbott incorrectly asserts that Plaintiffs' Private Information alleged by Plaintiffs to have been disclosed constitutes the non-contents "record information" described in *In re Zynga Privacy Litigation*. Mot. at 16 (citing 750 F. 3d 1098, 1105 (9th Cir. 2014)). However, the transmissions alleged by Plaintiffs, including Plaintiff Ortega, reveal *specific actions they took on the Website*, such as clicking a "Print Voucher" button to submit a form titled "Thank You For Joining the MyFreeStyle Program," and clicking a button labeled "Start Free Trial" for a "FreeStyle Libre Continuous Glucose Monitoring" device. ¶¶ 110-116. This information is categorically not the "referrer header information" that *Zynga* classified as "record information," which consists of "the address of the webpage from which the user's HTTP request to view another webpage was sent," but rather consists of the actual actions Plaintiffs took to order a FreeStyle Libre device and join the MyFreeStyle Program. *Compare Zynga*, 750 F.3d at 1107, *with id*.

Abbott cites two motion to dismiss rulings from the same case, *Cousin v. Sharp Healthcare* ("*Cousin I*"), 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) and *Cousin*, *et al. v. Sharp Healthcare* ("*Cousin II*"), 702 F. Supp. 3d 967, 975-976 (S.D. Cal. Nov. 17, 2023), arguing that Plaintiffs'

allegations resemble those made by the *Cousin I* plaintiffs. In reality, Plaintiffs' allegations are far more similar to those pled in *Cousin II* than in *Cousin I*. In *Cousin I*, the plaintiffs failed to allege "what information they each provided to [the defendant], via their browsing activity." *Cousin I*, 681 F. Supp. 3d at 1123. Rather, the complaint merely stated that they entered nonspecific "sensitive personal and health information" on the defendant's website. *Consolidated Class Action Complaint* (Dkt. No. 14) at ¶ 66, *Cousin*, *et al. v. Sharp Healthcare*, Case No. 22-cv-2040-MMA (S.D. Cal. Mar. 3, 2023). The *Cousin* plaintiffs subsequently amended their complaint with specific allegations regarding "personal search queries—such as specialty healthcare providers and treatments for medical conditions." *Cousin II*, 702 F. Supp. 3d at 976. The court concluded that these allegations had "plausibly conveyed content: their PHI." *Id*.

Here, Plaintiffs provide even more detail than the plaintiff in *Cousin II*, who alleged only that she used the defendant's website to "search for a primary care physician" and filtered the directory by "specialty." *Cousin II*, 702 F. Supp. 3d at 973. Indeed, Plaintiffs allege disclosure of their specific medical condition, the specific medical device that they ordered to treat that condition, and their specific health insurance provider. These allegations are sufficient to establish the interception of the "contents" of Plaintiffs' communications under the CIPA. *See Aspen*, 2024 U.S. Dist. LEXIS 161090, at *14-16 (holding that URLs that include "terms entered into search fields and forms" constitute content under the CIPA).

### C. Plaintiffs properly allege the interception of their communications while "in-transit," as required by the second clause of Section 631(a).

"At the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured[,]" *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *15 (N.D. Cal. Oct. 1, 2024). Rather, a CIPA plaintiff must merely "'provide fair notice to [d]efendant of how and when she believe[s]' the defendant or the conspiring third party intercepts her

communications.'" *Id.* Plaintiffs satisfy this standard. In the FAC, Plaintiffs explain that: "Defendant's source code manipulates the patient's browser by secretly instructing it to duplicate the patient's communications (HTTP Requests) with Defendant and to send those communications to Facebook and Google. These transmissions occur contemporaneously, invisibly and without the patients' knowledge." ¶ 87; *see also* ¶¶ 88; 298-300. Abbott prematurely urges the Court to believe that "[t]he only plausible interpretation of these allegations is that the claimed duplication and transmission to Facebook happens after Plaintiffs' purported communication reaches its destination – Abbott's server – and not while 'in transit' to Abbott." MTD at 16. But, as the Complaint explains and further demonstrates through its network transmission exhibits, the Website was programmed to ***simultaneously*** and ***contemporaneously*** transmit Plaintiffs' Private Information to Facebook and Google as it was communicated through their actions taken on the Website. ¶¶ 87, 298-300; *see generally* ¶¶ 102-04, 110-14. This District has held that allegations like these are sufficient to satisfy the second clause of Section 631(a). *See Aspen*, 2024 U.S. Dist. LEXIS 161090, at *19-20 (holding that almost identical allegations were sufficient to plausibly allege that Plaintiff's communications were intercepted in transit).[8]

Abbott cites two cases to support its argument, neither of which is availing. First, *Jones v. Tonal Systems* did not involve any third-party pixel software, and in reality, the customer support chats were simply forwarded by the defendant to the transcription service. No. 3:23-cv-1267-JES-BGS, 2024 U.S. Dist. LEXIS 178056, *20 (S.D. Cal. Sep. 30, 2024). In *Birdwell v. Costco*

[8] California district courts agree. *See St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17-18 (allegations that Facebook Pixel transmission was "concurrent" with communications with host website establish interception 'in-transit'); *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2024 U.S. Dist. LEXIS 99236, at *1-2 (N.D. Cal. June 4, 2024) (same as to allegations that Pixel transmission is "instantaneous" and "simultaneous[]" with website communications); *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781, at *21-22 (C.D. Cal. July 19, 2024) (same as to allegations that "Search Terms were replicated and sent in parallel to the tracking entities").

