**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LILY NGUYEN, EMZORA MITCHELL and FRANK ORTEGA, on behalf of themselves and all others similar situated,

Plaintiffs,

v.

ABBOTT LABORATORIES INC.,

Defendant.

Case No. 1:24-cv-8289-MSS

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant Abbott Laboratories Inc. ("Abbott") respectfully files its reply in support of its Motion to Dismiss, (Dkt. 38), Plaintiffs' First Amended Class Action Complaint ("FACC") (Dkt. 33) filed by Lily Nguyen, Emzora Mitchell, and Frank Ortega ("Plaintiffs").

## I. Introduction

As this Court stated in its order dismissing Plaintiffs' initial Complaint, "there are two layers of data disclosure at issue[:]"… "whether plaintiffs disclosed HIPAA-protected information to Abbott through their web activities" and… "whether Abbott 'knowingly' disclosed HIPAA-protected information to Meta or Google." *See* Mem. Op. & Or., Dkt. 32 (Aug. 8, 2025) ("Order") at 11. Facts demonstrating both layers of data disclosures are indispensable to each of Plaintiffs' three claims, and yet both layers remain insufficiently pled in Plaintiffs' FACC. Despite amendment, Plaintiffs do not plausibly plead that they submitted sensitive health information to Abbott via its public-facing FreeStyle Libre marketing website (the "FSL Marketing Website") or that Abbott disclosed any such sensitive health information to third parties through trackers on its FSL Marketing Website. The FACC's conclusory and contradictory allegations do not plug these gaping deficiencies. No amount of analytical gymnastics can change the simple fact that Plaintiffs fail to plead either required layer of disclosure. Even after Plaintiffs' amendments, the unavoidable reality remains: the FACC consists of the same threadbare recitals and conclusory statements that the Court has already once rejected. The FACC still does not plausibly plead anything more than "plaintiffs navigated Abbott's website as consumers interested in a free trial of a product." Order at 14. Because Plaintiffs still do not and cannot state a single claim against Abbott, the FACC must be dismissed without leave to amend.

## II. Plaintiffs Still Do Not Sufficiently Plead Disclosure of Sensitive Health Information to Third Parties

Plaintiffs' amendments to the FACC still fail to show what specific information Plaintiffs actually shared with Abbott on the FSL Marketing Website, nor do they supplement in any way Plaintiffs' otherwise deficient allegations that Abbott shared sensitive information with third parties. On the one hand, Plaintiffs' amended allegations do not plausibly state "what information they disclosed when requesting a free trial" on the FSL Marketing Website. *See* Order at 13. Plaintiffs are purposefully vague and opaque about the details of when, how, or where they purportedly provided information to Abbott. On the other hand, Plaintiffs made effectively no changes to their allegations about what sensitive information Abbott purportedly disclosed to third parties through website tracking tools. Collectively, the FACC fails to remedy any of the pleading deficiencies this Court identified and must be dismissed, this time with prejudice.

### A. Plaintiffs Contort Abbotts' Motion and Plaintiffs' Own FACC to Insist This Court Accept Conclusory and Contradictory Allegations as Sufficient.

As an initial matter, the primary theory in Plaintiffs' Opposition is a blatant misconstruction of Abbott's arguments. Plaintiffs insist that their conclusory allegations are enough to survive dismissal, offering the straw man argument that they need not "provide a specific screenshot for each and every piece of information at-issue." Opp. at 7. Of course it is not Abbott's position that every single piece of information must be accompanied by a screenshot in order to survive Rule 12. Rather, the issue here is that the screenshots in the FACC contradict Plaintiffs' otherwise unsupported assertions that medical information was (1) provided to Abbott through Plaintiffs' interactions on the FSL Marketing Website or (2) transmitted to Facebook or other third parties. In other words, Plaintiffs' handpicked screenshots are important because they refute what Plaintiffs imply in their Opposition regarding the transmission of medical information.

