UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LILY NGUYEN, EMZORA MITCHELL, and FRANK ORTEGA, <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, INC., <br><br> Defendant. | No. 24 CV 8289 <br><br> Judge Manish S. Shah |

### MEMORANDUM OPINION AND ORDER

Defendant Abbott Laboratories manufactures and sells continuous glucose monitoring devices for diabetes management. Plaintiffs Lily Nguyen, Emzora Mitchell, and Frank Ortega requested free trials of the FreeStyle Libre brand products on Abbott's website. Plaintiffs allege that Abbott installed tracking tools on its website that shared sensitive information about them with third parties like Meta and Google. Plaintiffs bring claims against Abbott for violating the Electronic Communications Privacy Act, the California Invasion of Privacy Act, and for negligence under Illinois law. I dismissed plaintiffs' first complaint without prejudice. [32].[1] Plaintiffs filed an amended complaint, and defendant moves to dismiss the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' first amended complaint, [33]. Many of the facts are the same as alleged in the original complaint, and this opinion similarly repeats or incorporates the discussion from the earlier opinion, [32]. The court has subject-matter jurisdiction over the state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2): defendant is a corporation organized in Illinois and with its principal place of business in Illinois, [33] ¶ 42, plaintiffs Nguyen and Ortega are not citizens of Illinois, [33] ¶¶ 39, 41, and the aggregate claims of all members of the proposed class are in excess of $5,000,000, [33] ¶ 43.

amended complaint under Rule 12(b)(6). For the reasons discussed below, the motion is granted.

I.  **Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals based on failure to state a claim upon which relief may be granted. To survive a 12(b)(6) motion, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). In evaluating a complaint's sufficiency, courts "accept as true all well-pled facts and make any reasonable inferences in the non-movant's favor." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022). However, I disregard "[t]hreadbare recitals" supported only by conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

II. **Background**

Defendant Abbott Laboratories manufactures and sells continuous glucose monitoring products under its FreeStyle Libre brand. [33] ¶¶ 7, 100. Abbott offers free trials for interested customers on its website. [33] ¶ 102. Plaintiffs Lily Nguyen, Emzora Mitchell, and Frank Ortega requested the FreeStyle Libre products to help manage their diabetes. [33] ¶¶ 196, 219, 242.

Abbott allegedly installed "tracking tools" on its website that collected plaintiffs' data and transmitted it in real time to unauthorized third parties like Meta and Google. [33] ¶¶ 4, 9–10. The tracking tools included the Meta Pixel, Google Analytics, Google DoubleClick, and Google Tag Manager. [33] ¶ 9. There are

differences in how each tool works, but Abbott essentially embeds tracking tools on its website; the tools "co-opt" a user's browser and transmit information to Meta and Google; Meta and Google connect that information to an individual user's Facebook ID or Google accounts; and Meta and Google use or sell the information to third-party companies to generate targeted advertisements for those users. [33] ¶¶ 13–18 (tracking tools generally); ¶¶ 19–20 (Meta Conversions Application Programming Interface); ¶¶ 57–66 (Meta Pixel); ¶¶ 75, 96 (Google). In addition to collecting a user's IP addresses and various account identifiers, the tools can collect information about how a user interacts with a website: searches entered, specific pages viewed, and "buttons" clicked. [33] ¶¶ 81–84.

When a user printed a voucher, this is what happened on Abbott's webpage, [33] ¶ 111:[2]



The left side shows what was visible to a user: a button to "Print Voucher" and an image of a "Free Sample Card" for FreeStyle Libre 3. The right side shows the information transmitted via Meta Pixel. For example, if a user clicked the "Get your free* sensor" button, the action could be sent to Meta via the "SubscribedButtonClick" event along with information like the webpage title "FreeStyle Libre Continuous Glucose Monitoring." [33] ¶ 113.

---

[2] Plaintiffs cite to an archived link of Abbott's privacy policy as of December 2022. [33] ¶ 128 n.41. Only screenshots are available of the webpages at issue.

Abbott's sign-up page for the "MyFreestyle Program" looked like this, [33] ¶ 124:



The left is what was visible to users: two options to identify who the sign-up is for ("Myself" or "Someone I care for") and fill-in sections for First Name, Last Name, Email Address, Date of Birth, and Gender. The right shows the information transmitted to Google, including "Form Field Completion" and "Gender_Female." [33] ¶ 125.