*Wholesale Corp.*, unlike here, plaintiffs failed to plead that the transmission of their communications on the defendant's website occurred contemporaneously with their use of the defendant's website. 2024 Cal. Super. LEXIS 12721, at *10-11 (Cal. Super. May 15, 2024). Because Plaintiffs allege the "simultaneous" and "contemporaneous" transmission of website information through a third-party pixel, they have adequately alleged the interception of information "in-transit." *See Aspen*, 2024 U.S. Dist. LEXIS 161090, at *7 ("That Aspen disagrees with Plaintiff's factual allegation is insufficient to justify dismissing Plaintiff's CIPA claim.").

### D. Plaintiffs allege that Abbott aided and abetted Google and Facebook in using and communicating the contents of their intercepted communications.

Abbott argues that because Plaintiffs fail to allege that "Facebook engaged in the activities prohibited by the first two clauses of Section 631(a)," they cannot show that Abbott violated the third clause of the CIPA. But, as demonstrated in Secs. III(A)-(C), *supra*, Plaintiffs do allege that Facebook violated the second clause of the CIPA. In addition, Plaintiffs' Complaint alleges that Facebook has both used and communicated the contents of the communications at issue "for various business purposes, including using such information to 'improve' advertisers' ability to target specific demographics and selling such information to third-party marketers who target those users online[.]" ¶ 17. Abbott supports its argument with only one case—*Tonal Systems*—but as discussed above, *Tonal Systems* is not applicable to the facts of this case. *See* Sec. III(C), *supra*.

## IV. PLAINTIFFS' NEGLIGENCE CLAIMS ARE SOUND.

***First***, Abbott argues that Plaintiffs cannot show a breach of the duty of care because they "do not plausibly show that their medical information was provided on the FSL Marketing Website, let alone disclosed to a third party." MTD at 20. This argument fails for the reasons stated in Sec. I, *supra.* Moreover, in 2017, the Illinois Legislature amended the Personal Information Protection Act ("PIPA") to require "data collectors in possession of the personal information of

Illinois residents" to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure." 815 Ill. Comp. Stat. Ann. 530/45. Since that amendment became effective, courts in this District, including cases involving the same Tracking Tools at issue here, have routinely found that "Illinois law imposes a duty on data collectors to maintain reasonable security measures…You collect it, you keep it safe." *Stein*, 2025 U.S. Dist. LEXIS 31273, at *22-23; *see also Aspen*, 2024 U.S. Dist. LEXIS 161090, at *25 (N.D. Ill. Sep. 9, 2024; *Smith v. Loyola Univ. Med. Ctr*, 2024 U.S. Dist. LEXIS 119995, 2024 U.S. Dist. LEXIS 119995, at *19 (N.D. Ill. July 9, 2024; *Midwest Physician*, 2025 U.S. Dist. LEXIS 60486, at *16 (same).

***Second***, Abbott argues that "Plaintiffs have not adequately pled causation as the Complaint lacks allegations describing what specific information Plaintiffs provided to the Website and any consequences of their interactions with the Website." MTD at 20. This argument fails as discussed in §§ I and III(B), *supra*. Moreover, Plaintiffs allege that they "have suffered fear, anxiety and worry about the status of, and the loss of control over, their private health information." ¶ 331. "Allegations of emotional harm, such as these, are sufficient to state a negligence claim under Illinois law, including in the data privacy context." *Loyola*, 2024 U.S. Dist. LEXIS 119995, at *7.

## CONCLUSION

For these reasons, this Honorable Court should deny Abbott's Motion, grant leave to amend to address pleading deficiencies, if any, and order all such other relief.[9]

[9] Under Rule 15, courts "should freely give leave" to amend a pleading "when justice so requires." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020). While Plaintiff contends sufficient facts are pled to support each cause of action and associated damages, should the Court be persuaded to dismiss any claim, Plaintiff respectfully requests leave to file a First Amended Complaint. Plaintiff submits that this is a reasonable request, particularly where courts nationwide analyzing similar pleadings have done so with varying levels of specificity in the pleadings.

Date: October 31, 2025

Respectfully submitted,

*/s/ Sonjay Singh*
Sonjay Singh (*pro hac vice*)
Tyler Bean (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
T: 929-677-5144
ssingh@sirillp.com
tbean@sirillp.com

Matthew J. Langley (ARDC No. 6337129)
David S. Almeida (ARDC No. 6285557)
Britany A. Kabakov (ARDC No. 6336126)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
T: (312) 576-3024
matt@almeidalawgroup.com
david@almeidalawgroup.com
britany@almeidalawgroup.com

*Attorneys for Plaintiffs & the Putative Classes*

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on October 31, 2025, I filed the attached with the Clerk of the Court using the Court's electronic filing system and will send such filing to all attorneys of record.

*/s/ Sonjay Singh*
Sonjay Singh (*pro hac vice*)