**1. The Opposition Ignores the Insufficiency of Plaintiffs' Own Allegations About the Information They Shared on Abbott's Website.**

In response to the Court's Order finding no plausible allegations that Plaintiffs disclosed sensitive health information on Abbott's FSL Marketing Website, Plaintiffs now allege they sent Abbott information such as their prescription and insurance information, but plead nothing to indicate that they provided this information through the website at issue. In Opposition, Plaintiffs mischaracterize the FACC, stating that they alleged the information they input into the Website form included prescription and insurance information. *See* Opp. at 5. This is untrue. In the FACC, Plaintiffs are careful *not* to allege that they provided this information during their website interactions with Abbott, loosely stating only that they "provided a prescription from [their] doctor" and "disclosed to Defendant the type of insurance [they] were using." *See, e.g.,* FACC ¶¶ 195, 200, 218, 223, 241, 245.[1]

First, the screenshots do not reflect any options or sections for Plaintiffs to submit their prescription information. Plaintiffs do not—because they cannot—allege that they actually entered specific prescription information into the FSL Marketing Website. The prescription allegations also state that this information was disclosed "when [Plaintiffs] ordered the device." FACC ¶¶ 195, 218, 241. But the screenshots reflect that completing the sign-up form is only the first step in the process of receiving a device, and that a user must also obtain a voucher which must be downloaded or retrieved from their email, taken to a pharmacist, and have the pharmacist follow certain instructions in order to receive a device. FACC ¶ 124, Figure 11 & Figure 12.

---

[1] *Compare* to FACC ¶¶ 124, 199, 222, 245 (specifically listing the limited information that each Plaintiff disclosed through Abbott's website by filling out a web form and providing an image of the web form as support).

Second, there are no allegations that Plaintiffs specifically entered insurance information on the FSL Marketing Website. Plaintiffs' allegations about information entered on the sign-up form are very specific, *see* FACC ¶¶ 199, 222, 245, yet none of those allegations include the assertion that medical number or similar insurance information was provided as part of that process.

Without allegations that Plaintiffs disclosed their personal health information to Abbott on the website at issue, Plaintiffs are left with the same conclusory facts already rejected by the Court. Therefore, Plaintiffs once again fail to plead that they disclosed HIPAA-protected information to Abbott via the FSL Marketing Website.

**2. The Opposition Seeks to Avoid Plaintiffs' Contradictory, Deficient Allegations About Information Purportedly Disclosed to Third Parties.**

Even assuming that Plaintiffs did sufficiently allege that they provided sensitive health information to Abbott on the website (they did not), it is independently fatal to Plaintiffs' claims that they fail to plead a disclosure of that information to third parties. Plaintiffs do not allege how their medical information was improperly disclosed via the Facebook Pixel or any other technology. Instead, they baldly state—without support—that the mere existence of the Facebook Pixel on the FSL Marketing Website automatically transmits HIPAA-protected information to Facebook. That is not good enough.

Even worse, the screenshots Plaintiffs select and include in the FACC actually contradict the conclusory allegations regarding the transmission of medical information to third parties. The screenshots that Plaintiffs chose to bring to the Court's attention demonstrate that only extremely limited information is disclosed (namely, "gender" choice on a drop-down menu on Abbott's

public-facing, marketing website). *See* FACC ¶ 124, Figure 11[2]; *see also Cole v. Quest Diagnostics, Inc.*, No. 25-1449, Dkt. 30 at 7 (3d Cir. Nov. 13, 2025) (affirming dismissal of CIPA pixel wiretap claim and noting that medical information "does not encompass demographic or numeric information that does not reveal medical history, diagnosis, or care."). More telling is what Plaintiffs' screenshots do not show being disclosed to any third parties. For example, the screenshots reflect that the Facebook pixel does not even capture if the form is being filled out for the user or another person, let alone the name, email address, date of birth, or phone number entered. *See id.*, Figures 11 & 12. And there is not even a suggestion of disclosure of prescription or insurance information as Plaintiffs do not even allege that those items were provided through the website. In other words, these screenshots contradict Plaintiffs' allegations by demonstrating that it is not even possible that every single piece of arguably "health information" allegedly provided to Abbott was input into the FSL Marketing Website, and even if it were, nothing personal or sensitive could have been disclosed to third parties. Without actual pled facts about how, when and where the supplemental information added to the FACC was disclosed to third parties, there are no plausible allegations that the information was disclosed or intercepted by third parties via website tracking tools.

Plaintiffs' insistence that Abbott "intentionally configured the Pixels on the FSL Marketing Website to transmit 'large amounts of additional user data,'" *see* Opp. at 9, fails for the same reasons. Not only do Plaintiffs offer this threadbare conclusion without pleading any supporting facts whatsoever, the screenshots they include in the FACC once again contradict this claim by confirming that only certain innocuous information is collected (e.g., the fact a form was

[2] *See also* Order at 5 (depicting and analyzing identical figure from Plaintiffs' initial complaint).

completed ("Form Field Completion"), URL name, and buttons clicked ("SubscribedButtonClick")). FACC ¶ 124, Figure 11.