Plaintiffs generally allege that Abbott's tracking tools sent "non-public Private Information" including: (1) status as medical customers, (2) specific health conditions, i.e., diabetes, and (3) the specific diabetes management device used or sought. [33] ¶ 93.

Plaintiff Nguyen, a Georgia domiciliary, requested free trials of the FreeStyle Libre devices on several occasions, most recently in May 2023. [33] ¶ 193. She accessed Abbott's website "to review and request FreeStyle Libre products for herself

5

as well as search for and communicate information related to her diabetes, insurance, and other Private Information." [33] ¶ 197. She visited specific webpages and made searches (via the website search bar) that disclosed specific phrases related to her medical condition, searches related to insurance coverage for diabetes monitoring systems, and "the details of her requests for Abbott's diabetes monitoring products." [33] ¶ 198. In filling out the form to sign up for the MyFreeStyle Program, Nguyen disclosed that she was ordering the continuous glucose monitoring device for herself and transmitted her name, email address, date of birth, gender, phone number, and zip code to Abbott. [33] ¶ 199. She also alleges that she disclosed the type of insurance she was using to receive the product and the specific monitoring device she was already using to treat her diabetes. [33] ¶ 200.

Nguyen alleges that Abbott "intercepted communications" about the above information. [33] ¶ 201. Nguyen holds Facebook and Google accounts. [33] ¶ 203. She began receiving targeted ads on Facebook and Instagram for FreeStyle Libre 3, diabetes management programs from the brand Noom, and other diabetes-related ads. [33] ¶ 212.

Plaintiff Mitchell, an Illinois domiciliary, requested free trials of the FreeStyle Libre devices, most recently in August 2021. [33] ¶ 216. Mitchell alleges the same disclosures as Nguyen: navigating specific webpages, searching specific phrases via search bar, communications about her search for and ordering of a continuous glucose monitoring device to treat her diabetes, communications about her insurance coverage, personal information including her name, email address, date of birth,

6

gender, phone number, and zip code, and the type of device she was using to treat her diabetes. [33] ¶ 224. Mitchell began receiving targeted ads on Facebook and Instagram related to diabetes monitoring and management, including ads for FreeStyle Libre products. [33] ¶ 235.

Plaintiff Ortega, a California resident, requested free trials of the FreeStyle Libre products, most recently in July 2023. [33] ¶ 239. Ortega alleges similar disclosures to Nguyen and Mitchell: performing specific searches on the website's FAQ section, communications about his search for and ordering of a continuous glucose monitoring device to treat his diabetes, communications about his insurance coverage, personal information including his name, email address, date of birth, gender, phone number, and zip code, and the type of device he was using to treat his diabetes. [33] ¶ 247. Ortega began receiving targeted ads on Facebook and Instagram related to diabetes monitoring and management, including ads for FreeStyle Libre products. [33] ¶ 258.

All plaintiffs allege violations under the Electronic Communications Privacy Act for unauthorized interception, use, and disclosure of their communications. [33] ¶¶ 287–324. All plaintiffs also allege negligence, invoking duty under Illinois's Personal Information Protection Act. [33] ¶¶ 325–332 (citing 815 ILCS 530/45(a)). Plaintiff Ortega, on behalf of himself and the California sub-class, alleges a violation of the California Invasion of Privacy Act. [33] ¶¶ 333–342. Abbott once again moves to dismiss for failure to state a claim.

7

**III. Analysis**

  **A. Electronic Communications Privacy Act**

The Electronic Communications Privacy Act prohibits the interception and disclosure of "wire, oral, and electronic communications." 18 U.S.C. § 2511; *John K. Maciver Inst. for Pub. Pol'y, Inc. v. Schmitz*, 885 F.3d 1004, 1009 (7th Cir. 2018) (referring to Title I of the ECPA as the "Wiretap Act"). The ECPA provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any … electronic communication." 18 U.S.C. § 2511(1)(a). To state a claim, plaintiffs must plausibly allege that Abbott "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015).