**B. Plaintiffs' Excuses for Their Sparse Allegations Regarding Abbott's Mobile App Should Be Rejected.**

As an initial matter, Plaintiffs' Opposition relies on facts and information about Abbott's mobile application that were not included in the FACC and should be rejected outright. *See, e.g.,* Opp. at 10 (discussing concept of "SSL pinning" for the first time to argue that Plaintiffs were prevented from investigating the tracking tools used on the mobile app). Plaintiffs cannot belatedly attempt to amend their complaint through the Opposition. *See Webb v. AWA Collections*, No. 20-cv-5656, 2021 WL 3142169, at *6 (N.D. Ill. July 26, 2021) (declining to consider claims asserted within plaintiffs' opposition brief because "the law holds that briefs in opposition to a motion to dismiss cannot amend a complaint.").

Even if the Court considers Plaintiffs' improperly-raised arguments, they do not remedy the fact that Plaintiffs' allegations about Abbott's mobile application are speculative, unsupported, and irrelevant. Plaintiffs claim that using the mobile application to monitor glucose levels, receive communications, and order additional products is representative of a patient and healthcare provider relationship. Even if this were true, Plaintiffs fail to connect these allegations to any disclosure of information to third parties, because they are entirely unrelated to the information allegedly captured by the tracking tools on the FSL Marketing Website at issue in this litigation.

In their Opposition, Plaintiffs admit that they have no facts indicating that tracking tools are present in the mobile app, let alone that health information shared in the app is transmitted by those tools to third parties, leaving Plaintiffs to rest on paper-thin allegations "upon information and belief" that "Defendant's use of the Tracking Tools includes its mobile application." FACC ¶¶ 208, 231, 254; Opp. at 9-10. Confronted with this lack of facts, Plaintiffs offer only the

speculative theory that "SSL pinning" prevents them from investigating whether tracking tools are in fact present on the app, because such practice is used by "most mobile apps." Opp. at 10. But this theory contradicts Plaintiffs' own pled allegations. Plaintiffs assert that SSL pinning is a security measure that "protects against third-party interception" and "ensures that data transmitted is encrypted and can only be viewed under authorized, intended circumstances by the sender and recipient." Opp. at 10. So, Plaintiffs are essentially arguing that Abbott's mobile application uses a security measure that prevents the very activity that is the basis of all their causes of action. Yet, in the face of this contradictory information, Plaintiffs insist that the Court accept their "information and belief" allegations that third party interceptions do occur within the mobile app. The Court should reject these allegations as conclusory, speculative and contrary to Plaintiffs' own case theory.

## III. Plaintiffs' ECPA Claim Cannot Survive Dismissal

Plaintiffs' ECPA claim remains fatally deficient because Plaintiffs cannot plausibly allege that the crime-tort exception should apply. First, just as this Court found in its Order, Plaintiffs are still unable to plausibly allege that HIPAA-protected information was transmitted to Abbott or third parties through Plaintiffs' website interactions. Second, since Plaintiffs cannot allege a HIPAA violation, they are also unable to plausibly allege that any data transmissions occurred for a criminal or tortious purpose.

### A. Plaintiffs May Not Use Their ECPA Claim As a Means to Impose a Private Right of Action Under HIPAA.

HIPAA does not provide a private right of action. *See Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (observing that "every circuit court to consider whether HIPAA created a private right to sue has found that it does not," and citing decisions from the Second, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits). As one court has noted, "[b]ecause there is no private right of

action for HIPAA violations, [an] assertion of an ECPA violation based on an alleged HIPAA violation may be reasonably viewed as an attempted end run around HIPAA's limitations to seek relief for the same alleged harm." *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:24-cv-00382, 2025 WL 880538, at *3 n.1 (W.D.N.C. Mar. 20, 2025). Here, even putting aside the lack of plausible allegations that HIPAA-protected information was disclosed to third parties, Plaintiffs' attempt to enforce HIPAA against Abbott through an ECPA claim fails as an improper attempt to circumvent HIPAA's lack of private right of action.