The statute recognizes a one-party consent exception. An interceptor is not liable if they are "a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). The exception does not apply "if such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id*.

Plaintiffs concede that Abbott was a party to the communications but invoke the crime-tort exemption. [40] at 14. Plaintiffs claim that Abbott intercepted the

8

communications "for the purpose of committing [a] criminal or tortious act," here, a violation of the Health Insurance Portability and Accountability Act. [40] at 15.

HIPAA makes it a crime for a person to "knowingly… disclose[] individually identifiable health information to another person."[3] 42 U.S.C. § 1320d-6(a)(3); *cf. Carpenter v. Phillips*, 419 Fed. App'x 658, 659 (7th Cir. 2011) (no private right of action under HIPAA). Individually identifiable health information includes:

> any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider… *and* (B) relates to the past, present, or future physical or mental health or condition of an individual… *and*—(i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320d(6) (emphasis added). To plead the crime-tort exception, plaintiffs must plausibly allege that Abbott illegally disclosed their individually identifiable health information to Meta or Google (or any other third party).

As with the first complaint, there are two layers of data disclosure at issue. First, whether plaintiffs disclosed HIPAA-protected information to Abbott through their web activities. Then, whether Abbott "knowingly" disclosed HIPAA-protected information to Meta or Google.

### 1. Plaintiffs' Disclosure of HIPAA-Protected Information

In granting defendant's previous motion to dismiss, I noted that plaintiffs failed to "sufficiently allege the disclosure of HIPAA-protected information to Abbott

---

[3] "Person" includes a corporation. 42 U.S.C. § 1301(a)(3). At this stage of the case, there is no dispute whether information was "created or received by a health care provider." *Id.* § 1320(d)(6)(A).

in the first place." [32] at 12. Merely browsing and searching Abbott's website does not amount to a disclosure of individually identifiable health information to Abbott. *See Smith v. Facebook, Inc.*, 745 Fed. App'x 8, 9 (9th Cir. 2018) ("Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA]—information that unequivocally provides a window into an individual's personal medical history.").

In the amended complaint, plaintiffs try to clarify the nexus between their web activities and Abbott's alleged disclosure of individually identifiable health information. For example, plaintiffs allege that they each disclosed to Abbott the type of insurance they had and the specific glucose monitoring device they were using to treat their diabetes. [40] at 9 (citing [33] ¶¶ 199–200, 222–223, 245–246). They also disclosed various personal details while filling out the form to sign up for the MyFreeStyle Program, including the fact that they were ordering the devices for themselves. [33] ¶¶ 199, 222, 245. Ordering a diabetes-related device for oneself, along with the type of insurance, plausibly discloses identifying information of an individual and their medical condition, diabetes. Plaintiffs have plausibly alleged that personally identifiable information relating to a past, present, or future health condition was received by Abbott as a health care provider. *See* 42 U.S.C. § 1320d(6).

### 2. Abbott's Disclosure of HIPAA-Protected Information

Plaintiffs have not, however, adequately pled the second layer of data disclosure: that Abbott knowingly disclosed protected information to Meta or Google. Plaintiffs' amended complaint incorporates the same screenshots as their original

10

complaint. The images depict what information was transmitted to third parties when an individual interacted with Abbott's website. While plaintiffs are correct that they are not required to provide specific evidence to support of the allegations made in the complaint, [40] at 11, courts are free to consider "any facts set forth in the complaint that undermine the plaintiff's claim." *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992).

Here, the screenshots preclude plaintiffs from plausibly alleging that Abbott's website transmitted their protected health information. As defendant points out, not everything a user "discloses" or "communicates" to Abbott's website is transmitted to third parties. [39] at 10. *See, e.g.*, [33] ¶ 111 (user clicking "Get your free* sensor" button transmits event data "SubscribedButtonClick" via Meta Pixel). For instance, none of the images support plaintiffs' conclusory allegations that Abbott disclosed the type of insurance they used to cover their continuous glucose monitoring device. Further, while plaintiffs disclosed personal information like their date of birth and the fact that they were the ones signing up for the MyFreeStyle Program, neither of these datapoints were transmitted through third-party tracking tools. [33] ¶ 124. The fact that a form was completed, a button to subscribe was clicked, or a user was female is distinguishable from the kind of personally identifiable information Abbott would need to disclose to be liable under the ECPA.