**B. Plaintiffs' Inability to Allege a HIPAA Violation is Fatal to Their ECPA Claim.**

Plaintiffs' insistence in the Opposition that the crime-tort exception applies is unfounded given Plaintiffs' failure to plead any facts indicating that sensitive medical information was transmitted to third parties—thus, there is no indication that Abbott violated HIPAA. This critical factor separates the instant case from all of the cases on which Plaintiffs rely. Plaintiffs quote chapter and verse from cases involving: (1) a patient-provider relationship and (2) disclosure of truly sensitive information; neither of which are present here. *See, e.g., Castillo v. Costco Wholesale Corp*., No. 2:23-CV-01548, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024) (ECPA claim brought **by patients** of Costco Pharmacy who ordered prescriptions, immunizations, and other health services through the website); *Mayer v. Midwest Physician Admin. Servs*., LLC, No. 23-cv-3132, 2025 WL 963779, at *1 (N.D. Ill. Mar. 31, 2025) (ECPA claim brought **by patients** who used website to book medical appointments, communicate symptoms and locate doctors); *A.D. v. Aspen Dental Management, Inc*., No. 1:24-CV-01404, 2024 WL 4119153, at *1 (N.D. Ill. Sept. 9, 2024) ("*Aspen*") (ECPA claim brought **by patients** who used Aspen Dental's website to schedule appointments and search for dentists and treatments); *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *2 (N.D. Ill. Feb. 21, 2025) (ECPA claim

brought **by patients** who used the website to book medical appointments, locate physicians and treatments, and search for medical conditions and treatment options); *R.S. v. Prime Healthcare Servs.*, No. 5:24-CV-00330, 2025 WL 103488, at *2 (C.D. Cal. Jan. 13, 2025) (ECPA claim brought **by patients** who used the website to communicate with healthcare providers, access lab and test results, manage appointments, and order prescription refills). Further underscoring the differences between the information purportedly disclosed in this action versus the other cases to which Plaintiffs cite is that fact that in many of these cases, the operative complaints included redactions for allegations of the specific sensitive information that was purportedly disclosed by the website at issue. *See Castillo*, No. 2:23-CV-01548, Dkt. 29 (Jan. 26, 2024) at ¶¶ 15-25; *Mayer,* No. 23-cv-3132, Dkt. 34 (Mar. 1, 2024) at ¶¶ 238-292; *Aspen*, No. 1:24-CV-01404, Dkt. 61 (Oct. 21, 2024) at ¶¶ 300–382.

Here, the FACC does not allege that Plaintiffs are patients of Abbott, nor does it include allegations that sensitive information (such as details about Plaintiffs' patient status, medical appointments, or physicians) was transmitted to third parties (*see supra*, Sec. II.). The absence of such a transmission is further evidenced by the fact that Plaintiffs did not feel the need to redact any of their allegations about the information they purportedly shared with Abbott.

Fundamentally, Plaintiffs' claims are based entirely on their alleged interactions with Abbott's public-facing, marketing website. Nothing in the FACC transforms those interactions from those involving a consumer interested in a free trial to the transmission of medical information between a patient and a healthcare provider. *See* Order at 14.

### C. Because Plaintiffs Cannot Allege a HIPAA Violation, They Also Cannot Allege a Criminal or Tortious Purpose.

In the absence of allegations involving the transmission of sensitive medical information, Plaintiffs fail to allege that Abbott acted with intent to commit a crime or tort in implementing

website tracking tools. Instead, Plaintiffs can only plead that Abbott's motivation was merely to increase its profit margins. FACC ¶ 305. In response to authority rejecting the application of the crime-tort exception for use of website tracking tools meant to drive revenue and business engagement, Plaintiffs now incorrectly argue that such a view automatically exempts a party from ECPA liability under the crime-tort exception in all circumstances if a monetary motivation for interception were also present. Plaintiffs analogize that Abbott's position would mean that a person intercepting communications to blackmail another person could avoid liability under the crime-tort exception because the primary motivation would be to make money. Opp. at 13. This straw man argument mischaracterizes both applicable case law and Abbott's argument, which is that monetary motivation in the absence of **any** purpose to act criminally or tortiously, makes the crime-tort exception inapplicable. Thus, in Plaintiffs' blackmail hypothetical, the crime-tort exception would apply because the purpose of blackmail was to facilitate impropriety. *See Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200 (9th Cir. 1999) ("[w]here the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [the crime-tort exception] applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.").

In contrast, because here "[t]here is nothing in the [FACC] to suggest that [Abbott] had a conscious purpose in deploying the web tracking tools to disclose information in violation of HIPAA," the crime-tort exception is inapplicable and Plaintiffs' ECPA claim fails under the one-party consent rule. *Doe v. Lawrence Gen. Hosp.*, No. 25-CV-10081-NMG, 2025 WL 2808055, at *7 (D. Mass. Aug. 29, 2025*), report and recommendation adopted in relevant part*, No. 25-cv-10081-NMG, 2025 WL 2807673 (D. Mass. Sept. 30, 2025). *See also Roberts*, 2025 WL 880538, at *3 ("Even taking Plaintiffs' factual allegations as true, Defendant allegedly used lawfully

obtained IIHI for advertising purposes or for commercial gain, but there are no alleged facts from which the Court could conclude that Defendant did so for the purpose of committing a criminal or tortious act.").