Demonstrating interest in a free trial is not the same as transmitting sensitive medical information. The disclosure of HIPAA-protected information must be tied to a specific individual—in other words, be *individually* identifiable. 42 U.S.C.

11

§ 1320d(6). Apart from stating legal conclusions, the individual plaintiffs do not allege what personal information Abbott disclosed when plaintiffs enrolled in the program.[4] The mere existence of tracking tools on Abbott's website does not in itself establish the disclosure of HIPAA-protected information. I agree with defendants that the transmitted data alleged in the screenshots fails to plausibly allege that Abbott disclosed HIPAA-protected information.[5] As a result, the crime-tort exception does not apply and Abbott's motion to dismiss the ECPA claim is granted.

**B.     Negligence**

To state a claim for negligence under Illinois law, "a plaintiff must plead that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach was the proximate case of the plaintiff's injuries." *Cowper v. Nyberg*, 28 N.E.3d 768, 772 (Ill. 2015). Abbott argues that plaintiffs failed to allege facts showing that Abbott breached any duty owed to them. [39] at 25. Abbott also argues that plaintiffs failed to allege proximate cause or damages. [39] at 25.

---

[4] Submitting a form titled "Thank You For Joining the MyFreeStyle Pogram" or clicking a button labeled "Start Free Trial" for a "FreeStyle Libre Continuous Glucose Monitoring" device is "too tenuous" to support an inference that Abbott violated HIPAA in the absence of "information that unequivocally provides a window into an individual's personal medical history." *Smith*, 745 Fed. App'x at 9. Plaintiffs' conclusory allegations "that Abbott disclosed their status as medical patients, the contents of their communications with Abbott's Website, and information about their specific medical conditions and treatments" are undermined by the screenshots in the complaint capturing what the tracking tools do—and do not—collect. *See Hamilton*, 976 F.2d at 343.

[5] Plaintiffs' allegations regarding Abbott's mobile application fail for the same reason. *See* [33] ¶¶ 208, 231, 254. In addition to asserting facts about the application that are not alleged in the amended complaint, plaintiffs' arguments are conclusory and fail to allege the disclosure of protected information to any third parties. [40] at 13–14.

Illinois's Personal Information Protection Act requires data collectors to protect nonpublic personal information from "unauthorized access, acquisition, destruction, use, modification, or disclosure." 815 ILCS 530/45(a). As discussed above, plaintiffs fail to adequately plead that Abbott (a data collector) disclosed HIPAA-protected information to Meta or Google. An individual's social media identifiers and gender are not the kind of nonpublic personal information the Personal Information Protection Act seeks to protect. Abbott has not breached a duty owed to plaintiffs. Accordingly, Abbott's motion to dismiss the negligence claim is granted.

### C. California Invasion of Privacy Act

Section 631(a) of the California Invasion of Privacy Act prohibits "three distinct and mutually independent patterns of conduct": (1) intentional wiretapping; (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Super. Ct.*, 22 Cal.3d 187, 192 (1978). Section 631(a) also imposes a fourth type of liability on anyone who aids or abets any of the other three bases for liability. Cal. Pen. Code § 631(a). Plaintiffs argue that they have adequately alleged claims under the second, third, and fourth clauses. [40] at 18.

#### 1. Direct Violation of the CIPA

California courts analyze claims under the CIPA and ECPA using the same framework. *See, e.g., Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap

Act."); *In re Google*, 806 F.3d at 152 (affirming dismissal of the CIPA claim for the same reason it affirmed the dismissal of the ECPA claim). As discussed above, plaintiffs have not adequately alleged that Abbott disclosed their HIPAA-protected information. Therefore, the crime-tort exception does not apply and the one-party exception precludes Abbott from being liable for a direct violation of the CIPA.

### 2. *Derivative Violation of the CIPA*

To assert a violation of the CIPA based on derivative liability, a plaintiff must allege facts showing a third party's predicate violation of one of the other three clauses of § 631(a). *See* Cal. Pen. Code § 631(a). Plaintiffs argue that Abbott aided and abetted Meta's and Google's willful attempt to learn the contents or meaning of a communication in transit over a wire, in violation of the second clause of § 631(a). [40] at 19–20.