In their Opposition, Plaintiffs' arguments regarding Abbott's motivation in utilizing website tracking tools confuse purpose with effect. The central inquiry of the crime-tort exception is whether Abbott intercepted communications "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added). "It is not enough that a crime or tort was a mere side-effect of the interception." *Lawrence Gen. Hosp.*, 2025 WL 2808055, at *12 ("Indeed, the heightened intent required by the words 'for the purpose' of committing a crime or tort elevates this intent requirement beyond the already-heightened requirement that the interception itself be 'intentional.'") Here, Plaintiffs do not allege, as they must under the crime-tort exception, that Abbott intended to commit a crime or tort (e.g., that Abbott intended to violate HIPAA). Plaintiffs' bald conclusion that "a criminal or tortious ***act***, not ***purpose***, is all that is required to satisfy the crime-tort exception" Opp. at 12 (emphasis in original) is wrong and contradicts the clear language of the statute. *See supra*, 18 U.S.C. § 2511(2)(d). As one court noted, "[h]ad Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting* in a tortious or criminal act." *Doe v. Kaiser Foundation Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *9 (N.D. Cal. Apr. 11, 2024) (quoting *Caro v. Weintraub*, 618 F.3d 94, 99–100 (2nd Cir. 2010) (emphasis in original)).

## IV. Plaintiffs Can State Neither a Direct Nor Derivative CIPA Claim Against Abbott

### A. Plaintiffs' Claim for Direct Liability Under CIPA is Barred by the One-Party Consent Exception.

Like Plaintiffs' ECPA claim, Plaintiffs' claim for direct liability under CIPA is also barred by the CIPA's one-party consent provision. *See supra,* Sec. III*; In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 152 (3d Cir. 2015) ("*In re Google*") (affirming the district court's dismissal of plaintiffs' CIPA claim "for the same reason that [the district court] dismissed the plaintiffs' federal wiretapping claim" and noting "§ 631 [of the CIPA] is aimed only at 'eavesdropping, or the secret monitoring of conversations by <u>third parties</u>.'") (emphasis added)). Earlier this year, a district court found that plaintiffs in a similar case could not maintain their CIPA claim due to the one-party consent rule because the defendant was an "intended recipient" of the requests sent from plaintiffs' browsers. *See Cole v. Quest Diagnostics, Inc*., No. 2:23-CV-20647-WJM, 2025 WL 88703, at *2 (D.N.J. Jan. 14, 2025). In *Cole*, like here, plaintiffs alleged that defendant improperly disclosed plaintiffs' medical information to Facebook via the operation of the Facebook Pixel on their website. The district court reconsidered its prior denial of defendant's motion to dismiss plaintiffs' CIPA claim and found that under *In re Google*, plaintiffs' CIPA claim failed because defendant was a party to the communication. *Id*. at *3 (noting "plaintiffs' browsers directly communicate with the [alleged eavesdropper] about the webpages they are visiting, and as such, there is no need for the [eavesdropper] to acquire that information from transmissions to which they are not a party.") (internal quotations omitted). As in *Cole*, Plaintiffs here allege that Abbott was a recipient of their communications with the Website. *See* FACC ¶¶ 66, 311. Plaintiffs' CIPA claim too must fail.

**B. Plaintiffs' Claim for Derivative Liability Under CIPA Fails Because They Do Not Allege Third Parties Violated CIPA.**

Plaintiffs present nothing to show that the threadbare allegations in the FACC demonstrate derivative aiding and abetting liability under CIPA, because they do not plausibly allege that Facebook or other third parties violated the statute.

**1. Plaintiffs Still Fail to Allege "Contents" of Communication Under the First Clause of Section 631(a).**

In their Opposition, Plaintiffs argue that they have asserted "even more detail than the plaintiff[s] in *Cousin II*," who had alleged that they booked appointments through the website and ran personal search queries containing specialty healthcare providers and treatments for medical conditions. *See Cousin v. Sharp Health*, 702 F. Supp. 3d 967, 975-976 (S.D. Cal. 2023) ("*Cousin II*") (finding "contents" of communication had been transmitted under CIPA where plaintiffs plausibly alleged the disclosure of their HIPAA-protected information). But this is not true. In contrast, Plaintiffs here do not allege that they booked medical appointments or ran search queries of phrases indicating their health condition. Instead, they refer back to their paper thin, conclusory allegations regarding disclosure of medical condition, medical device, and health insurance provider, *see* Opp. at 17, despite failing to allege any details about if or how Plaintiffs input such information on the website. *See supra*, Sec. (II)(A)(1).