The CIPA does not define the term "contents." But federal courts have interpreted the term to refer "to the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Contents are thus distinguishable from "record information," which is limited to "information regarding the characteristics of the message" and falls outside the category of protected content. *Id.*

With this definition in mind, the question becomes whether plaintiffs plausibly alleged that the information conveyed to third parties concerned the substance, purport, or meaning of a communication. *Id.* at 1106–07. The screenshots establish that Abbott transmitted the following information to Meta and Google: that a form

14

was completed, a button to subscribe was clicked, the user was a particular gender, and the user's Facebook ID. *See* [33] ¶¶ 111–124. Customer information (such as a person's name, address, and subscriber identity) is typically record information. *See Zynga*, 750 F.3d at 1106. Further, information that third parties *infer* from a user's interaction with a webpage is not the "content" of a communication. *See Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1093 (N.D. Cal. 2022); *United States v. Forrester*, 512 F.3d 500, 503 (9th Cir. 2008). While Meta or Google might infer plaintiffs' medical history or conditions from the fact that they subscribed to a free trial of the MyFreeStyle Program, the extent of that inference is limited because plaintiffs do not plausibly allege that the third parties received the specific substantive information typed or clicked into Abbott's website.

The inferences available to Meta and Google in the instant case are less personal and concrete than those plaintiffs point to in *Cousin II*. [40] at 20–21 (citing *Cousin v. Sharp Healthcare*, 702 F.Supp.3d 967 (S.D. Cal. 2023)). In *Cousin II*, the plaintiffs plausibly alleged that the data collected by third parties included personal search queries on specialty healthcare providers and treatments for medical conditions. 702 F.Supp.3d at 976. The content being conveyed was their personal health information. *Id.* As discussed throughout this opinion, that is not the case here. Thus, while plaintiffs allege in their amended complaint that Abbott "allow[ed] unauthorized third parties to intercept the contents of customer communications,"

15

[33] ¶ 10, this is ultimately a legal conclusion contradicted by the facts set forth in the complaint.[6]

Because plaintiffs do not plausibly allege that Abbott aided and abetted Meta or Google in violating the second clause of the CIPA, plaintiffs cannot successfully establish liability under the third clause. *See, e.g., Jones v. Tonal Sys., Inc.*, 751 F.Supp.3d 1025, 1039 (S.D. Cal. 2024) ("Because Plaintiff failed to adequately plead a violation of the second prong, she has also failed to adequately plead a violation of the third prong."). Abbott's motion to dismiss the CIPA claim is granted.

Dismissal is with prejudice. Plaintiffs have been given an opportunity to amend their complaint once. The facts set forth in the amended complaint preclude plaintiffs from plausibly alleging negligence or violations of the ECPA and CIPA.

---

[6] I note, however, that plaintiffs have sufficiently alleged the "in transit" requirement of § 631(a). Plaintiffs allege that the transmissions to third parties "occur contemporaneously, invisibly and without the patient's knowledge." [33] ¶ 87. They further allege that a user's "communications with the host webpage are instantaneously and surreptitiously duplicated and sent to [Meta's] servers." [33] ¶ 60. If Abbott received and then duplicated the communications to pass on to Meta, that would not be an interception. But plaintiffs did not plead themselves out of court because, drawing inferences in plaintiffs' favor there could be an instantaneous transmission that amounts to interception in transit. *See, e.g., Doe v. Tenet Healthcare Corp.*, 789 F.Supp.3d 814, 838 (E.D. Cal. 2025) ("Courts have held allegations of simultaneous duplication and interception of communications sufficient to plead "interception" while "in transit" under CIPA at the motion to dismiss stage."). In contrast to plaintiffs' "contents" allegations, which are contradicted by facts set forth in the complaint, the complaint does not conclusively establish that all transmissions were asynchronous.

16

## IV. Conclusion

Abbott's motion to dismiss, [38], is granted. Plaintiffs' first amended complaint is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

                                                                             Manish S. Shah
                                                                             United States District Judge

Date: March 2, 2026