**2. Plaintiffs Still Fail to Allege Communications Were Intercepted "In Transit" under the Second Clause of Section 631(a).**

In Opposition, Plaintiffs use words like "simultaneous" and "contemporaneous" in an attempt to establish an interception "in transit." Opp. at 18. But these legal labels should not distract the Court from Plaintiffs actual allegations in the Complaint about the Meta Pixel's functionality. According to the FACC itself, Facebook's alleged interception occurs after Plaintiffs' purported communication reaches its destination at Abbott's server, thereby making it implausible – in fact, at least in the space-time continuum governing the Northern District of Illinois, impossible – that the interception took place "in transit" as required under the CIPA. *See* FACC ¶¶ 78-87.

#### 3. Plaintiffs' Fail to Allege Use of Information Under the Third Clause of Section 631(a).

Plaintiffs' failure to show that Abbott violated either of the first two clauses of Section 631(a) also dooms their claim that Facebook violated the third clause of Section 631(a), which requires a predicate violation of one of the first two clauses.

### V. Plaintiffs Fail to Establish the *Prima Facie* Elements Necessary to Plead a Negligence Claim

First, as discussed above, Plaintiffs cannot plausibly show that their medical information was disclosed to Facebook or any other third party through the publicly-accessible FSL Marketing Website. *See supra*, Sec. II(A)(2). In other words, there was no privacy duty breached. Therefore, Plaintiffs' negligence claim fails. *See Smart v. Main Line Health*, No. 22-cv-5239, 2024 WL 2943760, at *4 (E.D. Pa. June 10, 2024) (dismissing negligence claim against website operator where plaintiff failed to "identify the specific individually-identifiable health information searched for on Defendant's website and the consequences of those searches").

Second, in the absence of facts showing the disclosure of Private Information, Plaintiffs also fail to establish that they suffered any cognizable injury. Plaintiffs fail to establish that their vague allegation of "fear, anxiety and worry about the status of, and the loss of control over, their private health information" constitutes negligence damages, since they have not plausibly pled a disclosure or any "loss of control" of their health information at all. *Compare Smith v. Loyola Univ. Med. Ctr.*, No. 23-cv-15828, 2024 WL 3338941 at *7 (N.D. Ill. July 9, 2024) (finding allegations of emotional harm sufficient to state a negligence claim where plaintiffs alleged defendant's website tracking devices transmitted information about plaintiffs' medical appointments, treatment location, specific healthcare providers, and test results that was so sensitive it had to be redacted from the public record). *See also Murphy v. Thomas Jefferson Univ.*

*Hosps., Inc.*, No. 22-cv-4674, 2023 WL 7017734, at *5 (E.D. Pa. Oct. 10, 2023) (rejecting allegations of "embarrassment, humiliation, emotional harm, and distress" as cognizable harm because "the Court cannot consider these boilerplate allegations in the absence of facts to support them.") Because Plaintiffs cannot establish the elements of their *prima facie* negligence claim, their negligence claim must also be dismissed.

## VI. Conclusion

For the foregoing reasons, Plaintiffs' First Amended Class Action Complaint should be dismissed with prejudice.

Dated: November 14, 2025

*/s/ William F. Farley*
William F. Farley (6305896)
Timothy Ray (6230099)
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
(312) 928-6024
william.farley@hklaw.com

Mark S. Melodia (admitted *pro hac vice*)
Sophie L. Kletzien (*application for pro hac vice pending*)
HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, NY 10019
(212) 513-3583
mark.melodia@hklaw.com
sophie.kletzien@hklaw.com

Ashely L. Shively (264912)
HOLLAND & KNIGHT LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
(415) 743-6906
ashley.shively@hklaw.com

Caitlin F. Saladrigas (admitted *pro hac vice*)
HOLLAND & KNIGHT LLP
777 South Flagler Drive,

Suite 1900, West Tower
West Palm Beach, FL 33401
(561) 650-8349
caitlin.saladrigas@hklaw.com

*Counsel for Defendant*
*Abbott Laboratories, Inc.*